United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STARLA ROLLINS,

Plaintiff,

v.

DIGNITY HEALTH, et al.,

Defendants.

No. C13-1450 TEH

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS

Defendants' motion to dismiss came before the Court on November 4, 2013. Having considered the parties' arguments and the papers submitted, the Court now DENIES Defendants' motion for the reasons set forth below.

**BACKGROUND**

Defendant Dignity Health ("Dignity") [1] is a non-profit healthcare provider with facilities in sixteen states. Compl. ¶ 1. From 1986 to 2012, Plaintiff Starla Rollins ("Rollins") was employed as a billing coordinator at a Dignity-operated hospital. *Id.* ¶ 18. Based on her employment, Rollins will be eligible for pension benefits from Dignity's benefits plan (the "Plan") when she reaches retirement age. *Id.*

Rollins alleges that Dignity's Plan violates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Dignity contends that its Plan need not comply with ERISA because it is a "church plan," which the statute explicitly exempts from its requirements. Rollins maintains that the Plan does not qualify as a church plan as

---

[1] The Defendants' jointly moved to dismiss. Defendants in this case are Dignity Health, Herbert J. Vallier, a former Dignity Health official, and members of Dignity Health's Retirement Plans Sub-Committee. For convenience, the Court refers to the Defendants' collectively as "Dignity."

1

1    defined by ERISA and in the alternative, if the Plan is exempt, such an exemption violates

2    the Establishment Clause of the First Amendment and is therefore void.  *Id.* ¶¶ 162-164.

3          On behalf of herself and others similarly situated, Rollins seeks declaratory relief

4    that Dignity's Plan is not a church plan exempt from ERISA, as well as injunctive relief

5    requiring Dignity to conform the Plan to ERISA's requirements.  She also requests that

6    Dignity make Plan participants whole for any losses they suffered as a result of its ERISA

7    non-compliance and that Dignity pay any other statutory penalties and fees.  Dignity

8    moves to dismiss, contending that the Plan is a church plan, exempt from ERISA as a

9    matter of law, and therefore, that Rollins's allegations regarding ERISA violations fail to

10   state a claim for relief.

11

12   **LEGAL STANDARD**

13         Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a

14   complaint's allegations fail "to state a claim upon which relief can be granted."  Fed. R.

15   Civ. P. 12(b)(6).  In ruling on a motion to dismiss, a court must "accept all material

16   allegations of fact as true and construe the complaint in a light most favorable to the non-

17   moving party."  *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  To

18   survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief

19   that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

20   "A claim has facial plausibility when the plaintiff pleads factual content that allows the

21   court to draw the reasonable inference that the defendant is liable for the misconduct

22   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23

24   **DISCUSSION**

25         Enacted in 1974, ERISA was designed to ensure that employees actually receive the

26   benefits they are promised by establishing, among other requirements, minimum funding

27   standards and disclosure obligations for employee benefits plans.  Pub. L. No. 94-406, 88

28   Stat. 829 (1974), codified at 29 U.S.C. §§ 1001 *et seq*.  ERISA explicitly exempted

*United States District Court*
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1    "church plans" from its requirements and explained "the term 'church plan' means [] a

2    plan established and maintained for its employees by a church or by a convention or

3    association of churches."  29 U.S.C. § 1002(33)(A) (1976).  The statute permitted a church

4    plan to also cover employees of church agencies, but the permission was to sunset in 1982.

5    *Id.*

6        In 1980, ERISA was amended to eliminate the 1982 deadline and to include other

7    clarifications.  The relevant statutory section, 29 U.S.C. § 1002(33), now reads as follows:

> (A) The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26.
>
> (B) The term "church plan" does not include a plan—
> (i) which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or businesses (within the meaning of section 513 of title 26), or
> (ii) if less than substantially all of the individuals included in the plan are individuals described in subparagraph (A) or in clause (ii) of subparagraph (C) (or their beneficiaries).
>
> (C) For purposes of this paragraph—
> (i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.
> (ii) The term employee of a church or a convention or association of churches includes—
> (I) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;
> (II) an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches; . . .

28   29 U.S.C. § 1002(33).

United States District Court
For the Northern District of California

1    According to Rollins, despite the language in section C (i), which permits

2    church-associated organizations to maintain church plans, section A still demands

3    that only a church may *establish* a church plan.  Although Rollins also disputes

4    whether Dignity is a church-associated organization under section C (i), the Court

5    first addresses, and finds dispositive, her argument that Dignity is not a church,

6    and as such cannot establish a church plan, and therefore that Dignity's Plan is not

7    a "church plan" under the statute.

8    Dignity does not contend that it is a church or that its Plan was started by a church.

9    Rather, relying primarily on section C, it argues that the ERISA statute allows a plan to

10   qualify as a church plan regardless of what entity established the plan, so long as the plan

11   is maintained by a tax-exempt non-profit entity "controlled by or associated with a church

12   or a convention or association of churches."  29 U.S.C. § 1002(33)(C)(i).  Because it is a

13   tax-exempt entity associated with the Roman Catholic Church, and its Plan is maintained

14   by a subcommittee associated with the Roman Catholic Church, Dignity argues that, as a

15   matter of law, its Plan qualifies as a church plan.[2]

16   Thus, the primary question before the Court is whether the ERISA statute requires a

17   church plan to have been established by a church, or whether the statute merely requires

18   that a church plan be maintained by a tax-exempt organization controlled by or associated

19   with a church.

20

21   [2] To support Dignity's position that both Dignity and its Plan subcommittee are
"associated with" the Roman Catholic Church, Dignity submits volumes of documents as
22   an appendix to its motion and as exhibits to two declarations submitted in connection with
its papers.  "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers
23   evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule
56 motion for summary judgment, and it must give the nonmoving party an opportunity to
24   respond. A court may, however, consider certain materials – [including] matters of judicial
notice – without converting the motion to dismiss into a motion for summary judgment."
25   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citation omitted).  However, a
court may take judicial notice of documents only for their existence, not the truth of the
26   contents therein. *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1064 (C.D.
Cal. 2012).  As Dignity cites to these documents for the truth of the matters asserted
27   within, the Court finds the documents inappropriate for judicial notice and declines to
review them here on a motion to dismiss.
28

4

1    At the outset, the Court notes that although Dignity argues that "three decades of

2    agency interpretations" – specifically a series of Internal Revenue Service ("IRS") private

3    letter rulings ("PLRs") – support its position that to qualify as a church plan, a plan need

4    only be maintained by a tax-exempt entity associated with a church, the Court declines to

5    defer to the IRS's interpretation of the ERISA statute here.  The IRS's private letter rulings

6    apply only to the persons or entities who request them and are not entitled to judicial

7    deference.[3]  The Court instead conducts its own independent analysis of the statute.  26

8    C.F.R. § 301.6110-7; 26 U.S.C. § 6110 ("a written determination may not be used or cited

9    as precedent"); *see also Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 978 (7th

10   Cir. 1998) ("Neither the courts nor the IRS may rely on letter rulings as precedent.").

11   When interpreting a federal statute, a court's goal is to "ascertain[] the intent of

12   Congress" and "giv[e] effect to its legislative will." *In re Ariz. Appetito's Stores, Inc.*, 893

13   F.2d 216, 219 (9th Cir. 1990).  "The preeminent canon of statutory interpretation requires

14   us to presume that the legislature says in a statute what it means and means in a statute

15   what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal

16   quotation marks omitted).  In construing the provisions of a statute, a court should thus

17   "first look to the language of the statute to determine whether it has a plain meaning."

18   *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).  To the extent a

19   statute is not "plain," a court may look to the traditional canons of statutory interpretation

20   and to the statute's legislative history.  *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825,

21

22   [3] Even if entitled to any deference, at best informal, non-precedential decisions, such as the IRS's PLRs, are entitled to only *Skidmore* deference, *see Barrios v. Holder*,
23   581 F.3d 849, 859 (9th Cir. 2009), such that the weight the Court must give to the letters depends on "the thoroughness evident in [their] consideration, the validity of [their]
24   reasoning, [their] consistency with earlier and later pronouncements, and all those factors which give [them] power to persuade, if lacking power to control." *Skidmore v. Swift &*
25   *Co.*, 323 U.S. 134, 140 (1944).  The PLRs that Dignity relies on recite Dignity's predecessor organization's structure and repeat portions of the statute.  I.R.S. P.L.R.
26   9409042 (Dec. 8, 1993), 9525061 (Mar. 28, 1995), I.R.S. P.L.R. 9717039 (Jan. 31, 1997), I.R.S. P.L.R. 200023057 (Mar. 20, 2000).  The letters do not analyze the statute closely or
27   evaluate how its language applies to Dignity.  Because the IRS's letters are conclusory, even under the *Skidmore* framework, they are not entitled to deference.  *See Shin v.*
28   *Holder*, 607 F.3d 1213, 1219 (9th Cir. 2010) (denying deference to Board of Immigration Appeals where its ruling was conclusory and "lack[ed] any meaningful analysis").

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    830–31 (9th Cir. 1996).

2         The Court's inquiry into whether a plan qualifies as a church plan begins with the

3    text of section A, which, again, states:

4              The term "church plan" means a plan established and
               maintained (to the extent required in clause (ii) of
5              subparagraph (B)) for its employees (or their beneficiaries) *by
               a church or by a convention or association of churches* which
6              is exempt from tax under section 501 of Title 26.

7    29 U.S.C. § 1002(33)(A) (emphasis added).  A straightforward reading of this section is

8    that a church plan "means," and therefore by definition, *must be* "a plan established . . . by

9    a church or convention or association of churches."

10        Complicating the inquiry, however, is section C, which states:

11             (i) A plan established and maintained for its employees (or
               their beneficiaries) by a church or by a convention or
12             association of churches *includes a plan maintained by an
               organization*, whether a civil law corporation or otherwise, the
13             principal purpose or function of which is the administration or
               funding of a plan or program for the provision of retirement
14             benefits or welfare benefits, or both, for the employees of a
               church or a convention or association of churches, *if such
15             organization is controlled by or associated with a church or a
               convention or association of churches.*
16
               (ii) The term employee of a church or a convention or
17             association of churches includes—
                    (I) a duly ordained, commissioned, or licensed minister
18             of a church in the exercise of his ministry, regardless of the
               source of his compensation;
19                  (II) an employee of an organization, whether a civil law
               corporation or otherwise, which is exempt from tax under
20             section 501 of Title 26 and which is controlled by or associated
               with a church or a convention or association of churches; . . .
21

22   29 U.S.C. § 1002(33)(C) (emphasis added).  Dignity contends that section C (i) includes

23   within the category of plans "established and maintained . . . by a church" –

24   "a plan maintained by a [church-associated] organization;" therefore, any plan that is

25   maintained by a church-associated organization is a church plan, regardless of whether the

26   plan was established by a church or convention or association of churches.  Mot. at 17-18.

27   Although Dignity's proposed reading of the statute is not unreasonable on its face, it

28   violates long-held principles of statutory construction and therefore cannot be the meaning

6

1  of the statute.

2      To begin, Dignity's reading violates a "cardinal principle of statutory construction .

3  . . to give effect, if possible, to every clause and word of a statute rather than to emasculate

4  an entire section." *Bennett v. Spear*, 520 U.S. 154, 173 (1997) (internal citations and

5  quotation marks omitted).  If, as Dignity argues, all that is required for a plan to qualify as

6  a church plan is that it meet section C's requirement that it be maintained by a church-

7  associated organization, then there would be no purpose for section A, which defines a

8  church plan as one established and maintained by a church.  In 1980, Congress amended

9  the church plan exemption portion of the statute to add the language in section C relied

10  upon by Dignity.  At the same time, Congress chose to retain the language in section A,

11  that the "[t]he term 'church plan' means a plan established and maintained by a church."

12  To completely ignore the language of section A – language that Congress actively retained

13  – violates the principle to give effect to every clause and word and the related principle

14  "not to interpret a provision in a manner that renders other provisions of the same statute

15  inconsistent, meaningless or superfluous."  *In re HP Inkjet Printer Litig.*, 716 F.3d 1173,

16  1184 (9th Cir. 2013).

17      Dignity's reading not only renders section A meaningless, but also disregards the

18  limiting language of section C (i), that to maintain a church plan, an organization must not

19  only be associated with the church, but it must have as its "principal purpose or function

20  . . . the administration or funding of a [benefits] plan or program . . . for the employees of a

21  church."  Dignity is a healthcare organization; its mission is the provision of healthcare,

22  not the administration of a benefits plan.  While its Retirement Plans Sub-Committee's

23  purpose is plan administration, the statute does not say that the organization may have a

24  subcommittee who deals with plan administration.  Rather, the statute dictates that

25  organization itself must have benefits plan administration as its "principal purpose," which

26  Dignity plainly does not.

27      Furthermore, Dignity's suggested interpretation would reflect a perfect example of

28  an exception swallowing the rule.  While the amended section C (i) does permit church

United States District Court
For the Northern District of California

7

United States District Court
For the Northern District of California

1    plans to *include* plans maintained by some church-associated organizations, for such a

2    specific exception to govern what a church plan *is*, would completely vitiate the original

3    rule embodied in section A, defining a church plan as a plan established and maintained by

4    a church. The Court cannot agree with the notion that Congress could have intended the

5    narrow permission in section C (i) to – by implication – entirely consume the rule it clearly

6    stated in section A.

7        The canon *expressio unius est exclusio alterius* also militates against Dignity's

8    interpretation of the statute. The canon instructs that "where Congress includes particular

9    language in one section of a statute but omits it in another section of the same Act, it is

10    generally presumed that Congress acts intentionally and purposely in the disparate

11    inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation

12    omitted). Based on this canon, we must presume that Congress acted intentionally in using

13    the words "establish and maintain" in section A as something only a church can do, as

14    opposed to the use of only the word "maintain" in section C (i) to refer to the capabilities

15    of church-associated organizations. To assert that any church-associated organization can

16    establish its own church plan fails to appreciate the distinction drawn by Congress through

17    its purposeful word choice.

18        Moreover, the use of the word "maintain by an organization" in section C (i)

19    mirrors the word "maintain" in the preceding clause, "a plan established and maintained by

20    a church." This repetition of the word "maintain" without the word "establish" suggests

21    that only the category of "who may maintain a church plan" is being expanded upon in

22    section C (i), not the category of "who may establish a church plan."

23        At oral argument, Dignity also relied on section C (ii), which allows employees of

24    church-associated organizations to be covered by a church plan, to support its position.

25    Dignity argued that because it is associated with a church and its employees can be

26    covered by a church plan, that its Plan is a church plan. That an established church plan

27    may include employees of a church-associated organization, however, does not mean that

28    an associated organization may *establish* a church plan. Section C (ii) merely explains

United States District Court
For the Northern District of California

1   which employees a church plan may cover – once a valid church plan is established.  It

2   does nothing more.

3        The Court holds that notwithstanding section C, which permits a valid church plan

4   to be maintained by some church-affiliated organizations, section A still requires that a

5   church *establish* a church plan.  Because the statute states that a church plan may only be

6   established "by a church or by a convention or association of churches," only a church or a

7   convention or association of churches may establish a church plan.  29 U.S.C.

8   1002(33)(A).  Dignity's effort to expand the scope of the church plan exemption to any

9   organization maintained by a church-associated organization stretches the statutory text

10  beyond its logical ends.

11       The Court acknowledges that the position it takes here runs contrary to several

12  cases outside this circuit that have considered the church plan exemption and have held

13  that it applies to plans established by church-affiliated entities.  Although those cases are

14  not binding authority, the Court has nevertheless examined each contrary case and is not

15  convinced by the reasoning the cases employed.

16       Initially, the Court notes that the contrary cases themselves differ in their

17  interpretations of the statutory text.  Several cases to have explored the issue appear to

18  have read section C (i)'s language on who may *maintain* a church plan to abrogate the

19  limitations clearly set out in section A on who can *establish* a church plan.  *See, e.g.*,

20  *Thorkelson v. Publ'g House of Evangelical Lutheran Church in Am.*, 764 F. Supp. 2d

21  1119, 1126-27 (D. Minn. 2011); *Lown v. Cont'l Cas. Co.*, 238 F.3d 543, 547 (4th Cir.

22  2001).  Yet others overlooked the express limitation on section C (i) that an organization

23  maintaining a church plan must have as its "principal purpose or function . . . the

24  administration or funding of a [benefits plan]" and cannot simply be a church-affiliated

25  healthcare organization, or publishing house.  *See, e.g*, *Chronister v. Baptist Health*, 442

26  F.3d 648, 652 (8th Cir. 2006); *Lown*, 238 F. 3d at 547.  And still others read into the

27  statute's broad definition of employees who may be covered by a church plan, a

28  completely different idea that church-affiliated organizations may start their own church

9

United States District Court
For the Northern District of California

1    plans.  *See e.g.*, *Rinehart v. Life Ins. Co. of N. Am.*, No. C08-5486 RBL, 2009 WL 995715,

2    at *3 (W.D. Wash. Apr. 14, 2009).

3         As explained in detail above, the Court is not persuaded by these flawed

4    approaches.  Rather, it adheres to the principle that Congress "says in a statute what it

5    means and means in a statute what it says there."  *BedRoc Ltd., LLC*, 541 U.S. at 183

6    (internal quotation marks omitted).  If Congress intended to alter the types of entities that

7    can *establish* a church plan, such amendment would have been made to section A, which

8    again, clearly states that a church plan is one "established and maintained . . . by a church

9    or by a convention of association of churches."  The Court is not compelled by the legal

10   gymnastics required to infer from section C's grant of permission to church associations to

11   maintain a church plan, or its broad view of which employees may be covered by a church

12   plan – that a church plan may be established by any entity other than a church or a

13   convention or association of churches as set forth in section A.

14        Although the text is conclusive, the Court notes that legislative history also strongly

15   supports its reading.  The history explains that the purpose behind section C was only to

16   permit churches to delegate the administration of their benefits plans to specialized church

17   pension boards without losing their church plan status; it was not to broaden the scope of

18   organizations who could *start* a church plan.

19        Prior to the amendment, because the statute read that a church plan was one

20   "maintained by a church or by a convention or association of churches," churches whose

21   plans were managed by pension boards were concerned about their status.  To ensure they

22   could maintain the exemption, leaders of several large church organizations wrote to and

23   testified before Congress about their concerns.[4]

---

24   [4] *See, e.g.*, Letter from Gary S. Nash, Secretary, Church Alliance for Clarification of
25   ERISA, to Hon. Harrison A Williams, Jr., Chairman, Senate Committee on Human
     Resources (August 11, 1978); Hearing on the ERISA Improvements Act of 1978 Before
26   the S. Comm. on Labor and Human Resources (1978) (statements of Dr. Charles C.
     Coswert, Executive Secretary, Board of Annuities and Relief of the Presbyterian Church of
27   the United States and Gary S. Nash, General Counsel, Annuity Board of the Southern
     Baptist Convention, Church Alliance for Clarification of ERISA, available as a part of the
28   Appendix to *ERISA Improvements Act of 1978, Hearings before S. Committee on Labor
     and Human Resources*, 96th Cong. 1317-1394 (1978).

United States District Court
For the Northern District of California

1   In response to the churches' concerns, Sen. Herman E. Talmadge of Georgia

2   introduced legislation as far back as 1978, with language substantially identical to the

3   language currently in section C (i), to ensure that "a plan funded or administered through a

4   pension board . . . [would] be considered a church plan" so long as the pension board's

5   "principal purpose or function" was the administration of the church plan, and the pension

6   board was "controlled by or associated with a church."  124 Cong. Rec. S8089 (daily ed.

7   June 7, 1978) (statement of Sen. Herman Talmadge).  In 1980, H.R. 3904 and S. 1076

8   were introduced in their respective houses and both sought to make broad changes to

9   ERISA.  Sen. Talmadge's church plan concerns were reflected in S. 1090 that year, and

10  eventually came to be a part of S. 1076.  H.R. 3904 did not initially include any changes to

11  the church plan exemption, but after H.R. 3904 and S. 1076 both passed their respective

12  houses, the Senate proposed, and the House accepted amendments to H.R. 3904, including

13  Sen. Talmadge's proposed changes to the church plan exemption.  Request To Concur In

14  Senate Amendment With Amendments To H.R. 3904, Multi-Employer Pension Plan

15  Amendments Act Of 1980, August 1, 1980.

16  When seeking to add the language about the church plan exemption reflected in

17  section C into S. 1076, Sen. Talmadge explained to the Senate Finance Committee that the

18  purpose of his proposal was to expand the church plan definition to include "church plans

19  which rather than being maintained directly by a church are instead maintained by a

20  pension board maintained by a church."  Senate Committee on Finance, Executive Session

21  Minutes, June 12, 1980, at 40.  In turn, a Press Release documenting the Senate Finance

22  Committee's favorable report on the legislation that same day stated that the Committee

23  had "agreed that the current definition of church plan would be continued . . . . The

24  definition would be clarified to include plans maintained by a pension board maintained by

25  a church."  Press Release, United States Senate Committee on Finance (June 12, 1980).

26  Likewise, once the provision was incorporated into H.R. 3904, the Senate Labor

27  and Human Resources Committee noted on August 15, 1980, that pursuant to the amended

28  bill, the definition of a church plan "would be continued" and only "clarified to include

11

**United States District Court**
For the Northern District of California

1     plans maintained by a pension board maintained by a church." Senate Labor and Human

2     Resources Committee Report on H.R. 3904, August 15, 1980. The same position was

3     echoed in the House by Representative Ullman in his comments on August 25, 1980, just

4     weeks before the bill's passage. 126 Cong. Rec. H23049 (daily ed. Aug. 25, 1980). The

5     legislative history thus demonstrates that section C (i) was only intended to permit church

6     pension boards to administer church plans; it was never contemplated to be so broad as to

7     permit any church-affiliated agency to start its own plan and qualify for ERISA exemption

8     as a church plan.

9          In sum, both the text and the history confirm that a church plan must still be

10     established by a church. Because Dignity is not a church or an association of churches,

11     and does not argue that it is, the Court concludes that Dignity does not have the statutory

12     authority to establish its own church plan, and is not exempt from ERISA as a matter of

13     law. Defendants' motion to dismiss on this ground is thereby DENIED.

14          Consequently, the Court refrains from ruling on Rollins's constitutional claim

15     which is premised on a finding that Dignity's plan is exempt from ERISA. For the same

16     reason, the Court also declines to consider Dignity's argument that its exemption from

17     ERISA eliminates the Court's subject matter jurisdiction over this suit. In its reply brief,

18     Dignity also argued that the Court lacks subject matter jurisdiction "because courts may

19     not entangle themselves in a church's affairs." Defs.' Reply at 11. As Dignity failed to

20     raise the argument prior to its reply brief, the Court declines to consider this argument. *See*

21     *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is

22     improper for a moving party to introduce new facts or different legal arguments in the

23     reply brief than those presented in the moving papers."); *see also Nevada v. Watkins*, 914

24     F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in

25     their reply briefs." (citation omitted)).

26     //

27     //

28     //

12

**CONCLUSION**

     For the foregoing reasons, Defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated:   12/12/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

**United States District Court**
For the Northern District of California

13