UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLA ROLLINS,<br><br>    Plaintiff,<br><br>v.<br><br>DIGNITY HEALTH, et al.,<br><br>    Defendants. | Case No. 13-cv-01450-TEH<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This matter came before the Court on the parties' cross-motions for partial summary judgment on June 16, 2014. Having considered the parties' arguments and the papers submitted, the Court now GRANTS Plaintiff's motion and DENIES Defendant's motion for the reasons set forth below.

**BACKGROUND**

This case is about whether Defendant Dignity Health ("Dignity") should conform its benefits plan (the "Plan") to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, or whether the Plan is exempt from ERISA because it is a "church plan," as defined by the ERISA statute. Dignity previously moved to dismiss this suit, claiming that because it is an entity "controlled by or associated with a church," its Plan is a "church plan" within the definition of the ERISA statute, and is thereby exempt from ERISA's provisions. On December 12, 2013, this Court denied Dignity's motion, holding that under the ERISA statute, a plan must be "established by a church" to be considered a church plan, and Dignity had not argued that it could meet that definition.

*Rollins v. Dignity Health*, No. 13-CV-1450 TEH, 2013 WL 6512682, at *7 (N.D. Cal. Dec. 12, 2013).

Dignity moved for interlocutory appeal of that decision and included in a footnote to its reply brief that it was reserving argument that its Plan may have indeed been established by a church, and therefore the Plan may be exempt even under the Court's reading of the statute. Concluding that the dismissal order did not satisfy the requirements set out in 28 U.S.C. § 1292(b), the Court denied the interlocutory appeal motion. *Rollins v. Dignity Health*, No. 13-CV-1450 TEH, 2014 WL 1048637, at *2 (N.D. Cal. Mar. 17, 2014).

In the meantime, Plaintiff Starla Rollins ("Rollins") moved for partial summary judgment seeking declaratory relief that the Plan is not exempt, and injunctive relief directing Dignity to bring its Plan into compliance with ERISA, including its reporting, vesting and funding requirements. Docket No. 91 at 1. Dignity sought additional time to respond to the motion, claiming it needed to retain an expert and engage in more discovery. Docket No. 99. Seeking to proceed more systematically and avoid potentially needless discovery, the Court narrowed the scope of Rollins's motion to only the question of whether Dignity's Plan is exempt from ERISA (Rollins's declaratory relief claim). Docket No. 105.

Regarding her declaratory relief claim, Rollins argues that there is no genuine dispute of material fact that the Plan was established by Dignity's predecessor, Catholic Healthcare West ("CHW"), that CHW was not a church, and that therefore the Plan is not an exempt church plan under the statute. Dignity opposes Rollins's motion and argues that there is a genuine dispute of material fact because at the time the Plan was established in 1989, CHW was controlled by various religious women's orders known as the "Sponsoring Congregations," which would be considered churches for purposes of the statute. Dignity argues that the Sponsoring Congregations established the Plan jointly with CHW, and alternatively that by way of the Sponsoring Congregations' control over CHW, the Sponsoring Congregations indirectly established the Plan. Therefore, Dignity claims,

the Plan was "established by a church" for purposes of the ERISA statute and is an exempt church plan. Additionally, Dignity argues that it is entitled to partial summary judgment because Rollins's claim for declaratory relief is barred by the statute of limitations, and because the declaratory relief Rollins seeks would not be "equitable," given that that the Internal Revenue Service ("IRS") has consistently considered the Plan exempt.

**LEGAL STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* At the summary judgment stage, the court may not weigh the evidence and must view it in the light most favorable to the nonmoving party. *Id*. at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the duty of the district court "to scour the record in search of a genuine issue of triable fact." *Id.* "[A] mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).

//
//
//
//

## DISCUSSION

The Court first considers Dignity's arguments in support of partial summary judgment, because if successful, Dignity's arguments would preclude Rollins from obtaining the partial summary judgment she seeks.

### A. Dignity's Cross-Motion for Partial Summary Judgment

Dignity argues that Rollins's claim for declaratory relief that Dignity's Plan is not a church plan should be denied because it is not "appropriate equitable relief" under ERISA § 502(a)(3). ERISA § 502(a)(3) authorizes "a [plan] participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132 (emphasis added). Dignity contends that because it previously relied on the IRS's rulings that it was exempt, that for the Court to now rule that Dignity's Plan is not in fact exempt would be "inconsistent" and "grossly unfair." Dignity's Mot. at 20. Therefore, Dignity argues, the declaratory relief Rollins seeks would be "inequitable" and the statute only authorizes relief that is "appropriate" and "equitable." *Id.*

Dignity appears to confuse the meaning of the term equitable insofar as it distinguishes remedies available at law from remedies available in equity, and the meaning of the term as it relates to fairness to Dignity. Declaratory relief is a form of equitable relief. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). Nothing in the ERISA statute creates an exemption from such relief where the result would be, in one parties' view, "inequitable" or "unfair," and the Court declines to create such an exception for Dignity here. *See Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990) ("Courts should be loath to announce equitable exceptions to legislative requirements . . . that are unqualified by the statutory text.")

To support its position that the Court should not declare its Plan subject to ERISA because that would be "inequitable," Dignity cites to the Restatement of Trusts (Third) § 95, comment d, as an example where an exception was created to address similar

4

unfairness. The Restatement, however, is unlike the instant case as it involves the power to excuse a trustee from liability where the trustee acted in good faith. Thus, the Restatement deals with liability, it does not suggest that the Court should not declare the legal rights and obligations of the parties, which is the only claim presently at issue here. In Dignity's other cited case, *Moser v. United States*, 341 U.S. 42, 46-47 (1951), the Court permitted a citizenship applicant to persist in his application although he had inadvertently waived his right to apply in reliance on advice by the United States government. The Court in *Moser* simply sought to remedy the government's mistake by offering plaintiff a second chance, it did not perpetuate the government's mistake as Dignity requests the Court do here. Dignity's argument is thus wholly unsupported by the cited caselaw. Furthermore, if adhered to, Dignity's argument would lead to the perverse result where one erroneous IRS determination would have to be infinitely perpetuated for the sake of avoiding so-called "gross[] unfair[ness]." Dignity's Mot at 20. An erroneous IRS ruling, however, should not be permitted to trump a Court's interpretation of a statute, *see Dixon v. United States*, 381 U.S. 69, 74 (1965) (holding that an IRS rule "out of harmony with the statute[] is a mere nullity"), and certainly should not be permitted to persist indefinitely simply by virtue of having come first. That Dignity previously relied on IRS rulings does not render Rollins's declaratory relief claim inappropriate equitable relief under ERISA. Accordingly, Dignity's motion for partial summary judgment on this ground is DENIED.

Dignity also argues that it is entitled to summary judgment because Rollins's declaratory relief claim is barred by the statute of limitations set out in ERISA § 413. Under ERISA § 413, an action for breach of fiduciary responsibility must be commenced within the earlier of: six years from the affirmative act constituting the alleged violation or breach of fiduciary duty, or three years from when plaintiff had actual knowledge of the breach or violation. 29 U.S.C. § 1113. Dignity contends that the affirmative act constituting the breach was when the Plan began operating as a church plan. As that began in 1992, the six-year statute of limitations expired in 1998. Alternatively, Dignity claims

that Rollins had actual knowledge that the Plan was claiming exemption when she first received her plan document in 1999, therefore, she had at the latest, until 2002 to file her claims. Rollins filed her suit in 2013. Finally, Dignity also argues that, if the ERISA statute of limitations is not applicable here, then the Court should apply an "analogous" three-year state statute of limitations set out in California Code of Civil Procedure section 338(a), which governs actions "upon liability created by statute, other than a penalty or forfeiture," and begins to run when a plaintiff had actual knowledge of the statutory breach.

Upon reviewing Dignity's statute of limitations arguments, the Court finds them unavailing. The ERISA § 413 statute of limitations does not apply here because that statute applies to claims of breach of fiduciary duty or prohibited transactions. *See* 29 U.S.C. § 1113 (governing "action[s] . . . commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part [titled fiduciary responsibility]"). Those are not the claims presently at issue here; Rollins seeks declaratory relief that Dignity's Plan is not a church plan. *See Harris Trist & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (explaining that ERISA § 502(a)(1) broadly authorizes plan participants to bring claims to enforce any ERISA provisions, not just claims for breach of fiduciary duty or prohibited transactions).

The state statute of limitations for a "liability created by statute" also does not apply to Rollins's claim. Although it is true that an analogous state statute of limitations may be applied when there is no federal limitations period, "the conclusion that an ERISA cause of action is most analogous to a statutory claim [simply] because ERISA is a statute reflects circular reasoning," and has been resoundingly rejected. *Felton v. Unisource Corp.*, 940 F.2d 503, 512 (9th Cir. 1991). As none of the statutes of limitations Dignity cites are applicable to Rollins's declaratory relief claim, Dignity's claim for partial summary judgment on this ground is DENIED.

### B.  Rollins's Motion for Partial Summary Judgment

As a threshold matter, Dignity contends that the Court should abstain from ruling on Rollins's motion for partial summary judgment pending a Private Letter Ruling ("PLR") from the IRS on whether Dignity's Plan is an exempt church plan. As the Court has already rejected the statutory interpretation adopted by the IRS in prior PLRs it issued regarding Dignity, and has already held that the PLRs are not entitled to deference, *see Rollins*, No. C13-1450, 2013 WL 6512682, at *3 n.3, there is no reason the Court should refrain from ruling on this matter that is otherwise ripe for decision.

Based on the Court's previous ruling that under the ERISA statute, only a church may establish a church plan, Rollins argues that because CHW established the Plan at issue here, and CHW was not a church, Rollins is entitled to a declaration that the Plan is not a church plan exempt from ERISA. Dignity does not dispute that CHW itself was not a church. *See* Partial Summary Judgment Hr'g Tr. 16, June 16, 2014, Docket No. 170 ("Your Honor, we certainly do not contend that CHW itself is a church."). But rather, Dignity maintains there is a genuine dispute over whether CHW established the Plan, or whether several religious women's orders, known as the "Sponsoring Congregations," did.

ERISA itself does not define the term "establish" and neither the Ninth Circuit nor the Supreme Court have ruled on how exactly an ERISA plan is established. Generally, the term establish can mean both "to enact permanently" as well as to "to make or form; to bring about or into existence." Black's Law Dictionary (9th ed. 2009).

To support her position that CHW established the Plan, Rollins cites to several internal CHW documents submitted by Dignity with respect to these cross-motions, that demonstrate – and in some instances even state – that CHW established the Plan. For example, a December 19, 1988 resolution by the CHW Board of Directors states that "the [CHW] Corporation approves, authorizes and directs" the adopting of the "Catholic Healthcare West Retirement Plan" effective January 1, 1989. *See* Mary Connick

7

Declaration ("Connick Decl."), Ex. A at 8092[1]. In 1992, CHW's Board of Directors decided to retroactively operate the Plan as an exempt church plan, and in the resolution implementing the change, the Board referred to the Plan as follows: "Catholic Healthcare West ("CHW") *established* the Catholic Healthcare West Retirement Plan ("Plan") effective January 1, 1989, as a retirement vehicle for employees within the CHW system." Connick Decl., Ex. B at 8093 (emphasis added). A copy of a CHW document constituting a 1990 amendment and complete restatement of the original "Plan Document" describes the Plan as having been "made and entered into by the Plan Sponsor, Catholic Healthcare West." Samuel Hoffman Declaration ("Hoffman Decl."), Ex A at 8418. Also, in requests submitted by CHW to the IRS seeking a determination on CHW's church plan status in 1993, CHW stated that it had established the Plan. *See* Hoffman Decl., Ex. A at 6799 ("CHW established and maintains a defined benefit pension plan."). Rollins also offers Dignity's Answer which refers to the very Plan at issue here as one of the "plans *established* by Dignity Health" which was formerly known as CHW. Answer ¶ 3 (emphasis added), Docket No. 86.

Notwithstanding Rollins's evidence that CHW's Board of Directors resolved to establish the Plan, and that Dignity's own documents describe CHW as having established the Plan, Dignity argues that a genuine dispute of material fact remains because at the time CHW established the Plan, CHW was controlled by several religious orders, or "Sponsoring Congregations," which would be considered churches for ERISA purposes.[2]

---

[1] Bates indicator "DIGNITY" and any preceding zeros are omitted.
[2] Although the ERISA statute does not itself define a church, the Treasury Regulations implementing the statute define a church as follows:
> For the purpose of this section the term "church" includes a religious order or a religious organization if such order or organization (1) is an integral part of a church, and (2) is engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise.

Treas. Reg. § 1.414(e)-1(e). Dignity does not argue that CHW satisfies this definition, only that the Sponsoring Congregations meet this definition. Rollins disputes that the Sponsoring Congregations are churches. Because, even assuming that the Sponsoring Congregations are churches for purposes of ERISA, Dignity fails to raise a genuine dispute of material fact, the Court declines to rule on whether the Sponsoring Congregations are churches.

8

Dignity argues that *vis a vis* their control over CHW, the Sponsoring Congregations' actually established the Plan. Alternatively, Dignity argues that the Sponsoring Congregations – jointly with CHW – established the Plan.

With respect to Dignity's first argument, Dignity fails to raise a dispute sufficient to defeat summary judgment because whether or not the Sponsoring Congregations controlled CHW is immaterial because CHW was a separate corporation at the time it established the Plan. In 1988, when the CHW Board of Directors voted to adopt the Plan, CHW was a separately incorporated non-profit public benefit corporation organized under California law. *See* Bernita McTernan Declaration ("McTernan Decl.") ¶ 4; *see also* 1988 CHW Board of Directors Resolution, Connick Decl., Ex. A at 8092 (stating that "the *Corporation* approves, authorizes and directs" the adopting of the "Catholic Healthcare West Retirement Plan"). Under California law, a corporation's conduct is attributed to that corporation; the corporate form is reluctantly disregarded, and only where a claim is made that the corporate form is being abused, which is not the case here. *See Mesler v. Bragg Mgmt. Co.,* 39 Cal. 3d 290, 300 (1985). Thus, even if the Sponsoring Congregations exhibited some control over CHW, that alone is insufficient to set aside CHW's separate identity, to "pierce its corporate veil," and impute CHW's conduct to the Sponsoring Congregations. *See Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993-94, 41 Cal. Rptr. 2d 618, 625-26 (1995) ("Persons who themselves control a corporation, who have used the corporate form of doing business for their benefit, who have dealt with and treated the corporation as a separate entity . . . may be estopped to deny the corporation's separate legal existence.").

At the hearing, the Court asked Dignity's Counsel: What authority is there for piercing the corporate veil of Catholic Healthcare West, and imputing the establishment of its benefits plan to the Sponsoring Congregations? Counsel responded that "the alter ego doctrine does not apply" here and that Dignity is "not asking the Court whatsoever to pierce the corporate veil," but is merely arguing that the Sponsoring Congregations set up CHW, controlled CHW, and were "responsible for CHW." Hr'g Tr. 24-25, Docket No.

1  170. Although Dignity maintains that it is not explicitly arguing for veil piercing, the Court can only interpret Dignity's argument as a request to do so because imputing the actions of CHW – a separate corporation – to the Sponsoring Congregations could only be done if CHW's veil was pierced. "Generally, the corporate veil can be pierced only by an adversary of the corporation, not by the corporation itself for its own benefit." *See Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d 377, 380 (9th Cir. 1996) "The purpose of forming a corporation is to establish a separate legal entity. [Because CHW] enjoys the advantages of separate incorporation under the civil law, . . . it must bear the disadvantages." *See De La Salle Inst. v. United States*, 195 F. Supp. 891, 901 (N.D. Cal. 1961) (internal citations omitted)*; see also Disenos Artisticos E Industriales, S.A.*, 97 F.3d at 380. ("[A] corporation is not entitled to establish and use its affiliates' separate legal existence for some purposes, yet have their separate corporate existence disregarded for its own benefit against third parties."). As Dignity fails to offer any legal authority or facts to justify veil-piercing, its mere allegation that the Sponsoring Congregations controlled CHW does not raise a genuine dispute of material fact as to whether CHW – a separate corporation – established the Plan.[3]

Additionally, even if the Sponsoring Congregations' control over CHW was of legal significance, Dignity fails to put forth any evidence that the Sponsoring Congregations actually exercised total control over CHW, or even more limitedly, over the Plan's formation. Dignity's evidence shows that CHW had a Corporate Member Board, which was comprised of one representative from each Sponsoring Congregation. *See* Connick Decl., Ex. A at 8092. On certain limited matters, the Corporate Member Board had final approval, for example, adopting a mission, creating a new corporation, or selling

---

[3] Moreover, allowing a church-controlled entity to establish a church plan by imputing the establishment to its controlling church would contradict the reasoning reflected in this Court's previous order: Congress drew a distinction in ERISA when it specifically referred to churches as having the ability to establish church plans, and church-controlled entities as only having the ability to maintain church plans, once established. *See Rollins*, 2013 WL 6512682 at *5. If control by a church was sufficient to make an entity a church, that distinction would be meaningless.

substantial assets, *id.* at 8197-8201, however, the Corporate Member Board did not have approval rights over the establishment of the Plan. *See id.* at 8175 ("subject to the reservation of rights [to the Corporate Member Board as enumerated] . . ., the activities and affairs of this corporation shall be conducted and all corporate powers shall be exercised by or under the direction of its *board of directors*") (emphasis added).  In fact, the 1988 resolution establishing the Plan was passed by CHW's Board of Directors, not its Corporate Member Board, and the Sponsoring Congregations had only some representation – but not majority representation – on CHW's Board of Directors. McTernan Decl., Ex A at 8172, 8175-6 (CHW Restated Bylaws July 1, 1988).   Based on this evidence regarding the Corporate Member Board and the Board of Directors, there is no indication that the Sponsoring Congregations had any decision-making authority over CHW, much less the degree of control Dignity argues existed.  Conclusory assertions that the Corporate Board "Members controlled CHW," McTernan Decl. ¶ 4, do not create a genuine dispute.  *See FTC v. Publ'g Clearing House,* 104 F.3d 1168, 1171 (9th Cir. 1996) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (*citing Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)); *see also F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions . . . are . . . insufficient to withstand summary judgment.")[4]  Thus, even if the matter of control were dispositive – and it is not – there is simply no evidence to raise a genuine issue of material fact that CHW was under the Sponsoring Congregations' control, or that even the function of pension plan establishment was under the Sponsoring Congregations' control.

Dignity's second argument against summary judgment is that the Sponsoring

---

[4] Although Dignity submitted volumes of records, much of it bears no relationship to the Sponsoring Congregations' involvement in CHW at the time of the Plan's establishment in 1989.  See McTernan Decl., Exs. B-C (CHW Organizational Charts from 1995 and 1999, respectively), Ex. L (Dignity Health's Charter, approved 03/23/2012); Connick Decl., Exs. B-E (Documents from 1992 explaining 1992 decision to treat CHW Plan as a church plan); McGuiness Decl., ¶ V. A-C (providing expert opinion explaining role of women religious orders in the Catholic Church generally, not their specific involvement in CHW in 1989).

11

Congregations "co-established the Plan" jointly with CHW. Hr'g Tr. 20, Docket No. 170. In support of the argument, Dignity offers a 1990 Amendment and Restatement of the Plan Document which describes the CHW Plan as the plan that "resulted from the merger . . . of [] seven prior plans." Hoffman Decl., Ex. A at 8418. Because two of the seven prior plans were those of two Sponsoring Congregations, the Sisters of Mercy, Auburn, and the Sisters of Mercy, Burlingame, Dignity argues that the Sponsoring Congregations established the Plan. The document, however, does not support that contention. That in 1990, the Plan Document was amended to describe that a merger occurred, does not suggest that at the time the Plan was established, that the Sponsoring Congregations also established the Plan. Significantly, Dignity also submits several documents relating to that merger. The documents demonstrate that after the Plan came into effect, several Sponsoring Congregations resolved to merge their plans into the CHW Plan. *See, e.g.,* Connick Decl., Ex. A, at 8091 (Resolution of Board of Directors of Sisters of Mercy, Burlingame dated January 10, 1989 after the CHW Plan's January 1, 1989 effective date, stating "Catholic Healthcare West has adopted a retirement plan known as the Catholic Healthcare West Retirement Plan . . . it is in the best interest of the [Sponsoring Congregation] . . . to merge [our] Plan into the CHW Plan . . ."). These documents, therefore, show only that some Sponsoring Congregations decided to merge their plans into the already-established CHW Plan; they do not raise genuine dispute as to the actual establishment of the Plan.

Finally, Dignity offers a resolution passed by several hospitals and hospital organizations, including the Sisters of Mercy Burlingame and Auburn organizations, agreeing to be affiliated with the Plan and to make contributions to the Plan. Hoffman Decl., Ex A at 8488. That resolution, however, was passed December 30, 1988, after the CHW Board had already resolved to establish the Plan on December 19, 1988. *Id.* In fact the resolution acknowledges that fact in its statement "*Catholic Healthcare West* has caused this Plan Agreement to be executed *by its respective duly authorized officers. Further,* by the joint execution of . . . [CHW] and the below indicated Companies, such Companies [including the so-called Sponsoring Congregations] are designated as Affiliates

12

1  . . . and . . . adopt this Plan Agreement." *Id.*(emphasis added). Thus, after acknowledging that CHW formed the Plan, the resolution merely notes that additional organizations also adopt the Plan. At best, Dignity's evidence demonstrates that once CHW established the Plan, several Sponsoring Congregations' plans merged into it, and several Sponsoring Congregations signed on as affiliates. This evidence, however, does not generate a genuine factual dispute as to who "enacted" the Plan or brought about its existence.

Looking at the totality of the evidence and viewing it in the light most favorable to Dignity, Dignity fails to raise a genuine issue of material fact as to whether CHW established the Plan in question. Although the Sponsoring Congregations may have been involved in CHW's management, and may have joined on to the CHW Plan, Dignity fails to put forth any evidence to rebut the position – as demonstrated by the December 19, 1988 resolution by the CHW Board of Directors – that CHW established the CHW Plan.

To the extent Dignity attempts to re-litigate the Court's interpretation of the ERISA statute by arguing that under its preferred interpretation of the statute, a Plan established by CHW would be exempt, and alleging that the Court's interpretation results in excessive governmental entanglement with religion – the law of the case is controlling. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). As the Court sees no reason to depart from its earlier ruling, it holds once more, that pursuant to the ERISA statute, mere association with a church does not give an entity the authority to establish a church plan. *See Rollins*, No. C13-1450, 2013 WL 6512682, at *5.

In sum, under the Court's reading of the statute, a church plan may only be established by a church. There is no genuine dispute of material fact that CHW established the Plan here, and that CHW is not a church. Accordingly, Rollins is entitled to summary judgment on her claim for declaratory relief that the plan established by CHW – the Dignity Plan at issue here – is not a church plan as defined by ERISA, and is therefore not exempt from ERISA.

//

//

**CONCLUSION**

For the reasons discussed above, Defendant's motion for partial summary judgment is DENIED, and Plaintiff's motion for partial summary judgment on her declaratory relief claim is GRANTED.

**IT IS SO ORDERED.**

Dated: 7/22/14   _____
THELTON E. HENDERSON
United States District Judge