UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLA ROLLINS,<br><br>   Plaintiff,<br><br>  v.<br><br>DIGNITY HEALTH, et al.,<br><br>   Defendants. | Case No. 13-cv-01450-TEH<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO CERTIFY COURT'S ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR INTERLOCUTORY APPEAL AND STAYING CASE** |

On July 22, 2014, the Court granted partial summary judgment for Plaintiff because the Court had previously concluded that ERISA's "church plan" exception only applied if a retirement plan was established by a church, and there was no genuine dispute as to the facts that Catholic Healthcare West was not a church and had established the plan at issue in this case. Defendants subsequently filed this motion to certify the Court's Order for interlocutory appeal and stay the case. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for resolution without oral argument. For the reasons given below, the Court now GRANTS Defendants' motion, CERTIFIES its July 22, 2014 Order for interlocutory appeal, and STAYS all further proceedings pending the Ninth Circuit's decision whether or not to hear the appeal.

**BACKGROUND**

Plaintiff Starla Rollins ("Rollins") was employed as a billing coordinator by Defendant Dignity Health ("Dignity") from 1986 to 2012. Rollins challenges Dignity's practice of operating its employees' retirement savings plan ("the Plan") as a "church plan," exempt from the funding and disclosure requirements of the Employee Retirement Income Security Act ("ERISA"). Dignity has at all times argued that the Plan meets ERISA's definition of a church plan, as set out at 29 U.S.C. § 1002(33).

In December of 2013, the Court denied Dignity's motion to dismiss this action, holding that under ERISA's plain meaning, a plan must be "established by a church" to be considered a church plan, and Dignity had not argued that it could meet that definition. *Rollins v. Dignity Health*, No. 13-cv-1450 TEH, 2013 WL 6512682, at *7 (N.D. Cal. Dec. 12, 2013). Dignity moved to certify that decision for interlocutory appeal, which the Court denied in March of 2014, because it did not satisfy the requirements set out at 28 U.S.C. § 1292(b). *Rollins v. Dignity Health*, No. 13-cv-1450 TEH, 2014 WL 1048637, at *2 (N.D. Cal. Mar. 17, 2014).

In July of 2014, the Court granted Plaintiff's and denied Defendants' cross-motions for partial summary judgment. *Rollins v. Dignity Health*, No. 13-cv-1450 TEH, 2014 WL 3613096, at *1 (N.D. Cal. July 22, 2014). The Court reiterated its prior holding that a church plan must be established by a church. *Id.* at *6. The Court found that there was no genuine dispute as to the material facts that Defendants' predecessor, Catholic Healthcare West ("CHW"), established the Plan, and that CHW was not a church. *Id.* Accordingly, the Court held that the Plan was not an exempt church plan, and therefore was subject to ERISA's requirements. *Id.*

On October 27, 2014, Plaintiff brought motions for a permanent injunction and to certify a class. (Docket Nos. 180, 183). At a Case Management Conference held November 3, the Court stayed Plaintiff's motions and provided Defendants the opportunity to seek an appeal of the Court's prior order. (Docket No. 191). On November 10, 2014, Defendants brought this motion to certify the Court's July 22, 2014 Order for interlocutory appeal. (Docket No. 197).

**LEGAL STANDARD**

A party may bring an interlocutory appeal of a district court's order where the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and [] an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). "[T]his section [is] to

2

be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.3d 1020, 1026 (9th Cir. 1982).

## DISCUSSION

### I. There is a Controlling Question of Law at Issue

Defendants seek to certify for appeal the question whether an ERISA church plan must be established by a church, or rather whether it is sufficient for a plan to have been established by an organization controlled by or associated with a church. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.3d at 1026.

The parties do not dispute that the question to be certified is a controlling question of law in this case. Based on its prior answer to the question, the Court entered partial summary judgment for Plaintiff on the issue of whether the Plan was subject to ERISA's requirements. *Rollins*, 2014 WL 3613096, at *6. Plaintiff has used the Court's Order as the basis for motions for a permanent injunction and for class certification, charting the litigation's current trajectory.

On the other hand, if the Court of Appeals were to reverse this Court's determination, the litigation would take a decidedly different path. First, unless the Court of Appeals also answers this subsequent question, the Court would need to determine whether Dignity or its predecessor was "associated with" or "controlled by" a church while it maintained the Plan. 29 U.S.C. § 1002(33)(C)(i). The Court may again find that the Plan is not a church plan, but if the Court finds that it is, it will need to inquire as to whether there is Article III standing for it to continue to hear the case, as Plaintiff's standing may depend on ERISA's application to the Plan. And, if the Court were to find that Plaintiff has standing, it would need to turn to Plaintiff's Establishment Clause challenge to the church plan exception itself. Each of these possible alternative trajectories

3

1   would only be available if the Court of Appeals reverses this Court's interpretation of the
2   statute.
3      The Court previously found that this question was not a "controlling question of
4   law," because Defendants had not demonstrated what made this an "exceptional situation"
5   justifying interlocutory appeal. *Rollins*, 2014 WL 1048637, at *2. Defendants have
6   persuaded the Court that a different determination is now appropriate. The remaining
7   issues to be decided in this case, and the attendant costs of discovery, will vary
8   significantly depending on the resolution of this issue. As noted above, there are several
9   different questions, many of them dispositive, that will need to be answered if the Court of
10  Appeals reverses this Court's determination. Discovery for the question of whether
11  Dignity was associated with or controlled by a church will almost certainly be different
12  than class certification discovery, which will be different than discovery for Plaintiff's
13  breach of fiduciary duty claims. Dignity estimates having to spend several thousand
14  additional attorney hours, costing in excess of $500,000, to respond to the currently
15  pending and expected discovery requests, in addition to incurring several hundred
16  thousand dollars in attorneys' fees in responding to Plaintiff's currently pending motions.
17  Rochman Decl. at 2 (Docket No. 198). These costs could be avoided, perhaps entirely, by
18  a reversal at the Court of Appeals.
19     For these reasons, the Court now finds that this case presents an exceptional
20  situation, such that appellate resolution of this question may avoid expensive and
21  protracted litigation and could materially affect the outcome of the case.
22
23  **II. There are Substantial Grounds for Disagreement on this Question**
24     The Court also finds that there are substantial grounds for disagreement here. One
25  of the best indications that there are substantial grounds for disagreement on a question of
26  law is that other courts have, in fact, disagreed. *Couch v. Telescope*, Inc. 611 F.3d 629,
27  633 (9th Cir. 2010); *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th
28  Cir. 2011) ("[W]hen novel legal issues are presented, on which fair-minded jurists might

4

1   reach contradictory conclusions, a novel issue may be certified for interlocutory appeal
2   . . . ."); *AsIs Internet Servs. v. Active Response Grp.*, No. 07-cv-06211-TEH, 2008 WL
3   4279695, at *3 (N.D. Cal. Sept. 16, 2008) (substantial ground for difference of opinion
4   existed where there was an "intra-district split" on a novel legal issue).

5         Here, two district courts have decided this issue explicitly in conflict with this
6   Court's decision. In *Overall v. Ascension Health*, No. 13-cv-11396, 2014 WL 2448492
7   (E.D. Mich. May 19, 2014), the court noted that this Court had "interpreted section (A) as
8   a gatekeeper of section (C). That is, [it] concluded that section (A) sets the standard—only
9   a church can establish a church plan—and section (C) only describes how a plan under
10  section (A) can be maintained." 2014 WL 2248492, at *10. However, "under the rules of
11  grammar and logic, A is not a 'gatekeeper' to C; rather if A is exempt and A includes C,
12  then C is also exempt." *Id.* (internal quotation marks and citation omitted). The court
13  went on to conclude that the plans in that case were church plans, exempt from ERISA. *Id.*
14  at *15.

15        Similarly, in *Medina v. Catholic Health Initiatives*, No. 13-cv-01249-REB-KLM,
16  2014 WL 4244012 (D. Colo. Aug. 26, 2014), the court rejected this Court's interpretation
17  and that of the magistrate judge in that case. The court found that "the plain language
18  clearly supports the conclusion that a plan that meets the requirements of subsection (C)(i)
19  putatively qualifies for the exemption—without further, separate proof of establishment by
20  a church—if the remaining requirements of the statute are otherwise met." 2014 WL
21  4244012, at *2. "By reiterating the same 'established and maintained' language of
22  subsection (A), subsection (C) affirms that 'established' and 'maintained' are not two
23  distinct elements, but rather a singular requirement, a term of art, as used in the statute."
24  *Id.* The court was presented with, and rejected, this Court's interpretation, evidencing
25  substantial grounds for disagreement on this issue.

26        Moreover, before this Court's Order, two district courts in the Ninth Circuit
27  endorsed a contrary interpretation. In *Rinehart v. Life Ins. Co. of N. Am.*, No. 08-cv-5486-
28  RBL, 2009 WL 995715 (W.D. Wash. Apr. 14, 2009), the court reasoned that "The term

1  'church plan' is somewhat misleading because even a plan established by a corporation
2  controlled by or associated with a church can also qualify as a church plan." 2009 WL
3  995715, at *2.  The court found that the plan at issue was a church plan because it was
4  maintained by an organization controlled by and associated with a church, without
5  discussing whether the plan was also "established" by a church.  *Id.* at *5.  And in
6  *Okerman v. Life Ins. Co. of N. Am.*, No. 00-cv-0186-GEB/PAN, 2001 WL 36203082 (E.D.
7  Cal. Dec. 24, 2001), the court found that a plan was a church plan because it was
8  "maintained" by an organization that met the requirements of 29 U.S.C. § 1002(33)(C)(i),
9  without requiring the plan to have been "established" by a church.  *See* 2001 WL
10 36203082, at *3-4.

11 Only one court has agreed with this Court's interpretation.  In *Kaplan v. Saint
12 Peter's Healthcare Sys.*, No. 13-cv-2941, 2014 WL 1284854 (D.N.J. March 31, 2014), the
13 court held that "subsection A is the gatekeeper to the church plan exemption: although the
14 church plan definition, as defined in subsection A, is expanded by subsection C to include
15 plans ***maintained*** by a tax-exempt organization, it nevertheless requires that the plan be
16 ***established*** by a church . . . ."  2014 WL 1284854, at *5 (emphasis in original).  The court
17 noted that "The *Rollins* court's interpretation of the church plan definition is in accord with
18 this Court's decision."  *Id.* at *8.

19 Given the level of disagreement that has become apparent since this Court's July 22
20 Order, and considering the previous cases within the Ninth Circuit to have applied a
21 different rule, the Court finds that there are substantial grounds for disagreement with its
22 interpretation.  The second § 1292(b) factor is therefore satisfied.

### III. Resolution of This Issue Will Materially Advance the Litigation

25 Finally, the Court finds that an interlocutory appeal will materially advance the
26 termination of the litigation.  "[N]either § 1292(b)'s literal text nor controlling precedent
27 requires that the interlocutory appeal have a final, dispositive effect on the litigation, only
28 that it 'may materially advance' the litigation."  *Reese*, 643 F.3d at 688.  Given the

United States District Court
Northern District of California

standard for a "controlling question of law" articulated by the court in *In re Cement Antitrust Litig.*, the considerations of this factor overlap significantly with the first one. As already noted, appellate resolution of this issue will clearly impact the course of further motions and discovery. Importantly, if the Court were to deny certification now and continue with Plaintiff's motions but subsequently be reversed by the Ninth Circuit, the Court would then need to consider the remaining issues of statutory interpretation, standing, and constitutionality that much later, after significant expense will have been incurred.

Although Plaintiff does not dispute that the question presented is controlling, she argues that its interlocutory appeal will not materially advance the litigation, because many issues will remain to be decided. However, as noted above, the Court would need to turn to such issues eventually if the Ninth Circuit reversed this Court's determination at a later date. By addressing this question now, the Court saves time and expense. If the Ninth Circuit reverses, the parties can turn to these issues sooner rather than later. And if the Court of Appeals affirms, the case can proceed on the relatively few issues that remain with greater certainty. Such certainty could even encourage a negotiated settlement, which would not just materially but completely advance the termination of this litigation. *See Securities and Exchange Commission v. Mercury Interactive*, LLC, No. 07-cv-02822-JF, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011) ("A final resolution as the scope of the statute would have a significant effect on the trial of this action, and perhaps upon the parties' efforts to reach settlement.").

**IV. The Case Should be Stayed Pending the Ninth Circuit's Decision**

The Court also concludes that proceedings in this case should be stayed until the Ninth Circuit decides whether or not to hear this appeal. A district court may stay a case pending interlocutory appeal. 28 U.S.C. § 1292(b). "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*,

7

1   300 F.2d 265, 268 (9th Cir. 1962).  When considering whether to stay proceedings, courts
2   should consider "the possible damage which may result from the granting of a stay, the
3   hardship or inequity which a party may suffer in being required to go forward, and the
4   orderly course of justice measured in terms of the simplifying or complicating of issues,
5   proof, and questions of law which could be expected to result from a stay." *Id.* (citing
6   *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

7   Here, Plaintiff has identified two potential sources of damage from granting a stay;
8   first, that she and her putative class will lack ERISA's protections for their retirement
9   benefits, and second, that it will be burdensome to restart discovery later, where it is
10  almost completed now.

11  The Court finds the first reason unconvincing, because Plaintiff has not shown that
12  the Plan is currently at risk of being underfunded; to the contrary, Defendants have put
13  forward evidence suggesting that the Plan is adequately funded for the next decade.
14  Connick Decl. at 1 (Docket No. 199).  Furthermore, the absence of ERISA's reporting and
15  disclosure requirements is not itself a great enough injury to prevent a stay here.

16  Plaintiff's second reason is also unconvincing.  As already noted, Defendants are
17  incurring significant costs in their efforts to produce discoverable materials.  Depending on
18  the resolution of this appeal and any subsequent issues, this discovery may be unnecessary.
19  Plaintiffs will not be injured by freezing discovery now; they will merely have to wait until
20  a later date, when it is clearer that such discovery is needed.  The mere fact that
21  Defendants may be "close" to finishing a particular round of discovery does not suggest
22  that it is inequitable to stop discovery now; given the number of attorney hours Defendants
23  are spending to comply with this request, completing production for this round will
24  certainly be costly.  While the Court recognizes that there is a potential loss of efficiency
25  in stopping a discovery effort that may be restarted later, this potential inefficiency is
26  warranted here, where the ongoing discovery is so costly and may be rendered unnecessary
27  altogether.
28  //

1      Finally, for the reasons discussed in parts I and II, above, the Court finds that the
2 orderly course of justice will be served by staying the proceedings now.  Appellate
3 resolution will provide certainty on the certified legal issue sooner rather than later.  Such
4 certainty will allow the litigation to turn to the remaining issues in an orderly fashion.
5 Imposing a stay promotes orderly litigation by preventing the parties from arguing and the
6 Court from deciding issues that may be rendered moot by the Ninth Circuit's decision.

**CONCLUSION**

   For the reasons set forth above, Defendants' motion to certify the Court's July 22, 2014 Order for interlocutory appeal is GRANTED.  The Case Management Conference scheduled for January 5, 2015 is continued to **February 9, 2015** at **1:30 PM**; the parties shall update the Court on the status of certification in a joint statement no later than 7 days prior to the Case Management Conference.  All other proceedings in this case are STAYED pending the Court of Appeals' decision whether or not to take the appeal.  The hearing scheduled for December 1, 2014 is VACATED.

**IT IS SO ORDERED.**

Dated:   11/26/14                          _____
                                            THELTON E. HENDERSON
                                            United States District Judge