UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STARLA ROLLINS, ET AL.,
    Plaintiffs,
v.
DIGNITY HEALTH, et al.,
    Defendants.

Case No. 13-cv-01450-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 249

Before the Court is Defendants' motion to dismiss the first amended complaint. ECF No. 249. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Plaintiffs bring this putative class action on behalf of all participants, former participants, and beneficiaries of the Dignity Health Pension Plan ("the Dignity Plan" or "the Plan"). ECF No. 243, First Amended Complaint ("FAC") ¶ 3. Defendant Dignity Health "operates a health care conglomerate in California, Arizona and Nevada and ancillary care facilities in nineteen states." Id. ¶ 1. Plaintiffs allege that the Plan violates many provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). Id. ¶ 4. Plaintiffs challenge Defendants' claim that the Plan is exempt from ERISA because it is a church plan. Id. Plaintiffs bring claims alleging violations of ERISA and, alternatively, state law claims for breach of contract, unjust enrichment, and breach of common law fiduciary duty. Id.¶¶ 277-321. Plaintiffs also bring a claim for declaratory relief that the church plan exemption violates the Establishment Clause of the First Amendment. Id. ¶¶ 266-276.

This case was filed on April 1, 2013 and assigned to Judge Thelton. E Henderson. ECF Nos. 1, 16. Judge Henderson granted Plaintiffs' motion for partial summary judgment on July 22,

2014. ECF No. 175. Judge Henderson found that the Dignity Plan is not a church plan as defined by ERISA because the plan was not established by a church. Id. at 13. Judge Henderson then granted Defendants' motion to stay the case and to certify the district court's partial summary judgment order for interlocutory appeal. ECF No. 205.

On July 26, 2016 the Ninth Circuit issued an opinion affirming the district court. ECF No. 220. The Supreme Court granted Defendants' petition for a writ of certiorari and subsequently issued an opinion reversing the Ninth Circuit. ECF Nos. 223, 224. The case was reassigned to the undersigned on August 14, 2017. ECF No. 225. Plaintiffs filed an amended complaint on November 3, 2017. ECF No. 243. Defendants now move to dismiss the complaint. ECF No. 249.

## II.   REQUEST FOR JUDICAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." On a motion to dismiss, the court may also "consider materials incorporated into the complaint" when "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). This is true even if "the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC, No. 16-CV-06499-DMR, 2017 WL 3136443, at *5 (N.D. Cal. July 24, 2017).

Before turning to Defendants' specific requests, the Court makes a general observation about the appropriate use of judicial notice. As the Ninth Circuit recently noted, "[t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results. Defendants face an alluring temptation to pile on

2

numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." Khoja v. Orexigen Therapeutics, Inc., No. 16-56069, 2018 WL 3826298, at *6 (9th Cir. Aug. 13, 2018).

Here, Defendants repeatedly do what Khoja forbids – ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint. Exhibit 3, for example, is a copy of Dignity Health's "Mission." Dignity offers this document for the purpose of contradicting the assertion in Plaintiffs' complaint that the Dignity Plan is not sufficiently associated with the Catholic Church to qualify for the church plan exemption under ERISA. See ECF No. 249 at 15 ("Dignity Health holds itself out as a religiously affiliated health system. Dignity Health's website describes its 'Mission' as a commitment to 'furthering the healing ministry of Jesus.'"); 29 ("Dignity Health's website describes its 'Mission' as a commitment to 'furthering the healing ministry of Jesus,' and its Mission Integration process ensures that the healing ministry of Jesus is folded into all aspects of the organization."). Dignity is not explaining or arguing the allegations in Plaintiffs' FAC – it is trying to factually rebut them. As Khoja makes clear, to grant the request for judicial notice would improperly convert this Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. Khoja, 2018 WL 3826298 at *5. Many of Dignity's other requests are similarly problematic.

Many of Defendants' requests also seek notice of material taken from websites, including their own website. These materials are not proper subjects of judicial notice. Dignity is correct that there are cases suggesting that courts may take judicial notice of "publicly available" websites. See Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014); Caldwell v. Caldwell, No. C 05-4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006), order clarified, No. C 05-4166 PJH, 2006 WL 734405 (N.D. Cal. Mar. 20, 2006); Wible v. Aetna Life Ins. Co., 375 F. Supp. 2d 956, 965-66 (C.D. Cal. 2005). But a close examination of those cases show little to no basis in sound authority for their conclusion. And having considered the issue more fully, this Court rejects the notion that a document is judicially noticeable simply because it appears on a

3

publicly available website, regardless of who maintains the website or the purpose of the document.[1]

The purpose of the judicial notice rules is to allow the court or jury to consider a matter as to which there can be no reasonable dispute. "Rule 201(b) limits judicial notice to 'indisputable' facts, thus limiting the use of judicial notice to clear cases." 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure (Evidence) § 5102.2 (2d ed. 2005).

Consistent with this rationale, and because of their perceived reliability, courts have often admitted records taken from websites maintained by government agencies. See, e.g., L'Garde, Inc. v. Raytheon Space & Airborne Sys., 805 F. Supp. 2d 932, 937-38 (C.D. Cal. 2011). These cases represent the logical extension of the judicial notice rules. A government agency's records will often be judicially noticeable because they are public records. E.g., Pet Quarters, Inc. v. Depository Tr. & Clearing Corp., 545 F. Supp. 2d 845, 847 (E.D. Ark. 2008), aff'd, 559 F.3d 772 (8th Cir. 2009) (taking judicial notice of "Securities and Exchange Commission ('SEC') releases published in the Federal Register, briefs and opinions of other jurisdictions, public disclosures filed with the SEC, and other SEC publications"). Courts simply recognize that the same records should be equally admissible when they are maintained on websites rather than in hard copy files. See, e.g., Paralyzed Veterans of Am. v. McPherson, No. C 06-4670-SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) ("government agency websites . . . have often been treated as proper subjects for judicial notice"); Hansen Beverage Co. v. Innovation Ventures, LLC, No. 08-CV-1166-IEG POR, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.' This includes public records and government documents available from reliable sources on the Internet." (quoting United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003)).

By contrast, the records of private parties have no such imprimatur of reliability, and

---

[1] On one occasion, this Court cited Perkins with approval when taking judicial notice of a definition from the Investopedia website. Lorenz v. Safeway, Inc., 241 F. Supp. 3d 1005, 1012-13 (N.D. Cal. 2017). To the extent this Court's prior order in Lorenz can be read to hold that all materials on publicly-available websites are judicially noticeable, the Court disavows that holding.

4

neither do their websites. There are at least a trillion web pages on the Internet, and many of the documents within those pages are unsupported, poorly supported, or even false. Of course, that does not make all of those documents inadmissible for all purposes. But they are not inherently reliable, and courts should be cautious before taking judicial notice of documents simply because they were published on a website. That is particularly so when a party seeks to introduce documents it created and posted on its own website, as Dignity does here. When a non-governmental entity to seek judicial notice of its paper records, the request is properly rejected because such documents are subject to reasonable dispute. See, e.g., Ladore v. Sony Comput. Entm't Am., LLC, 75 F. Supp. 3d 1065, 1074 (N.D. Cal. 2014) (rejecting request to judicially notice corporate terms of service because moving party "cannot establish that these documents' 'accuracy cannot reasonably be questioned.'"). That the same entity posts them on a "publicly available" website does not change that essential fact and does not make them "public records" for purposes of the judicial notice rules.

Turning to Defendants' specific requests, Defendants request that the Court take judicial notice of Exhibit 1, a copy of the Amended and Restated Bylaws of Dignity Health; Exhibit 2, a copy of the Restated Articles of Incorporation of Catholic Healthcare West; Exhibit 8, a copy of the Catholic Healthcare West Retirement Plan Amended & Restated January 1, 20005; Exhibit 11, a copy of the Memorandum regarding the Requested *Nhil Obstat* in Directive 68 Ethical and Religious Directives for Catholic Health Care Services; and Exhibit 13, a copy of the Dignity Health Pension Plan Amended and Restated January 1, 2014. See ECF No. 249-2. Plaintiffs do not oppose these requests, but contend that the Court should not consider these exhibits for the truth of the matters asserted therein. ECF No. 257-1. These requests are granted.

Defendants also request judicial notice of Exhibit 3, a copy of Dignity Health's Mission; Exhibit 4, a copy of Dignity Health's Standards for Mission Integration; Exhibit 6, a copy of the Statement of Common Values See ECF No. 249-2. Dignity's sole justification for these requests is that the materials were printed from its website. These requests are denied.

Defendants request judicial notice of Exhibit 5, a copy of the Ethical and Religious Directives for Catholic Health Care. Although this document is posted on Dignity's website, that

5

is not the only justification for judicial notice. The Court may take judicial notice of the Ethical and Religious Directives for Catholic Health Care Services because it

> is a publication promulgated by the United States Council Conference of Bishops. The Ethical and Religious Directives are widely disseminated and must be followed by all Catholic Health Organizations. As the Ethical and Religious Directives are from a source whose accuracy cannot reasonably be questioned, the Court may take judicial notice of this document.

Overall v. Ascension, 23 F. Supp. 3d 816, 825 (E.D. Mich. 2014).

Defendants request judicial notice of Exhibit 7, Sister Judith Carle RSM's article entitled "Dignity Health: New Name, Same Mission." ECF No. 249-2 at 4. The only justification offered for this document is that it resides on a publicly-available website. ECF No. 249-2 at 4. Because this is an insufficient basis for judicial notice, the request is denied.

Defendants request judicial notice of Exhibit 9, a copy of the Dignity Health Retirement Plans Sub-Committee Charter. Plaintiffs oppose the request. ECF No. 257-1. Defendants argue that judicial notice is proper when "the complaint incorporates . . . [the] documents by reference, the complaint necessarily relies on those documents, and neither party questions their authenticity or relevance," and "[c]ourts routinely take judicial notice of ERISA plan documents like those at issue here." ECF No. 249-2 at 5 (quoting Lorenz, 241 F. Supp. 3d at 1012). Here, the FAC does not mention the Charter, much less incorporate it by reference. The Court therefore denies the request.

Defendants request judicial notice of Exhibit 10, excerpts from the Official Catholic Directory reflecting the inclusion of Dignity Health's Sponsoring Congregations and Catholic hospitals therein. ECF No. 249-2 at 5. Plaintiffs oppose this request. ECF No. 257-1. Defendants' purpose in attempting to introduce this document is to argue a fact that is in dispute, i.e., the degree of association or affiliation between Dignity Health and the Catholic Church. The request is denied.[2]

---

[2] With regard to Exhibit 10, Defendants cite Overall, 23 F. Supp. 3d at 824, which took judicial notice of the OCD. The Overall court used the standard that "extrinsic materials may be considered by a court if they 'fill[] in the contours and details' of a complaint." Id. (quoting Yeary v. Goodwill Indus.-Knoxville, Inc., 107 F.3d 443, 445 (6th Cir. 1997). Because that standard is more lenient than the Ninth Circuit's judicial notice standard, Overall does not assist the Court.

**III. LEGAL STANDARD**

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. Knievel, 393 F.3d at 1072.

**IV. DISCUSSION**

**A. Federal Claims**

"The Employee Retirement Income Security Act of 1974 (ERISA) exempts 'church plan[s]' from its otherwise-comprehensive regulation of employee benefit plans." Advocate Health Care Network v. Stapleton, 137 S. Ct. 1652, 1655 (2017). "The statutory definition of 'church plan' came in two distinct phases. From the beginning, ERISA provided that '[t]he term 'church plan' means a plan established and maintained . . . for its employees . . . by a church or by a convention or association of churches.' Then, in 1980, Congress amended the statute to expand that definition by deeming additional plans to fall within it. The amendment specified that for purposes of the church-plan definition, an 'employee of a church' would include an employee of a church-affiliated organization . . . ." Id. at 1656 (citing 29 U.S.C. § 1002(33)). The amendment also added the following provision:

> A plan established and maintained for its employees (or their

> beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.[3]

29 U.S.C. § 1002(33)(C)(i).

Under this statutory framework, churches and conventions or associations of churches are exempt from ERISA's requirements. Church-affiliated organizations are also exempt from ERISA's requirements as long as they meet three conditions. First, the entity must be a "tax-exempt nonprofit organization associated with a church." Medina v. Catholic Health Initiatives, 877 F.3d 1213, 1222 (10th Cir. 2017). Second, the retirement plan must be maintained by a principal-purpose organization, meaning that the plan must be "maintained by an organization whose principal purpose is administering or funding a retirement plan for entity employees." Id. Third, the principal-purpose organization itself must be controlled by or associated with a church. Id.

Plaintiffs allege that the Dignity Plan meets the definition of an ERISA defined benefit plan and is not a church plan. Plaintiffs also allege that even if the Dignity Plan could otherwise qualify as a church plan, the church plan exemption as claimed by Dignity violates the Establishment Clause.

Defendants argue that "Plaintiffs [fail] to allege that the Plan is not properly maintained as a church plan" and fail to adequately allege that Dignity Health or the sub-committee is not associated with a church. ECF No. 249 at 20, 27. Defendants also contend that Plaintiffs' Establishment Clause argument should be dismissed because it fails on the merits. Id. at 39.

---

[3] The Court will refer to an "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches," as a "principal-purpose organization."

8

### 1. Plaintiffs Adequately Allege That The Dignity Plan Is Not Properly Maintained As A Church Plan

Plaintiffs plausibly allege that the Plan is not properly maintained as a church plan. First, they allege that the Plan is "maintained" by Dignity for its own and its affiliates' employees, and that Dignity is neither a church, a convention or association of churches, nor an organization whose principal purpose or function is the administration or funding of the Plan as required by section 1002(33)(C)(i). FAC ¶¶ 126-27. Rather, Plaintiffs allege, Dignity's principal purpose or function is to provide healthcare services. Id. ¶ 127.

Defendantss respond that the Plan is "maintained" by a Sub-Committee whose principal purpose is the administration of the plan. ECF No. 249 at 21.[4] In Defendants' view, plan administration and plan maintenance are essentially the same thing. Plaintiffs reply that while the Sub-Committee may "administer" the Plan, it does not "maintain" it. ECF No. 257 at 21-22. At root is a dispute about whether "maintain" means something more than "administer" or "fund."

As noted by the Medina court, "nowhere does ERISA define 'maintain.'" Medina, 877 F.3d at 1225. Thus, to determine whether Plaintiffs' interpretation of that word is plausible, the Court must look elsewhere.

Plaintiffs' interpretation is supported by ordinary principles of statutory construction. If Congress had not intended to attach any significance to the word "maintained," it could have simply required that a plan be "administered or funded" by a principal-purpose organization, and not also "maintained" by one. It did not make that choice. See Advocate Health Care Network, 137 S. Ct. at 1659 (noting "when legislators did not adopt obvious alternative language, the natural implication is that they did not intend the alternative" (internal quotation marks and citations omitted)). And if the word "maintained" does have independent significance, then Defendants' interpretation violates another well-settled principle of statutory construction: "that

---

[4] In a footnote, Defendants also argue that even if the Plan is maintained by Dignity Health, it is still an exempt church plan because Dignity Health's employees are employees of a church and Dignity Health as their employer is deemed to be a church within the meaning of 29 U.S.C. § 1002(33)(C). ECF No. 249 at 27 n.14. Defendants provide very little support for this argument and, in any event, it is not one that can be resolved at the pleading stage.

9

legislative enactments should not be construed to render their provisions 'mere surplusage.'" Romero-Ruiz v. Mukasey, 538 F.3d 1057, 1062-63 (9th Cir. 2008) (quoting Am. Vantage Cos. v. Table Mountain Rancheria, 292 F.3d 1091, 1098 (9th Cir. 2002). Defendants' interpretation simply reads the word "maintained" out entirely.

The Supreme Court's recent decision in Advocate Health Care Network v. Stapleton also offers some guidance. Although the Supreme Court expressly did not consider whether the Dignity Plan is maintained as a church plan, the Court noted that "it is the entity maintaining the plan that has the primary ongoing responsibility (and potential liability) to plan participants." Advocate Health Care Network, 137 S. Ct. at 1661 (emphasis omitted). Plaintiffs allege that the Sub-Committee does not have the "primary ongoing responsibility (and potential liability) to plan participants" because it does not have "the power to fund, continue, amend and/or terminate the Plan." FAC ¶ 128.

Plaintiffs' construction of "maintain" is also supported by the multiple uses of "establish" and "maintain" as paired terms in section 1002, which suggest a degree of responsibility not found in the word "administer." See, e.g., 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" to include any plan "*established or maintained* by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was *established or is maintained*" for certain enumerated purposes (emphasis added)); 29 U.S.C. § 1002(16)(B) ("The term 'plan sponsor' means (i) the employer in the case of an employee benefit plan *established or maintained* by a single employer, (ii) the employee organization in the case of a plan *established or maintained* by an employee organization, or (iii) in the case of a plan *established or maintained* by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan." (emphasis added)); 29 U.S.C. § 1002(17) ("The term 'separate account' means an account *established or maintained* by an insurance company . . . ." (emphasis added)). As one commentator has noted, "[t]he difference between 'established' and 'maintained' is the same as the difference between 'creation' and 'existence.' The first requirement is the birth of the thing, which happens at a single point in time,

10

and the second requirement is how the thing continues to exist thereafter." Jeffrey A. Herman, Resolving ERISA's "Church Plan" Problem, 31 ABA J. Lab. & Emp. L. 231, 255 (2016).

In support of their interpretation of "maintain," Defendants cite Medina, which adopted one of the definitions given in Black's Law Dictionary: "cares for the plan for purposes of operational productivity." 877 F.3d at 1226. The Medina court chose its interpretation as the summary judgment stage after consideration of the parties' evidence. In this case, by contrast, the Court is at the Rule 12(b)(6) stage and is confined to the allegations of the FAC. The Medina court also did not address the use of the word "maintain" in the context of the remainder of section 1002. For example, it did not address Congress' choice to align the word "maintain" with the word "establish."[5] For now, the Court accepts Plaintiffs' construction of this statute. While generally the meaning of a statute is a pure question of law, in this instance the application of the statute to the facts learned in discovery may clarify the statute's meaning. See Knife Rights, Inc. v. Vance, 802 F.3d 377, 387 n.7 (2d Cir. 2015) (declining to construe statute until district court had the opportunity "to review the record evidence developed in discovery as to defendants' application of the statute").

Defendants also take issue with Plaintiffs' allegation that "even if a committee within Dignity 'maintained' the Plan, such an internal committee of Dignity does not qualify as a distinct principal-purpose 'organization.'" FAC ¶ 128. Defendants argue there is no requirement that a principal-purpose organization be separately constituted from the plan sponsor, given that Section 1002(33)(C)(i) "broadly provides that the organization may be a 'civil law corporation *or otherwise*.'" ECF No. 249 at 21 (emphasis in original). But Defendants do not assign a specific meaning to the phrase "or otherwise"; they merely disagree with Plaintiffs' contention that a principal-purpose organization must have an existence separate from Dignity. "Or otherwise" cannot simply encompass any possible entity, or else the statutory distinction would lose all meaning. Again, Plaintiffs have the better argument. Subject to the Court's prior caveat about the

---

[5] This omission is peculiar given its acknowledgement that "maintain" might have a different meaning "in other provisions of ERISA, where context may present a different answer." 877 F.3d at 1233 n.4.

11

benefits of discovery, Defendants' motion to dismiss on this ground is denied.

### 2. Plaintiffs Plausibly Allege That Dignity Health And The Sub-Committee Are Not Associated With A Church

Plaintiffs plausibly allege that Dignity is not associated with a church. See Knievel, 393 F.3d at 1072. Plaintiffs allege that Dignity is not associated with a church, or convention or association of churches because "Dignity does not share common bonds and religious convictions with a church or a convention or association of churches." FAC ¶ 138. Plaintiffs allege that Dignity does not impose any denominational requirement on its employees; has a practice of affiliating with hospitals that claim no religious affiliation; provides non-denominational chapels; and does not impose any denominational requirement on its patients. FAC ¶¶ 139-142. Plaintiffs further allege that Dignity is neither owned nor operated by the Catholic Church, nor does it receive funding from the Catholic Church. Id. ¶ 9. Plaintiffs cite official Church statements such as "the Archbishop of San Francisco's declaration that Dignity's name 'will not suggest a direct association with the Catholic Church' and that Dignity 'will not be recognized as Catholic'; a statement of the Phoenix Diocese that Dignity is 'secular'; and (iii) a statement of two moral theologians that Dignity 'will not be Catholic.'" Id.[6]

Defendants properly note that church control is not necessary for association. See 29 U.S.C. § 1002(33)(C)(i)-(ii); ECF No. 249 at 27-28. Defendants also remind the Court that it should not delve too deeply into the religious beliefs or practices of an organization. ECF No. 249 at 28. Defendants urge the Court not to adopt the test in Lown v. Continental Casualty Co., 238 F.3d 543, 548 (4th Cir. 2001) to determine association. ECF No. 249 at 30-31.[7] That case holds

---

[6] The point of the foregoing examples is not to decide whether these facts, if true, are sufficient to prove that Dignity or its Sub-Committee are not associated with a church, but merely to support the Court's conclusion that Plaintiffs adequately allege this claim. The Court will decide at summary judgment, or the trier of fact will decide at trial, whether these facts – if proven – and the facts revealed through discovery are sufficient to prove that allegation.

[7] As set forth in Lown, "[i]n deciding whether an organization shares such common bonds and convictions with a church, three factors bear primary consideration: 1) whether the religious institution plays any official role in the governance of the organization; 2) whether the organization receives assistance from the religious institution; and 3) whether a denominational requirement exists for any employee or patient/customer of the organization." 238 F.3d at 548.

12

that courts determining whether an organization is associated with a church should consider three primary factors: 1) whether the religious institution plays any official role in the governance of the organization; 2) whether the organization receives assistance from the religious institution; and 3) whether a denominational requirement exists for any employee or patient/customer of the organization. Lown, 238 F.3d at 548. However, Defendants provide this Court with no test, other than the statutory language and the Oxford English Dictionary, for evaluating whether Dignity Health and the sub-committee is associated with a church. Instead, Defendants argue that Dignity Health and the Sub-Committee "are clearly associated with the Catholic Church." Id. at 29. Defendants cite to Dignity Health's website, bylaws, membership of its Board of Directors, and Sponsorship Council, and financial support of the Sponsoring Congregations. Id. at 29-35. The majority of these materials cannot properly be considered on a motion to dismiss because they pertain to disputes of fact between the parties.[8]

Defendants' motion to dismiss on this ground is denied.

### 3. Plaintiffs' Establishment Clause Challenge

Plaintiffs allege that the application of ERISA's church plan exemption violates the Establishment Clause of the First Amendment.[9] FAC ¶¶ 146-149, 266-276. Intervenor United States asks that the Court first consider whether the Dignity Plan qualifies as a church plan under ERISA, because "[i]f the Court were to conclude that the challenged Dignity Plan is not a church plan, it would not need to reach Plaintiffs' constitutional claim." ECF No. 260 at 12.

The Court agrees. "It is a well-established principle governing the prudent exercise of [the federal court's] jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." Nw. Austin Mun. Util. Dist. No.

---

[8] For example, Plaintiffs and Defendants dispute the meaning of the facts within Exhibit 11, the Memorandum regarding the Requested *Nihil Obstat*. Plaintiffs argue that this "statement of non-objection was conditioned on the facts that, following the reorganization, Dignity's name 'will not suggest a direct association with the Catholic Church' and Dignity 'will not be recognized as Catholic.'" ECF No. 257 at 31-32. On the other hand, Defendants devote three pages of argument to contending that the *Nihil Obstat* is not an official statement that Dignity Health is not associated with the Catholic Church. ECF No. 258 at 18-20.

[9] The relevant constitutional text is: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."

13

One v. Holder, 557 U.S. 193, 205 (2009) (quoting Escambia County v. McMillan, 466 U.S. 48, 51 (1984)). The Court will reach the constitutional question if and when it determines that the Dignity Plan qualifies as a church plan.

### B. State Law Claims

Plaintiffs allege alternative claims for breach of contract, unjust enrichment, and breach of common law fiduciary duty. See FAC ¶¶ 277-321. Defendants argue that the Court should not exercise jurisdiction; that Plaintiffs lack standing to pursue the state law claims; and that the state law causes of action do not state a claim upon which relief can be granted. ECF No. 249 at 13.

#### 1. Jurisdiction

The Court has supplemental jurisdiction over these claims because these claims arise from the same set of facts as the federal claims. See 28 U.S.C. § 1367. The Court recognizes the possibility that at some future point, the Court may dismiss the federal claims and decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). For now, however, the Court has supplemental jurisdiction over the state claims.[10]

#### 2. Standing

Defendants argue that Plaintiffs lack standing because Plaintiffs do not allege that they have suffered any injury or that Dignity Health has failed to pay any benefit payment, and they do not allege any breach that is unrelated to the alleged failure to fully fund the Plan. Also, they do

---

[10] Plaintiffs contend that this Court also has jurisdiction over the state law claims under the Class Action Fairness Act of 2005 ("CAFA"). See 28 U.S.C. § 1332(d). Defendants argue that this Court must decline CAFA jurisdiction under the "local controversy" exception to CAFA. See 28 U.S.C. § 1332(d)(4)(B); ECF No. 249 at 41. Defendants bear the burden of proof as to any exception under CAFA. Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021-22 (9th Cir. 2007). Defendants contend that the Dignity Health Pension Plan's recordkeeper conducted an analysis of Plan participants by state and found that of the 98,270 Plan participants whose mailing addresses are known, 71.35% have California mailing addresses. ECF No. 249-1 at 3-4. Plaintiffs argue that Defendants have not met their burden for removal because the retiree address data was correct at the time the employee retired but does not reflect subsequent address changes. ECF No. 257 at 45. Defendants contend that they may rely on the doctrine of continuing domicile. ECF No. 258 at 27; see Mondragon v. Capital One Auto Fin., 736 F.3d 880, 885 (9th Cir. 2013) ("[A] party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change."). The question of whether the Court has CAFA jurisdiction will only be relevant if the federal claims are dismissed with surviving state claims. The Court will address this question at such a time.

14

not allege any facts to support the conclusion that there is any imminent risk of default. ECF No. 249 at 42.

"[A] trustee's misconduct will give rise to Article III standing where the [m]isconduct . . . creates or enhances the risk of default by the entire plan." Slack v. Int'l Union of Operating Eng'rs, No. C-13-5001 EMC, 2014 WL 4090383, at *14 (N.D. Cal. Aug. 19, 2014) (internal quotation marks and citations omitted). Plaintiffs allege that Defendants have underfunded the Plan by nearly 1.8 billion dollars, such that the Plan was only funded at approximately 72% as of June 30, 2016. FAC ¶ 76. They further allege that their benefits are at great risk because the Plan provides that if it terminates, plan participants' "accrued benefits will be nonforfeitable only to the extent that the Dignity Plan trust is funded." Id. ¶ 77. Plaintiffs also allege that participants and beneficiaries' benefits are only guaranteed by the assets of the Plan and are not protected by Pension Benefit Guaranty Corporation guarantees as an ERISA plan would be. Id. ¶¶ 27, 79-80. In light of these allegations, the Court finds that Plaintiffs have sufficiently alleged that Dignity and/or the Retirement Committee "enhanced" a risk of default. See Slack, 2014 WL 4090383, at *15; Adedipe v. U.S. Bank, N.A., 62 F. Supp. 3d 879, 891, 894 (D. Minn. 2014). Accordingly, they do have standing.

Defendants argue that this alleged injury is highly speculative. ECF No. 249 at 45-46; ECF No. 258 at 29-31. Defendants argue that there is no statutory funding requirement for a church plan under California law, and under ERISA a plan is at risk only if it is less than 80% funded. ECF No. 258 at 29-30. Defendants contend there is "no risk that Dignity Health could fail to meet its obligations, even if they came due today," because it has $17 billion in assets and operating revenues of approximately $12.6 billion. Id. at 31. These contentions do not undermine Plaintiffs' standing, but merely demonstrate that there is a dispute of fact about the financial health of the Plan. Dignity Health might have significant assets and operating revenues, but without knowing more about Dignity Health's liabilities and expenses, these facts say nothing about Dignity's ability to fund the Plan.

At this early stage, Plaintiffs have adequately alleged standing.

### 3. Breach of Contract

The Dignity Plan states that "[t]he Employer shall contribute to the Plan an amount which is sufficient on an actuarial basis to provide for the retirement benefits and other benefits provided under the Plan." ECF No. 249-2 at 230. Defendants acknowledge Plaintiffs' contention that the Plan is underfunded, but argue that Plaintiffs' breach of contract claim "fails to allege that the Plan is insufficiently funded *on an actuarial basis* to provide for the benefits provided under the Plan." ECF No. 249 at 46 (emphasis in original). Defendants contend that a failure to fully fund the plan is not equivalent "with the contractual obligation to fund in an amount 'sufficient on an actuarial basis' to provide for the benefits under the Plan." Id. at 47.

Defendants' argument relies on a cramped reading of the amended complaint. Plaintiffs allege more than once that "Dignity has an obligation to make contributions to the Dignity Plan trust in an amount which is sufficient, *on an actuarial basis*, to fund all accrued benefits under the Dignity Plan." FAC ¶ 75 (emphasis added); see also ¶¶ 93D, 280. They also allege repeatedly that Dignity has breached this obligation. Id. ¶¶ 76, 246, 288, 292. Taken together, these obligations can fairly be read to state that the Plan is underfunded on an actuarial basis.[11] Given that the Court must construe Plaintiffs' allegations in the light most favorable to them, Fields v. Twitter, Inc., 881 F.3d 739, 743 (9th Cir. 2018), the allegations are sufficient to state a cause of action.

Plaintiffs' alternative claim for specific performance, however, fails. "Specific performance of a contract may be decreed whenever: (1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate." Union Oil Co. of Cal. v. Greka Energy Corp., 165 Cal. App. 4th 129, 134 (2008) (citing Blackburn v. Charnley, 117 Cal. App. 4th 758, 766 (2004)); see also Morrison v. Land, 169

---

[11] Plaintiffs also respond in their opposition that they rely on Dignity's financial statement which reported that the "funded status" of the Plan as negative $1.775 billion in 2016, and stated "that the 'benefit obligation' was calculated using 'actuarial valuations.'" ECF No. 257 at 50. In light of the Court's conclusion that the FAC adequately states a claim, the Court need not consider this argument, which relies on a document outside the complaint.

Cal. 580, 586 (1915) (holding that "the exclusive jurisdiction of equity to grant relief by way of specific performance of a contract will be exercised only in those cases where the legal remedy of compensatory damages is insufficient under the circumstances of the case, in the opinion of the court, to do complete justice between the parties"). Here, Plaintiffs have an adequate remedy at law in the form of damages.

Canova v. Trustees of Imperial Irrigation District Employee Pension Plan is instructive. In that case, participants in the defendants' pension plan alleged that the defendant's adoption of certain plan amendments had resulted in the underfunding of their pensions. They brought claims for declaratory relief and specific performance. The Court of Appeal concluded that specific performance was not available because when "a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim." Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan, 150 Cal. App. 4th 1487, 1497 (2007). Because plaintiffs could seek money damages, they were "not entitled to injunctive relief or specific performance because they had an adequate remedy at law." Id. (citing 5 Witkin, Cal. Proc. (4th ed. 1997) Pleading, §§ 759, 782, pp. 215 & 239 (4th ed. 1997)).

Plaintiffs try to distinguish this case from Canova by noting that case involved individual retirement accounts, whereas this one involves a pension plan. The distinction is immaterial. As the plaintiffs did in Canova, Plaintiffs here seek performance of "Dignity's obligation to make contributions to the Dignity Plan trust in an amount which is sufficient, on an actuarial basis, to pay for all accrued pension benefits." FAC ¶ 293. Once those damages are paid – if they are found to be due – there will be no need for equitable relief. This case is therefore distinguishable from Southern California Lumber Industry Retirement Fund v. Aspen Interiors, Inc., No. CV 08-1187-VBF(SHX), 2008 WL 11338770 (C.D. Cal. June 11, 2008), relied upon by Plaintiffs, in which the court found specific performance appropriate because defendants had not only "consistently failed to comply with its obligations," but would "continue to refuse or fail to pay contributions" into the future. Id. at *2.

Defendants' motion is granted as to Plaintiffs' claims for specific performance.

#### 4. **Unjust Enrichment**

Defendants argue that the Court should dismiss Plaintiffs' unjust enrichment claim because "[w]here there is a valid and enforceable contract, a party cannot bring a claim for unjust enrichment." ECF No. 249 at 49.

Defendants are correct that "[a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." Gerlinger v. Amazon.Com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). "However, Rule 8(d) of the Federal Rules of Civil Procedure expressly permits a plaintiff to plead claims in the alternative, and courts . . . have permitted unjust enrichment and breach of contract claims to proceed simultaneously." Longest v. Green Tree Servicing LLC, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015). In other words, "even though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative." Weingand v. Harland Fin. Sols., Inc., No. C-11-3109 EMC, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012) (citation omitted). "A defendant is not entitled to have a cause of action dismissed for failure to state a claim simply because it conflicts with another cause of action." Oracle Corp. v. SAP AG, No. C 07-1658 PJH, 2008 WL 5234260, at *9 (N.D. Cal. Dec. 15, 2008).

At a later stage of the case, perhaps Plaintiffs will be forced to elect among these claims. At this point, however, they may plead in the alternative. Defendants' motion to dismiss Plaintiffs' unjust enrichment claim is denied.

#### 5. **Breach of Fiduciary Duty**

Defendants' only argument against Plaintiffs' breach of fiduciary duty claim is that it "fails for the same reason Plaintiffs' breach of contract claim fails." ECF No. 249 at 50. Because the Court denies Defendants' motion to dismiss that claim, it denies the motion as to this claim as well.

### CONCLUSION

The Court GRANTS Defendants' motion to dismiss Plaintiffs' specific performance claim. In all other respects, the Court DENIES the motion. Plaintiffs may amend their complaint within 21 calendar days of the date of this order, solely to cure the defects identified in the order. If

Plaintiffs file a second amended complaint, it may not include any new claims without leave of Court.

Defendants' motion for leave to submit supplemental authority, ECF No. 265, is denied.

The Court sets a further case management conference October 17, 2018 at 2:00 p.m. An updated joint case management statement is due October 10, 2018. If Plaintiffs elect to file a second amended complaint, the parties may request that the Court continue the case management conference.

**IT IS SO ORDERED.**

Dated: September 6, 2018



JON S. TIGAR
United States District Judge