1  KELLER ROHRBACK L.L.P.
   Juli E. Farris (CA Bar No. 141716)
2  801 Garden Street, Suite 301
   Santa Barbara, CA 93101
3  Tel: (805) 456-1496 / Fax: (805) 456-1497
   Email: jfarris@kellerrohrback.com
4
   *Attorneys for Plaintiffs*
5
6  IZARD, KINDALL & RAABE, LLP
   Mark P. Kindall (CA Bar No. 138703)
7  29 South Main Street, Suite 305
   West Hartford, CT 06107
8  Tel.: (860) 493-6292 / Fax: (860) 493-6290
   Email: mkindall@ikrlaw.com
9
10 *Attorneys for Intervenor Plaintiffs*
11 *Additional Counsel on Signature Page*

12             **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
13                  **OAKLAND DIVISION**

14

| | |
|---|---|
| STARLA ROLLINS and PATRICIA WILSON, on behalf of themselves, individually, on behalf of all others similarly situated, and on behalf of the Dignity Plan,<br><br>Plaintiffs,<br><br>MICHELLE HALL, JENIFER HEINER, and CHRISTINE MONTOYA,<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>DIGNITY HEALTH, a California Non-profit Corporation, HERBERT J. VALLIER, an individual, DARRYL ROBINSON, an individual, the Dignity Health Retirement Plans Subcommittee, and JOHN and JANE DOES, each an individual, 1-20,<br><br>Defendants. | Case No: 13-cv-01450-JST<br><br>**PLAINTIFFS' SECOND RENEWED NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS, AND SUPPORTING MEMORANDUM**<br><br>Date: NOT SET<br>Time:<br>Ctrm: 6 – 2nd Flr.<br>Judge: Hon. Jon. S. Tigar |

# **TABLE OF CONTENTS**

I.    BACKGROUND AND CONTEXT.................................................................2

    A.    The Original Motion for Preliminary Approval. ...................................2

    B.    The First Denial Order. ........................................................................2

    C.    The First Renewed Motion...................................................................3

    D.    The Second Denial Order. ....................................................................3

    E.    Proceedings Subsequent to the Second Denial Order...........................4

II.   PRELIMINARY APPROVAL IS WARRANTED ........................................5

    A.    Preliminary Approval Is Warranted as to the Pre-Existing Terms of the Second Revised Settlement Agreement...........................................................................5

    B.    Preliminary Approval Is Warranted as to the Vesting Subclass...........................6

        1.    Legal Standard for Preliminary Approval. ..................................6

        2.    The Vesting Subclass Settlement Terms Warrant Preliminary Approval. ..7

            a.    The Modifications to the Settlement Agreement Resulted from Serious, Informed and Non-Collusive Negotiations.......................7

            b.    The Modifications to the Settlement Agreement Have No Deficiencies That Would Preclude Approval................................9

            c.    The Modifications to the Settlement Agreement Fall Within the Range of Possible Approval. .......................................................11

                (i)    The Risk That the Plan Will Qualify for the Church Plan Exemption. ......................................................................12

                (ii)   The Risk That the Vesting Subclass Would Not Obtain Relief. ...........................................................................14

        3.    The Vesting Subclass Should Be Preliminarily Certified........................18

            a.    The Vesting Subclass Satisfies Fed. R. Civ. P. 23(a). ..................19

            b.    The Vesting Subclass Satisfies Fed. R. Civ. P. 23(b)(1)(A). ........21

            c.    Proposed Counsel for the Vesting Subclass Satisfies Fed. R. Civ. P. 23(g).......................................................................................22

III.  PROPOSED SCHEDULE AND ORDERS .................................................................. 23

IV.  CONCLUSION ............................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*A.F. v. Providence Health Plan*,
    173 F. Supp. 3d 1061 (D. Or. 2016)......................................................................17

*Advocate Health Care Network v. Stapleton*,
    137 S. Ct. 1652 (2017) .................................................................................7, 12

*Alday v. Raytheon Co.*,
    619 F. Supp. 2d 726 (D. Ariz. 2008)...................................................................21

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................21

*Arizona Governing Committee v. Norris*,
    463 U.S. 1073 (1983) ..........................................................................................17

*Batemen v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ..............................................................................18

*Betts v. Reliable Collection Agency, Ltd.*,
    659 F.2d 1000 (9th Cir. 1981) ............................................................................18

*Boden v. St. Elizabeth Medical Center, Inc.*,
    404 F. Supp. 3d 1076 (E.D. Ky. 2019).................................................................13

*Boden v. St. Elizabeth Medical Center, Inc.*,
    No. 2:16-cv-00049-DLB-CJS (E.D. Ky. filed Mar. 17, 2016)................................. 7

*Castillo v. Bank of Am., NA*,
    980 F.3d 723 (9th Cir. 2020) ..............................................................................19

*Chevron Oil Co. v. Huson*,
    404 U.S. 97 (1971)..............................................................................................17

*CIGNA Corp. v. Amara*,
    131 S. Ct. 1866 (2011) ........................................................................... 14, 15, 16

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
    No. 15-cv-0224-YGR, 2016 WL 314400 (N.D. Cal. Jan. 25, 2016)......................10

*Cont'l Ins. Co. of N.Y. v. Cotten*,
    427 F.2d 48 (9th Cir. 1970)................................................................................15

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014)........................................................................11

*E.E.O.C. v. Puget Sound Log Scaling & Grading Bureau*,
  752 F.2d 1389 (9th Cir. 1985) ........................................................................17

*Gabriel v. Alaska Elec. Pension Fund*,
  773 F.3d 945 (9th Cir. 2014) ....................................................................15, 16

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ....................................................................19, 20

*Henrikson v. Choice Prods. USA, LLC*,
  No. 16-1317, 2017 WL 449591 (D. Minn. Feb. 2, 2017) ......................................15

*Hurtado v. Rainbow Disposal Co.*,
  No. 8:17-cv-01605-JLS-DFM, 2019 WL 1771797 (C.D. Cal. Apr. 22, 2019) ........................21

*Immigrant Assistance Project of L.A. Cty. Fed'n of Labor v. I.N.S.*,
  306 F.3d 842 (9th Cir. 2002) ........................................................................19

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ........................................................................20

*In re Mercy Health ERISA Litig.*,
  No. 1:16-cv-441, 2016 WL 8542891 (S.D. Ohio Dec. 2, 2016)................................22

*In re Mercy Health ERISA Litig.*,
  No. 1:16-cv-441, 2017 WL 1078589 (S.D. Ohio Mar. 21, 2017)..............................22

*In re Mercy Health ERISA Litigation*,
  No. 1:16-cv-00441-SKB (S.D. Ohio filed Mar. 30, 2016)........................................ 7

*Kaplan v. Saint Peter's Healthcare System*,
  810 F.3d 175 (3d Cir. 2015) ........................................................................16

*Kemp-DeLisser v. Saint Francis Hospital & Medical Center*,
  No. 3:15-cv-01113-VAB (D. Conn. filed July 21, 2015)........................................ 7

*Laurent v. PricewaterhouseCoopers LLP*,
  945 F.3d 739 (2d Cir. 2019) ....................................................................15, 16

*Medina v. Catholic Health Initiatives*,
  877 F.3d 1213 (10th Cir. 2017)................................................................12, 13, 14

*Milstein v. Werner*,
  57 F.R.D. 515 (S.D.N.Y. 1972) ....................................................................18

*Monper v. Boeing Co.*,
  104 F. Supp. 3d 1170 (W.D. Wash. 2015) ........................................................16

*Morales v. Intelsat Glob. Serv. LLC*,
  554 F. App'x 4 (D.C. Cir. 2014)....................................................................15

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
    823 F.3d 948 (9th Cir. 2016) ................................................................21

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*,
    No. 3:15-cv-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ................10

*Nicholson v. Franciscan Missionaries of Our Lady Health System*,
    No. 3:16-cv-00258-SDD-EWD (M.D. La. filed Apr. 21, 2016) .............................. 7

*Nunez-Reyes v. Holder*,
    646 F.3d 684 (9th Cir. 2011) ................................................................17

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ................................................................11

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................20

*Probe v. State Teachers' Ret. Sys.*,
    780 F.2d 776 (9th Cir. 1986) ................................................................17

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ...........................................................19

*Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*,
    No. 2:18-cv-07241-CAS(PLAx), 2020 WL 5518600 (C.D. Cal. Sept. 14, 2020)..............21, 22

*Roes v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ...........................................................9, 20

*Rollins v. Dignity Health*,
    830 F.3d 900 (9th Cir. 2016) ................................................................16

*Rollins v. Dignity Health*,
    No. 13-cv-01450-JST, 2019 WL 8165915 (N.D. Cal. Oct. 28, 2019) ....................... 2

*Rollins v. Dignity Health* (*Rollins I*),
    338 F. Supp. 3d 1025 (N.D. Cal. 2018)......................................................13

*Rollins v. Dignity Health* (*Rollins II*),
    336 F.R.D. 456 (N.D. Cal. 2020) .......................................................3, 9, 11

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..............................................................19

*Sanzone v. Mercy Health*,
    326 F. Supp. 3d 795 (E.D. Mo. 2018) ...................................................13, 14

*Sanzone v. Mercy Health*,
    954 F.3d 1031 (8th Cir. 2020) ..............................................................14

*Sheedy v. Adventist Health System Sunbelt Healthcare Corp.*,
    No. 6:16-cv-1893-Orl-31GJK, 2018 WL 3538441 (M.D. Fla. July 23, 2018) ................... 13, 14

*Skinner v. Northrop Grumman Ret. Plan B*,
    673 F.3d 1162 (9th Cir. 2012) ........................................................................................ 15

*Smith v. OSF HealthCare Sys.*,
    933 F.3d 859 (7th Cir. 2019) .......................................................................................... 14

*Stapleton v. Advocate Health Care Network*,
    817 F.3d 517 (7th Cir. 2016) .......................................................................................... 16

*Tucker v. Baptist Health System, Inc.*,
    No. 2:15-cv-00382-MHH (N.D. Ala. filed Mar. 3, 2015) ..................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................................ 19

*Walker v. Life Ins. Co. of the Sw.*,
    No. CV 10-9198 JVS, 2012 WL 7170602 (C.D. Cal. Nov. 9, 2012) ...................................... 18

*Ward v. United Airlines, Inc.*,
    No. 19-cv-03423-LB, 2021 WL 534364 (N.D. Cal. Feb. 12, 2021) ...................................... 22

**Statutes**

28 U.S.C. § 1715 ............................................................................................................... 3

ERISA § 203(f)(2), 29 U.S.C. § 1053(f)(2) ....................................................................... 19

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ....................................................... 14, 15

ERISA § 502(a)(3) ...................................................................................................... 15, 16, 17

ERISA § 502(c)(3) ............................................................................................................ 16

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. 18

Fed. R. Civ. P. 23(a) ..................................................................................................... 18, 19

Fed. R. Civ. P. 23(a)(1) ................................................................................................. 18, 19

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 18, 19

Fed. R. Civ. P. 23(a)(3) ..................................................................................................... 18

Fed. R. Civ. P. 23(a)(4) ................................................................................................. 18, 20

Fed. R. Civ. P. 23(b)(1)(A)...........................................................................................21

Fed. R. Civ. P. 23(c)(1)(B) ...........................................................................................22

Fed. R. Civ. P. 23(c)(5) .................................................................................................18

Fed. R. Civ. P. 23(g) .....................................................................................................22

Fed. R. Civ. P. 23(g)(1)(A)............................................................................................22

**Other Authorities**

Restatement (Third) of Trusts § 95, and Comment *a* (Tent. Draft No. 5, Mar. 2, 2009)...................................................................................................................16, 17

PLS.' SECOND RENEWED UNOPPOSED MOT.
FOR PRELIM. APPROVAL OF SETTLEMENT

**PLAINTIFFS' SECOND RENEWED NOTICE OF MOTION AND UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Please take notice that Plaintiffs and Intervenor Plaintiffs herewith submit their Second Renewed Unopposed Motion for Preliminary Approval of Settlement Agreement and Certification of Settlement Class (the "Second Renewed Motion") in which they urge the Court to enter an order:

1) preliminarily approving the Second Restated and Amended Class Action Settlement Agreement ("Second Revised Settlement" or "Second Revised Settlement Agreement");

2) preliminarily certifying the proposed Settlement Class and appointing Class Counsel;

3) preliminarily certifying the proposed Vesting Subclass and appointing Vesting Subclass Counsel;

4) approving the form and method of Class Notice; and

5) setting a date and time for a hearing ("Final Approval Hearing") for consideration of final approval of the Second Revised Settlement, payment of attorneys' fees and expenses, and grant of Incentive Awards to the Plaintiffs.

Pursuant to the Court's 4/16/2021 Case Management Order, ECF No. 305, no hearing has been set on this Motion.

While Defendants do not agree with all of the factual statements and legal arguments in the following Memorandum, they do not oppose the relief requested by Plaintiffs.[1]

---

[1] Capitalized terms not otherwise defined in this Second Renewed Motion shall have the same meaning ascribed to them in the Second Revised Settlement Agreement, attached hereto as Exhibit 1. "Exhibit" or "Ex." refer to the exhibits attached to this Second Renewed Motion. The Second Revised Notice of Proposed Settlement of Class Action, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, and Incentive Awards ("Second Revised Class Notice") is attached hereto as Exhibit 3. Exhibits attached to supporting declarations are identified by reference to the particular declaration.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      BACKGROUND AND CONTEXT

**A.      The Original Motion for Preliminary Approval.**

In their original Unopposed Motion for Preliminary Approval of Settlement Agreement (the "Original Motion"), ECF No. 284, Plaintiffs moved this Court for preliminary approval of the settlement agreement reached by the parties on June 27, 2019 (the "Original Settlement"), ECF No. 284-1. This Original Settlement had the following key terms:

- Contributions into the Dignity Health Pension Plan (the "Plan") of $100 million in cash, *see* Original Settlement § 7.1.2;
- Additional "Minimum Contribution" amounts paid into the Plan in cash, *id.* § 7.1.3;
- Non-monetary changes to the Plan, *id.* § 8;
- Payments totaling $825,000 to the PEP Plus subgroup, *id.* § 7.1.7;
- Payments totaling $660,000 to the vesting subgroup, *id.* § 7.1.6;
- An award not to exceed $6.15 million for attorney fees, expenses, and Incentive Awards, *id.* § 7.1.8; and
- Certification of a single class, *id.* § 2.2.2(b).

**B.      The First Denial Order.**

This Court denied the Original Motion without prejudice on October 28, 2019. Order Denying Without Prejudice Mot. for Prelim. Approval of Class Action Settlement ("First Denial Order"), ECF No. 289.[2] In the First Denial Order this Court identified four areas of concern: (a) the "clear sailing" and "kicker" clauses in connection with the requested award of attorney fees, expenses, and Incentive Awards (the "Fee Award"), *id.* at 10-13; (b) the amount of the requested Fee Award in relation to the value of the benefits to be obtained by the Class, *id.* at 13-15; (c) whether the payments to the two subgroups, the "PEP Plus" subgroup and "vesting" subgroup, were appropriate without subclass certification, *id.* at 15-16; and (d) the value of the subgroups'

---

[2] The First Denial Order is reported as *Rollins v. Dignity Health*, No. 13-cv-01450-JST, 2019 WL 8165915 (N.D. Cal. Oct. 28, 2019).

claims in relation to the amounts that will be paid to members of the subgroups. *Id*. at 16.[3]

## C.    The First Renewed Motion.

Plaintiffs addressed those issues in the Renewed Notice of Motion, Unopposed Motion for Preliminary Approval of Settlement Agreement and Certification of Settlement Class, and Supporting Memorandum ("First Renewed Motion"), ECF No. 290. As to the Court's first concern—the "clear sailing" and "kicker" clauses—Plaintiffs submitted a Revised Settlement Agreement, ECF No. 290-1, which eliminated them. As to the Court's other three concerns, Plaintiffs submitted argument and additional evidence in the First Renewed Motion.

## D.    The Second Denial Order.

On June 12, 2020, the Court denied the First Renewed Motion in its Order Denying Preliminary Approval of Class Action Settlement ("Second Denial Order"), ECF No. 292.[4] As to the Court's first concern, the Court acknowledged that "[t]he new Settlement eliminates the clear sailing and reversion [i.e., kicker] clauses, resolving the first issue." *Id.* at 8.

As to the Court's second concern—the size of the requested fee in light of the recovery— the Court concluded that "it now has sufficient information about the range of recovery to be able

---

[3] The Court also raised these issues:

(a) With respect to Class Action Fairness Act of 2005 ("CAFA") compliance, First Denial Order at 16 n.8, the parties previously agreed that CAFA notice pursuant to 28 U.S.C. § 1715 is required in this case. Defendants have agreed that they will provide the notices following the filing, this same date, of the Second Revised Settlement Agreement.

(b) With respect to the use of the term "subclass," for the PEP Plus subgroup, First Denial Order at 16 & 16 n.8, Plaintiffs agreed in the First Renewed Motion that they used that term in error. First Renewed Motion at 9-14. They will not seek certification of the PEP Plus subgroup as a subclass, and the term has been removed from the Second Revised Settlement Agreement and the Second Revised Notice with respect to the PEP Plus subgroup. *E.g.*, Ex. 1 § 1.24.

(c) The Court questioned the proposed $10,000 Incentive Awards for the two class representatives, Ms. Rollins and Ms. Wilson, but did not require further information about the awards at this time. First Denial Order at 17.

[4] The Second Denial Order is reported at *Rollins v. Dignity Health* (*Rollins II*), 336 F.R.D. 456 (N.D. Cal. 2020).

to evaluate Plaintiffs' fee request upon further motion." *Id.* at 10-11.

As to the Court's third and fourth concerns, whether the subgroups needed to be separately certified as subclasses and whether their recoveries were adequate, the Court distinguished between the two subgroups. As to the PEP Plus subgroup, the Court concluded that it did not "require the establishment of a subclass," *id.* at 13, and that "the PEP Plus subgroup's recovery under the Settlement is adequate." *Id.* at 14.

As to the vesting subclass, however, the Court found "a fundamental conflict of interest between the vesting subgroup and the rest of the class that must be addressed by subclass certification." *Id.* at 16. In view of that decision, the Court had no occasion to address the adequacy of the recovery for the vesting subclass. In light of this conflict, the Court denied the First Renewed Motion "without prejudice." *Id.* at 17.

**E.      Proceedings Subsequent to the Second Denial Order.**

On August 28, 2020, in response to the Court's Second Denial Order, three members of the vesting subgroup, represented by separate counsel, Mr. Mark Kindall of Izard, Kindall & Raabe, LLP ("IKR"), moved to intervene in this matter. Unopposed Mot. to Intervene, ECF No. 294. The Court granted the motion on Nov. 2, 2020. Order Granting Unopposed Mot. to Intervene, ECF No. 297.

Since that time Mr. Kindall and counsel for Dignity Health ("Dignity") have reported to the Court on the status of their discussions on a possible resolution of the claims of the vesting subgroup. On March 9, 2021, in their Joint Case Management Statement, ECF No. 302, Mr. Kindall and counsel for Dignity reported that they had made "substantial progress" on a possible settlement and expected that the settlement would be "wrapped-up and re-submitted for preliminary approval" within 30 days. *Id.* at 2. They were indeed successful, and the new agreement is memorialized in the Second Revised Settlement Agreement.

4

As to the vesting subgroup, the key terms of the Second Revised Settlement Agreement are:

- **Certification.** The vesting subgroup is to be separately certified as a Vesting Subclass, Ex. 1 § 2.2.2(b);
- **Consideration.** The amount paid to the Vesting Subclass is increased from $660,000 to $950,000, *id.* § 7.1.6;
- **Plan of Allocation.** The plan of allocation is revised so that each member of the Vesting Subclass receives the same proportion of his or her respective account balance (as opposed to a specified lump sum, as under the Original Settlement), *id.*;
- **Re-employment.** If any Vesting Subclass Member returns to employment with Dignity and, under the terms of the Plan, would be entitled to participate in the Plan as a vested Participant, then that Vesting Subclass Member will be entitled to participate in the Plan as a vested Participant notwithstanding any provisions of the Second Revised Settlement Agreement, *id.*;
- **Fees and Expenses.** Vesting Subclass Counsel will apply to the Court for an award of attorney fees and expenses not to exceed $50,000, *id.* § 7.1.9; and
- **Incentive Awards.** Vesting Subclass Counsel will apply to the Court for Incentive Awards to each of the Intervenors of $2,500, to be paid separately from the fee and expense award, *id.*

The Second Revised Settlement Agreement makes no significant change to the First Revised Settlement Agreement other than as relates the Vesting Subclass.

## II.   PRELIMINARY APPROVAL IS WARRANTED

**A.   Preliminary Approval Is Warranted as to the Pre-Existing Terms of the Second Revised Settlement Agreement.**

As mentioned, the Second Revised Settlement Agreement, the agreement now before the Court, leaves in place all the terms of the First Revised Settlement *except* those pertaining to the new Vesting Subclass.[5] Changes to other parts of the Second Revised Settlement Agreement are conforming changes to take account of the new provisions as to the Vesting Subclass and some amendments to dates in light of the passage of time since the First Revised Settlement Agreement was presented to the Court. There are no substantive changes. A redline of the Second Revised Settlement Agreement against the First Revised Settlement Agreement is attached as Exhibit 2.

---

[5] This section II.A of this memorandum has been prepared by proposed Class Counsel, that is, Keller Rohrback L.L.P. and Cohen Milstein Sellars & Toll PLLC, attorneys for Plaintiffs Ms. Rollins and Ms. Wilson.

As we understand the Court's First and Second Denial Orders, the Court found no impediments to preliminary approval of the First Revised Settlement Agreement *other than* the issues the Court raised with respect to the "vesting subgroup," as it was then described. Thus, with respect to certification of the Settlement Class, the Court stated that it "does not foresee obstacles to preliminarily certifying the class for settlement purposes, besides the subclass issue." First Denial Order at 10 n.5. With respect to the pre-existing terms of Second Revised Settlement Agreement, the Court held in its Second Denial Order that those terms fall within "the reasonable range of recovery," as to the Settlement Class as a whole, Second Denial Order at 10, and are "adequate," as to the PEP Plus subgroup. *Id.* at 14. We urge the Court to preliminarily approved the Second Revised Settlement Agreement, and certify the Settlement Class, as to the pre-existing terms of that agreement, unchanged from the First Amended Settlement Agreement.

**B.**     **Preliminary Approval Is Warranted as to the Vesting Subclass.**

As to the terms of the Second Revised Settlement Agreement which bear on the members of the Vesting Subclass, the situation is, of course, entirely different.[6] This Court has never had occasion to consider whether the proposed settlement with respect to the Vesting Subclass warrants preliminary approval. However, under the principles laid down in this Court's prior opinions in this very case, the deal that has been struck for the Vesting Subclass is an excellent settlement and warrants preliminary approval.

**1.**     **Legal Standard for Preliminary Approval.**

This Court's recent Second Denial Order refers to "a two-step process in evaluating a class action settlement." *Id.* at 5. First, "a court must make a preliminary determination that the settlement is fair, reasonable and adequate . . . . The Court's task at the preliminary approval stage

---

[6] This section II.B of this memorandum has been prepared by Vesting Subclass Counsel, IKR, attorneys for Intervenor Plaintiffs Ms. Hall, Ms. Heiner, and Ms. Montoya.

is to determine whether the settlement falls within the range of possible approval." *Id.* (citations and internal quotation marks omitted). Second, if the class has not yet been certified the court "must likewise make a preliminary finding that it will likely be able to certify the class for purposes of judgment on the proposal." *Id.* (internal quotation marks and ellipses omitted). Intervenor Plaintiffs address each of the two steps in turn.

    **2.**    **The Vesting Subclass Settlement Terms Warrant Preliminary Approval.**

        **a.**    **The Modifications to the Settlement Agreement Resulted from Serious, Informed and Non-Collusive Negotiations.**

    Counsel for the Intervenors became involved in the action shortly after this Court's denial of the second motion for preliminary approval of the Settlement. Izard, Kindall & Raabe, LLP ("IKR") had already litigated several cases involving application of ERISA's "church plan" exemption, both alone and in cooperation with other firms, including *Kemp-DeLisser v. Saint Francis Hospital & Medical Center*, No. 3:15-cv-01113-VAB (D. Conn. filed July 21, 2015); *Tucker v. Baptist Health System, Inc.*, No. 2:15-cv-00382-MHH (N.D. Ala. filed Mar. 3, 2015); *Nicholson v. Franciscan Missionaries of Our Lady Health System*, No. 3:16-cv-00258-SDD-EWD (M.D. La. filed Apr. 21, 2016); *In re Mercy Health ERISA Litigation*, No. 1:16-cv-00441-SKB (S.D. Ohio filed Mar. 30, 2016); and *Boden v. St. Elizabeth Medical Center, Inc.*, No. 2:16-cv-00049-DLB-CJS (E.D. Ky. filed Mar. 17, 2016). *See* Declaration of Mark P. Kindall in Support of Plaintiffs' Second Renewed Unopposed Motion for Preliminary Approval of Settlement Agreement and Certification of Settlement Class ("Kindall Decl."), Exhibit 4 hereto, ¶ 11. Some of these cases resulted in settlements that achieved significant results for the class, such as *Kemp-DeLisser* (which settled prior to the Supreme Court's decision in *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017)); others—like *Boden*—resulted in judgments for defendants. Kindall Decl. ¶ 11. Thus, IKR was well-informed concerning the law, including all of the caselaw that had developed in the wake of the Supreme Court's *Advocate Health* ruling.

Prior to engaging in any substantive discussions concerning the terms of the settlement related to the Vesting Subclass, counsel determined that it would be important to obtain more precise data concerning both the individual and aggregate amount of accrued benefits the members of the Vesting Subclass had forfeited when they left Dignity. Kindall Decl. ¶ 5. This entailed some preliminary negotiations with Defendants' counsel, since it was not clear whether that data was routinely kept after employees left the company. *Id.* Defendants were eventually able to produce the data, which allowed the Intervenors to have a better sense of the value of the proposed Settlement relative to the value of the forfeited benefits. *Id.*

After analyzing Defendants' data, Intervenors and counsel formulated a plan for negotiating improvements to the Settlement. The first part of the plan was to increase the overall amount of money going to the Vesting Subclass, the second part was to revise the allocation of those amounts to conform to the amounts that individual Vesting Subclass Members had lost, and the last part was to ensure that the Settlement did not result in prejudice to Vesting Subclass Members who might return to work at Dignity, and who might otherwise (under the terms of the Plan) be able to count their earlier service towards the Plan's vesting requirements. *Id. ¶ 6.* Intervenors made their opening demand in early November, 2020. *Id.*

Counsel for Defendants and Intervenors exchanged offers and counteroffers over a period of several months, both in writing and by telephone. *Id.* ¶ 7. The Defendants and Intervenors reached agreement on the terms of the Settlement applicable to the Vesting Subclass in mid-February, 2021. *Id.* Only after that did counsel for Intervenors raise the issue of payments for attorneys' fees, litigation expenses, and Incentive Awards for the Intervenors. *Id.* ¶ 8.

Throughout the process, counsel for Defendants and for the Intervenors vigorously defended their respective positions and engaged in negotiations that were serious and informed by a thorough understanding of both the facts of the case and the applicable law as it has developed

over the past few years. *Id.* ¶ 10.

### b. The Modifications to the Settlement Agreement Have No Deficiencies That Would Preclude Approval.

Preliminary approval requires the Court to evaluate whether the proposed settlement has any "obvious deficiencies" such as granting "preferential treatment to class representatives or segments of the class." *Rollins II*, 336 F.R.D. at 461 (internal quotation and citation omitted). The proposed modifications to the Settlement Agreement satisfy these requirements.

The modifications to the Settlement Agreement provide each member of the Vesting Subclass with a recovery that is proportional to the amount that member forfeited upon leaving Dignity. This ensures that each member of the Vesting Subclass is treated equitably in relation to all other members of the Vesting Subclass.[7]

The modifications to the Settlement Agreement concerning attorneys' fees, litigation expenses, and Incentive Awards for the three Intervenors are obviously worth scrutiny, as are all such provisions in class settlements. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057-58 (9th Cir. 2019). However, the provisions as structured are appropriate and should cause the Court no concern.

---

[7] It is more difficult to compare the proposed recovery for the Vesting Subclass to the recovery by the rest of the Class, as their claims are very different. The claims of the Vesting Subclass, like the claims of the Class as a whole, rise or fall on whether the Plan qualifies as a church plan. However, while a determination that the Plan was not exempt would automatically trigger substantial changes to administration and funding of the Plan on a go-forward basis, the Court would have discretion to determine whether the Plan should be required to pay purely retrospective relief to former participants who forfeited benefits prior to the Court's determination. Moreover, the Court would need to evaluate the effect of releases that some members of the Vesting Subclass signed in exchange for benefits at the time they separated from the Company. Another complicating factor in any comparison between the proposed Settlement's treatment of the Vesting Subclass versus other Class Members is that the dollar amount of the benefits forfeited by Vesting Subclass is definitely determinable, while the calculation of the maximum financial impact of a victory for the larger Class as a whole is considerably less precise. In light of these uncertainties, counsel for the Intervenors believes that the proposed Settlement, as modified, treats members of the Vesting Subclass equitably relative to other Class Members.

First, the provisions of the Settlement Agreement relating to payment of attorneys' fees and expenses and Incentive Awards for the Intervenors were not negotiated, or even discussed, until all of the proposed modifications to the Settlement Agreement benefiting the Vesting Subclass had been negotiated and agreed to. Kindall Decl. ¶ 8. This sequencing is evidence that both the Intervenors and their counsel kept the interests of the Vesting Subclass "firmly in first place." *Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.,* No. 3:15-cv-30024-KAR, 2020 WL 1495903, at \*4 (D. Mass. Mar. 27, 2020) (citing *Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-cv-0224-YGR, 2016 WL 314400, at \*2 (N.D. Cal. Jan. 25, 2016)).

Second, the modifications to the Settlement Agreement clearly indicate that the Settlement is in no way contingent upon the Court granting the forthcoming motion for fees, expenses, or Incentive Awards, even in part. This was the clear understanding of the Intervenors from the beginning.[8] If the Court denies the request in whole or in part, the money that is not awarded to Intervenors or their counsel will increase the distribution to the Vesting Subclass as a whole.

Third, the maximum fee and expense request that Intervenor's counsel will present, under the terms of the Settlement, is $50,000. Even looking solely at the additional monetary relief obtained for the Vesting Subclass during the negotiations of the modifications to the Settlement, which totals $290,000, the maximum fee is only 17 percent of that total—well below the 25 percent benchmark fee. Moreover, Intervenor's counsel is not seeking a lodestar multiple. Kindall Decl. ¶ 14 (requested fee is 72% of current lodestar).

With respect to the Incentive Awards, each of the Intervenors provided real and valuable service to the Vesting Subclass, spending significant time reviewing papers and consulting with

---

[8] Kindall Decl. Ex. 1 (Declaration of Jenifer Heiner in Support of Preliminary Approval of Class Action Settlement ("Heiner Decl.")) ¶ 16; Ex. 2 (Declaration of Michelle Hall in Support of Preliminary Approval of Class Action Settlement ("Hall Decl.")) ¶ 16; Ex. 3 (Declaration of Christine Montoya in Support of Preliminary Approval of Class Action Settlement ("Montoya Decl.")) ¶ 16.

counsel. Heiner Decl. ¶¶ 6-12; Hall Decl. ¶¶ 5-12; Montoya Decl. ¶¶ 7-12; Furthermore, the amount that the Intervenors will request—$2,500 per Intervenor—is modest, recognizing that (unlike Lead Plaintiffs) the period of time that they have worked on behalf of the Vesting Subclass is measured in months rather than years. Awards of less than $5000 are "presumptively reasonable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). Even if the Court ultimately determines that they should not be awarded, nothing in the request should lead the Court to question the validity of the Settlement.

### c. The Modifications to the Settlement Agreement Fall Within the Range of Possible Approval.

The final element of the Court's evaluation of preliminary approval is that the proposed Settlement "falls within the range of possible approval." *Rollins II*, 336 F.R.D. at 461 (citation omitted). As this Court recognized, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* at 463 (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)).

The proposed Settlement, as modified, will provide Vesting Subclass Members with just over 4% of the benefit accruals that they forfeited when they left the Company. The following chart provides additional detail:

| Measure | Forfeited Benefits | Settlement Amount |
|---|---|---|
| Mean Individual Benefit | $7,098 | $289.46 |
| Median Individual Benefit | $4,822 | $196.93 |
| Highest Individual Benefit | $69,771 | $2,845.29 |
| Lowest Individual Benefit | $86 | $3.50 |

No Intervenor, nor any attorney representing them, could describe a four percent recovery as the result that they hoped to achieve. In the opinion of both the Intervenors and their counsel, however, the proposed Settlement is still very much in the best interests of the Vesting Subclass and should be approved. This conclusion is driven entirely by the risk of recovering less than this amount—specifically, recovering nothing at all—coupled with the risk that the Vesting Subclass would face many additional years of litigation in the event that the Settlement is not approved.

### (i)      The Risk That the Plan Will Qualify for the Church Plan Exemption.

The primary risk, of course, is a judgment for Defendants on the claim that the Plan is not entitled to the church plan exemption from ERISA. The history of litigation over health care systems claiming the church plan exemption for their pension plans has been almost universally unsuccessful since the Supreme Court's ruling in *Advocate*. *Advocate* foreclosed the first, and most straightforward, argument for why many of these health care plans, specifically including the plan at issue in this case, would not qualify for the church plan exemption—that they were not "established" by a church. The Court determined that "a plan maintained by a principal-purpose organization therefore qualifies as a 'church plan,' regardless of who established it." 137 S. Ct. at 1663.

*Advocate* did not address the question of whether the plans at issue were "maintained" by "principal purpose organizations" that were associated with a church. *Id.* at 1657 n.2. Those issues have been the focus of most of the church plan litigation since *Advocate.* The Tenth Circuit's decision in *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017), decided six months after *Advocate,* addressed these issues in a way that was very favorable to the defendants. The court determined that a plan sponsor's internal committee could serve as a "principal purpose organization," and such an organization could be said to "maintain" the plan so long as it "cares for the plan for purposes of operational productivity." *Id.* at 1225-26 (citation omitted).

Furthermore, the *Medina* court determined that such an internal organization necessarily shares the affiliations of the larger entity of which it is a part, and thus would be "affiliated with a church" if the larger entity was so affiliated. *Id.* at 1227.

This Court had occasion to consider *Medina* when it ruled on Defendants' Motion to Dismiss in September of 2018. Order Granting in Part and Denying in Part Mot. to Dismiss, ECF No. 267; *Rollins v. Dignity Health* (*Rollins I*), 338 F. Supp. 3d 1025 (N.D. Cal. 2018). The Court expressed considerable skepticism concerning the *Medina* court's view that "maintaining" a plan for purposes of the church plan exemption required nothing more than caring for the plan for purposes of operational productivity, and indicated that it would accept Plaintiff's view that the statutory requirement was more stringent "[f]or now"—that is, for purposes of deciding Defendants' Motion to Dismiss. *Rollins I*, 338 F. Supp. 3d at 1037 (noting that "[w]hile generally the meaning of a statute is a pure question of law, in this instance the application of the statute to the facts learned in discovery may clarify the statute's meaning"). With the same caveat concerning the benefits of discovery and the stage of the proceeding, the Court indicated that Plaintiffs had the better argument concerning whether an internal committee of the plan sponsor could serve as a "principal purpose organization." *Id.*

Several other courts that have looked at these issues have followed the *Medina* decision. In *Sanzone v. Mercy Health*, 326 F. Supp. 3d 795 (E.D. Mo. 2018), the court determined that an internal plan sponsor committee could serve as a "principal purpose organization" and, so long as the committee "administered" the plan, that satisfied the statutory requirement that the principal purpose organization "maintain" the plan. *Id.* at 804. The same result was reached in *Boden v. St. Elizabeth Medical Center, Inc.*, 404 F. Supp. 3d 1076, 1088 (E.D. Ky. 2019). In *Sheedy v. Adventist Health System Sunbelt Healthcare Corp.*, No. 6:16-cv-1893-Orl-31GJK, 2018 WL 3538441 (M.D. Fla. July 23, 2018), the court denied a motion to dismiss, but agreed with *Medina*

13

on the meaning of "maintain" for purposes of the church plan exemption. *Id.* at *3 n.7 The *Sheedy* court also did not rule out the possibility that a plan sponsors' internal committee could qualify as a "principal purpose organization." *Id.* at *3. The Seventh Circuit agreed with *Medina's* determination that an internal committee could serve as a "principal purpose organization," but indicated that it was "not prepared, at this point, to commit ourselves to the *Medina* test, or at least to this district court's interpretation of *Medina*, under which, for example, it would not matter if the Committees formally charged with plan administration did not actually administer them." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 869 (7th Cir. 2019). Finally, the Eighth Circuit upheld the *Sanzone* decision, following *Medina* with respect to both the meaning of "maintaining" a plan, and whether an internal committee could be a principal purpose organization. *Sanzone v. Mercy Health*, 954 F.3d 1031, 1043-45 (8th Cir. 2020), *as corrected* (Apr. 9, 2020).

The post-*Advocate* caselaw provides Defendants in this matter with several legal arguments which might prevail, either before this Court or on appeal. If this Court were to rule, consistent with its initial determination for purposes of the Motion to Dismiss, that an internal plan committee could not qualify as a "principal purpose organization" or that "maintaining" a plan means more than "administration," the existence of this contrary authority makes it likely that Defendants would appeal. If the Ninth Circuit were to uphold that determination, it would create a circuit split, which increase the likelihood that the Supreme Court would grant certiorari.

### (ii)    The Risk That the Vesting Subclass Would Not Obtain Relief.

In addition to the risk that this Court, or another court on appeal, would find that the Plan is entitled to the church plan exemption, the Vesting Subclass bears additional risk related to the type of remedy they would seek. In *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), the Supreme Court determined that ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which authorizes a plan participant to bring suit to recover benefits due under the terms of a plan, or clarify rights to future

benefits, could not provide a basis for requiring payment of benefits that were ***contrary*** to the terms of a plan. *Id.* at 1868 (finding that nothing in ERISA section 502(a)(1)(B) authorized a court to alter the terms of a plan "where the change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy"). The *Amara* court held that such relief would be available, if at all, through ERISA section 502(a)(3) of ERISA, which permits suits "to obtain other appropriate equitable relief" to redress violations of ERISA. *Id.* at 1878 (citing ERISA section 502(a)(3)).

Federal courts have split on the question of whether the equitable remedy of reformation is available in the absence of mistake, fraud, or inequitable conduct. The Second Circuit recently held that reformation was available in an ERISA suit where plaintiffs alleged that the terms of a retirement plan violated the statute. *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 748 (2d Cir. 2019). However, other courts have reached the opposite conclusion. *See, e.g.*, *Morales v. Intelsat Glob. Serv. LLC*, 554 F. App'x 4, 5 (D.C. Cir. 2014); *Henrikson v. Choice Prods. USA, LLC*, No. 16-1317 (MJD/LIB), 2017 WL 449591, at *1 (D. Minn. Feb. 2, 2017). In the past, the Ninth Circuit has used language suggesting that "reformation is proper only in cases of fraud and mistake." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) (citing *Cont'l Ins. Co. of N.Y. v. Cotten*, 427 F.2d 48, 53 (9th Cir. 1970)); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) ("The power to reform contracts is available only in the event of mistake or fraud") (citing *Skinner*, 673 F.3d at 1166). However, neither *Skinner* nor *Gabriel* included allegations that some clearly articulated plan terms violated ERISA.

The issue remains unsettled. Defendants in *Laurent* filed a petition for certiorari on July 10, 2020, and, according to the Supreme Court's docket, the petition has been supported by the Chamber of Commerce of the United States and The Business Roundtable (as *amici*). Furthermore, on October 19, 2020, the Supreme Court invited the Acting Solicitor General to file a brief

expressing the views of the United States. It does not appear that such a brief has been filed to date.[9] Counsel for Intervenors believes that *Laurent* was correctly decided and clearly accords with both the text of ERISA and principles of equity jurisprudence discussed in the Supreme Court's *Amara* decision. However, counsel for Intervenors was even more certain, in 2016, that the Supreme Court would not grant certiorari in this case, *Rollins v. Dignity Health*, 830 F.3d 900 (9th Cir. 2016), or in *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016), or in *Kaplan v. Saint Peter's Healthcare System*, 810 F.3d 175 (3d Cir. 2015), when the Ninth, Seventh, and Third Circuits had all reached an identical conclusion, with no dissent, concerning whether a "church plan" had to be "established by" a church. Counsel was further surprised when the eight justices on the Supreme Court (Justice Scalia's seat was then vacant) ***unanimously*** reversed the nine circuit court judges who had upheld plaintiffs' position in the intermediate appeals. In light of this history, the Supreme Court's clear interest in the *Laurent* case creates additional risk for plaintiffs seeking plan reformation under ERISA section 502(c)(3).

Even if reformation were unavailable, the Vesting Subclass could pursue the equitable remedy of surcharge—"monetary 'compensation' for a loss resulting from a trustee's breach of duty"—under ERISA section 502(a)(3). *Amara*, 131 S. Ct. at 1880 (quoting Restatement (Third) of Trusts § 95, and Comment *a* (Tent. Draft No. 5, Mar. 2, 2009)). In this circuit, "[t]o obtain relief by way of surcharge, a beneficiary must show a breach of fiduciary duties by an ERISA trustee, that the violation injured her or him, and that the remedy of surcharge is available for the claimed injury by reference to traditional equitable principles." *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1185 (W.D. Wash. 2015) (citing *Gabriel*, 773 F.3d at 958). The first two elements are relatively straightforward here, as Intervenors allege that the forfeiture of their benefits violated

---

[9] Docket *PricewaterhouseCoopers LLP v. Laurent*, No. 20-28 (U.S.), https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-28.html (last visited Apr. 15, 2021).

specific duties imposed by ERISA's vesting and anti-forfeiture provisions. However, the reference to "traditional equitable principles" creates substantial uncertainty.

In *A.F. v. Providence Health Plan*, 173 F. Supp. 3d 1061 (D. Or. 2016), for example, the court looked to the Restatement of Trusts to determine equitable principles that should guide its consideration of a surcharge claim under ERISA section 502(a)(3). *Id.* at 1073-74. The court then concluded that "the sincerity of Providence's efforts to understand and perform its responsibilities, as well as its actions and decisions, is relevant in determining whether and to what extent to award Plaintiffs make-whole relief in the form of surcharge." *Id.* at 1074. While Intervenors would certainly argue that the "sincerity" of Dignity's belief that it was entitled to avail itself of the church plan exemption, or even the reasonableness of that belief in light of prevailing precedents, should not diminish (let alone extinguish) the claims of the Vesting Subclass, there is no way to know in advance how this Court would weigh those equitable considerations.

Defendants in this litigation have repeatedly argued that, should the Court find that the Plan was not entitled to the church plan exemption, retroactive relief would not be available. For example, in the Updated Joint Case Management Statement filed October 27, 2014, ECF No. 186, Defendants argued that retrospective relief should not be available unless the employer was on notice "by prior judicial decisions" that its pension program was unlawful. *Id.* at 13-14 (quoting *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 782 (9th Cir. 1986)). Defendants also cited *Arizona Governing Committee v. Norris*, 463 U.S. 1073, 1106 (1983), *E.E.O.C. v. Puget Sound Log Scaling & Grading Bureau*, 752 F.2d 1389, 1393 (9th Cir. 1985), *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), and *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011), to support their argument that retrospective relief would be inappropriate and inequitable. *Id.* Defendants argued that they were entitled to rely on multiple Internal Revenue Service private letter rulings affirming that the Plan a valid church plan, as well as its agreement with the Pension Benefit Guarantee

Corporation that presupposed the Plan's ERISA-exempt status. Updated Joint Case Management Statement at 6-7, ECF No. 273. While the Vesting Subclass would have arguments concerning whether the relief they seek should be considered "retroactive" in the first instance (especially for those who have not yet reached retirement age), and would certainly argue that the equities weigh in favor of Plan participants who have been denied benefits protected by law, there is a risk that this Court, or reviewing courts, might view the matter differently.

As courts have frequently recognized in approving class action settlements, "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972). At the outset of this litigation, it was more than reasonable to hope that Plaintiffs would prevail in the litigation, and that any settlement would be negotiated from a position of great strength. Developments in caselaw in the intervening years have served to substantially undercut those "highest hopes." Accordingly, Intervenors and their counsel believe that the proposed Settlement is in the best interests of the Vesting Subclass, and urge the Court to approve the Settlement.

### 3. The Vesting Subclass Should Be Preliminarily Certified.

The same standards that govern certification of a class apply to the certification of a subclass. *Walker v. Life Ins. Co. of the Sw.*, No. CV 10-9198 JVS (RNBx), 2012 WL 7170602, at *7 (C.D. Cal. Nov. 9, 2012) (citing *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981); Fed. R. Civ. P. 23(c)(5)).

Class certification involves a two-step analysis. *See Batemen v. Am. Multi*-Cinema*, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). First, Plaintiff must meet Fed. R. Civ. P. 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *Id.*; Fed. R. Civ. P. 23(a)(1)-(4). Second, the action "must fit into one of the three categories described in [Fed. R. Civ. P. 23](b)." *Bateman*, 623 F.3d at 712 (citation omitted). Application of those standards to the

Vesting Subclass at issue here is straightforward.

### a.   The Vesting Subclass Satisfies Fed. R. Civ. P. 23(a).

*Numerosity:* The numerosity requisite is met if the contemplated class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Ninth Circuit, numerosity is presumed when the class exceeds forty members. *See Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010); *Immigrant Assistance Project of L.A. Cty. Fed'n of Labor v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002). In this case, the Vesting Subclass includes 3,282 people who live in multiple states, many far removed from this Court. Thus, numerosity is satisfied.

*Commonality:* Fed. R. Civ. P. 23(a)(2) requires that the claims of the class—or, here, the Subclass—"depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A single common question of law or fact is sufficient, so long as its resolution is central to the case. *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020) (citing *Dukes*). Here again, the application of this standard is straightforward. If the Plan were governed by ERISA—if it were not entitled to rely upon the "church plan" exemption—every member of the Subclass would have vested in their benefits by virtue of ERISA section 203(f)(2), 29 U.S.C. § 1053(f)(2), and the forfeiture of those vested benefits would have violated ERISA. Thus, the application of the "church plan" exemption is a common question that is central to, and indeed dispositive of, the claims of every member of the Vesting Subclass.

*Typicality:* The typicality requirement "serves to ensure that 'the interest of the named representative aligns with the interests of the class.'" *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Typicality tests "whether other members have the same or similar injury, whether

the action is based on conduct which is not unique to the named plaintiffs, and whether other class

members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685

(9th Cir. 2014) (quoting *Hanon*, 96 F.2d at 508)).

Here, members of the Vesting Subclass accrued benefits under either the Value Protection

Plan ("VPP") or the General Growth Account ("GGA"). The legal claims are identical for

members of the VPP and GGA groups—both groups forfeited accrued benefits when they left

Dignity after more than three, but less than five years of vesting service. Intervenors Jenifer Heiner

and Christine Montoya accrued benefits under the GGA plan, while Intervenor Michele Hall

accrued benefits under the VPP. All of their claims, like those of the Subclass (and, indeed, the

Class as a whole) rise or fall depending on whether the Plan is entitled to the church plan

exemption.

*Adequacy:* The requirements of Fed. R. Civ. P. 23(a)(4) are met if the named plaintiffs and

their counsel (1) do not have conflicts of interest with other class members; and (2) will "prosecute

the action vigorously on behalf of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539,

566 (9th Cir. 2019). Both requirements are met here.

As noted above, the legal claims of Intervenors Heiner, Montoya, and Hall are coterminous

with the legal claims of the Vesting Subclass. All rise or fall together. The only potential "conflict"

is the one addressed in *Roes*, 944 F.3d at 1057-58—namely, the possibility that the Intervenors

might qualify for an Incentive Award for their work on behalf of the Vesting Subclass. That issue

should not concern the Court in this instance, for the reasons discussed in more detail in Section

2(b), *supra*, with respect to the Settlement Agreement's absence of obvious deficiencies: The

question of an Incentive Award was not raised in negotiation of the modifications to the Settlement

until *after* all terms relating to the Vesting Subclass as a whole had been negotiated and agreed to

by the Intervenors and the Defendants; the Settlement is in no way conditioned on the Court

awarding any Incentive Award payments at all; each of the Intervenors provided real and valuable service to the Vesting Subclass; and the amount that the Intervenors will request—$2,500 per Intervenor—are modest.

The Intervenors and their counsel have worked diligently to represent the interests of all Vesting Subclass Members. They have obtained and analyzed detailed information concerning the Plan forfeitures of all Vesting Subclass Members and engaged in months' worth of negotiations to improve the terms of the Settlement Agreement that related to their claims. Kindall Decl. ¶¶ 4-10; Heiner Decl. ¶¶ 6-12; Montoya Decl. ¶¶ 7-12; Hall Decl. ¶¶ 5-12. Accordingly, the requirement of adequacy is met.

### b.   The Vesting Subclass Satisfies Fed. R. Civ. P. 23(b)(1)(A).

The Vesting Subclass also satisfies the requirements of Fed. R. Civ. P. 23(b)(1)(A), which "prevents the prosecution of separate actions that would create the risk of 'inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class.'" *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016) (quoting Fed. R. Civ. P. 23(b)(1)(A)). Certification is proper under Fed. R. Civ. P. 23(b)(1)(A), "when a party is obligated by law to treat the members of a class in a like manner." *Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, No. 2:18-cv-07241-CAS(PLAx), 2020 WL 5518600, at *10 (C.D. Cal. Sept. 14, 2020) (quoting *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). That is precisely the case here. Either the Plan is governed by ERISA, in which case *all* members of the Vesting Subclass had their benefits improperly forfeited, or the Plan is exempt from ERISA and *none* of the members of the Vesting Subclass have a claim for forfeited benefits. "Conflicting interpretations by separate tribunals could result in countervailing directives to the" Plan administrators, *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2019 WL 1771797, at *10 (C.D. Cal.

Apr. 22, 2019), that "would make it impossible to administer the [Plan] consistent with judicial standards." *Risto*, 2020 WL 5518600, at *10.

### c.    Proposed Counsel for the Vesting Subclass Satisfies Fed. R. Civ. P. 23(g).

A class certification order must "appoint class counsel under [Fed. R. Civ. P.] 23(g)." Fed. R. Civ. P. 23(c)(1)(B)). Fed. R. Civ. P. 23(g)(1)(A) directs courts to consider "(1) counsel's work in identifying and investigating potential claims in the action; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the particular law; and (4) the resources that counsel will commit to representing the class. *Ward v. United Airlines, Inc.*, No. 19-cv-03423-LB, 2021 WL 534364, at *5 (N.D. Cal. Feb. 12, 2021).

IKR is well-qualified to represent the claims of the Vesting Subclass. As noted above, IKR has litigated several cases involving application of ERISA's "church plan" exemption, both alone and in cooperation with other firms. IKR is thus well acquainted with the risks entailed in the litigation of these cases. IKR's experience litigating these cases, and complex ERISA class actions more generally, is well established. *See, e.g.*, *In re Mercy Health ERISA Litig.*, No. 1:16-cv-441, 2016 WL 8542891, at *2 (S.D. Ohio Dec. 2, 2016), *report and recommendation adopted*, No. 1:16-cv-441, 2017 WL 1078589 (S.D. Ohio Mar. 21, 2017) (finding the firm was "well-qualified to serve as class counsel in this complex ERISA matter").

IKR investigated the claims of the Vesting Subclass and the progress of this litigation to date before agreeing to represent the Intervenors. Kindall Decl. ¶ 4. IKR has invested the resources necessary to evaluate the terms of the existing settlement, obtain and analyze data concerning the proposed Vesting Subclass, and negotiate modifications to the earlier Settlement that increase its value to the Subclass. *Id.* ¶¶ 5-10. IKR further recognizes that there is still considerable work to be done, including communications with Vesting Subclass Members and final approval of the Settlement. The firm will provide the same resources and expertise to these remaining objectives

as it has provided to date.

## III.   PROPOSED SCHEDULE AND ORDERS

Plaintiffs and Intervenor Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for CAFA Notice to be Served by Defendants | 10 days after filing this Second Renewed Motion |
| Deadline for Mailing of Class Notice and Posting Class Notice to Websites | 30 days after entry of the Preliminary Approval Order |
| Deadline for Filing Plaintiffs' Motion for Final Approval of Settlement Agreement, Attorneys' Fees and Expenses, and Incentive Awards for Plaintiffs | 60 days prior to the Proposed Final Approval Hearing |
| Deadline for the Settlement Class to Comment upon or Object to the Proposed Settlement | 25 days prior to the Proposed Final Approval Hearing |
| Deadline for Filing Plaintiffs' Reply in Support of Motion for Final Approval of Settlement Agreement, Attorneys' Fees and Expenses, and Incentive Awards for Plaintiffs, and for the Parties to Respond to Any Comments or Objections | 7 days prior to the Proposed Final Approval Hearing |
| Proposed Final Approval Hearing | 100 days after entry of the Preliminary Approval Order |

Proposed forms of Order granting preliminary approval and final approval are attached as Exhibits 5 and 6 hereto.

## IV.   CONCLUSION

Plaintiffs and Intervenor Plaintiffs respectfully request, based on the materials submitted in connection with the Original Motion, ECF Nos. 284 – 284-13, the First Renewed Motion, ECF Nos. 290 – 290-9, and this Second Renewed Motion, that the Court: 1) preliminarily approve the Second Revised Settlement Agreement; 2) provisionally certify the Settlement Class and the Vesting Subclass; 3) conditionally appoint the undersigned as Class Counsel and Vesting Subclass

Counsel; 4) order dissemination of notice to Settlement Class Members; 5) set a date for the Final

Approval Hearing; and 5) grant such other and further relief as the Court may deem appropriate.

Respectfully submitted this 16th day of April, 2021.

KELLER ROHRBACK L.L.P.

By: *s/ Christopher Graver*
Ron Kilgard (*pro hac vice*)
Christopher Graver (*pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248- 2822
rkilgard@kellerrohrback.com
cgraver@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Lynn L. Sarko (*pro hac vice*)
Matthew M. Gerend (*pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384
lsarko@kellerrohrback.com
mgerend@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Juli E. Farris (CA Bar No. 141716)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496 / Fax: (805) 456-1497
jfarris@kellerrohrback.com

COHEN MILSTEIN SELLERS & TOLL PLLC
Karen L. Handorf (*pro hac vice*)
Michelle C. Yau (*pro hac vice*)
1100 New York Avenue, N.W., Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600 / Fax: (202) 408-4699
khandorf@cohenmilstein.com
myau@cohenmilstein.com

***Class Counsel***

1

2

IZARD, KINDALL & RAABE, LLP

3

By: *s/ Mark Kindall*

4

Mark Kindall
29 South Main Street, Suite 305

5

West Hartford, CT 06107
Tel.: (860) 493-6292 / Fax: (860) 493-6290

6

mkindall@ikrlaw.com

7

***Vesting Subclass Counsel***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25

**CERTIFICATE OF SERVICE**

I, Cathy Hopkins, hereby certify that on April 16, 2021, a true copy of the above document was served on the Defendants, through their counsel of record, via ECF.

_s/ Cathy Hopkins_
Cathy Hopkins