UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLA ROLLINS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DIGNITY HEALTH, et al.,<br><br>    Defendants. | Case No. 13-cv-01450-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 306 |

Before the Court is Plaintiffs' second renewed motion for preliminary approval of class action settlement and preliminary certification of settlement class and subclass. ECF No. 306. For the reasons set forth below, the Court will grant the motion.

I.  **BACKGROUND**

  A.  **Factual and Procedural Background**

The factual and procedural background to this putative class action is more fully described in the Court's previous orders denying Plaintiffs' motions for preliminary settlement approval and preliminary class certification. *See* ECF Nos. 289, 292. In short, Plaintiffs sued Defendants Dignity Health and Dignity Health Retirement Plans Subcommittee as well as two individual defendants over the administration of the Dignity Health Pension Plan ("the Plan"). Second Amended Complaint ("SAC"), ECF No. 268 ¶ 3. The crux of the dispute is whether the Plan qualifies for the church plan exemption to the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* ¶ 4.

Plaintiffs filed suit in 2013. ECF No. 1. In 2019, after proceedings in the District Court, Ninth Circuit, Supreme Court, and then the District Court again, the parties reached a settlement. ECF No. 278. On June 27, 2019, Plaintiffs filed an unopposed motion for preliminary approval of

1    the settlement agreement – which included provisions for two subgroups – and to preliminarily

2    certify the class. ECF No. 284. On October 28, 2019, the Court denied approval without

3    prejudice and deferred ruling on preliminary class certification. ECF No. 289. On November 25,

4    2019, Plaintiffs filed a renewed, unopposed motion for preliminary approval and class

5    certification. ECF No. 290. The Court reluctantly denied the motion, recognizing that subclass

6    certification was required because the interests of the vesting subgroup were in conflict with those

7    of the general settlement class. ECF No. 292 at 16.

Following the second denial order, three members of the vesting subgroup obtained

8    separate counsel and filed a motion to intervene, ECF No. 294, which the Court granted, ECF No.

9    297. The subgroup's counsel, Mark Kindall of Izard, Kindall & Raabe, negotiated with counsel

10   for Dignity Health, ECF No. 306 at 12, and the parties arrived at a proposed settlement as

11   articulated in the Second Revised Settlement Agreement (the "Agreement"), ECF No. 306-1.

### B.       Terms of Settlement

The terms of the settlement agreement pertaining to the Settlement Class – "[a]ll participants, former participants, or beneficiaries of the Dignity Health Pension Plan," ECF No. 306-1 § 1.32 – are discussed at length in the Court's previous order denying preliminary approval, ECF No. 292 at 2-4. The Court incorporates its discussion of the parties' previous settlement agreement here.

The only material changes in the Agreement affect the vesting subgroup (now Vesting Subclass), defined as "the members of the Settlement Class who are former Participants in the Cash Balance portion of the Plan who terminated employment on or after April 1, 2013, and on or before March 27, 2019, and completed at least three (3) but less than five (5) years of vesting service." ECF No. 306-1 § 1.36. The changes to the Agreement include subclass certification of the vesting subgroup, a $290,000 increase in money paid to the Vesting Subclass (now totaling $950,000), and the distribution of funds to Subclass members proportionate to their previously "accrued benefits" under the Plan. *Id.* § 7.1.6. The Agreement also establishes eligibility for subsequent Plan participation should a Vesting Subclass member "return to employment with Dignity Health." *Id.* Finally, the agreement states that Vesting Subclass counsel will apply to the

1  Court for attorney fees and expenses not in excess of $50,000 and for an incentive award of
2  $2,500 for each named Intervenor.  *Id*. § 7.1.9.

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1332(d).

## III. MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy that favors" the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Rule 23 requires courts to employ a two-step process in evaluating a class action settlement.  First, the parties must show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval."  *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  *City of Seattle,* 955 F.2d at 1276 (citation omitted).  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011).  If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted).  The proposed settlement need not be ideal, but it must be fair

3

and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted).[1] The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id.* (citation omitted).

**B.   Discussion**

The Court denied Plaintiffs' first motion for preliminary approval

> for three main reasons: 1) the Settlement contained clear sailing and implied reversion clauses that raised concerns of collusion; 2) the Court could not evaluate the reasonableness of the amount Plaintiffs planned to seek in attorney's fees without a more precise 'denominator against which attorney's fees should be measured,' because the class's total recovery was insufficiently certain; and 3) Plaintiffs had not adequately shown why certification of two subgroups [PEP Plus Claimants and Vesting Claimants] was not required.

ECF No. 292 at 7-8 (citations omitted). The Court otherwise found that the settlement fell within the range of possible approval. *Id.* at 7. In their renewed motion for preliminary approval and revised settlement, the parties resolved the court's concerns regarding collusion, measuring

---

[1] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended to "displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

attorney's fees, and subclass certification for PEP Plus Claimants. *Id.* at 8-11.

However, the Court determined that subclass certification of the vesting subgroup was required in light of the conflicting interests between the subgroup and the rest of the settlement class. *Id.* at 14-16. The Court noted that the vesting subgroup is comprised solely of former employees who "will not benefit from class-wide prospective relief" and are therefore incentivized to seek "generous immediate payments" while the rest of the Settlement Class has an interest in the long-term strength of the fund. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997)); *see also Ferrington v. McAfee, Inc.*, No. 10-cv-01455-LHK, 2012 WL 1156399, at *7 (N.D. Cal. Apr. 6, 2012) ("[A] settlement that offers considerably more value to one class of plaintiffs than to another may be trading the claims of the latter group away in order to enrich the former group." (quotation marks and citation omitted)).

Plaintiffs explain that the Agreement "increase[s] the overall amount of money going to the Vesting Subclass," "revise[s] the allocation of those amounts to conform to the amounts that individual Vesting Subclass Members had lost," and "ensure[s] that the Settlement [does] not result in prejudice to Vesting Subclass Members who might return to work at Dignity." ECF No. 306 at 16. These amendments resolve the Court's prior concerns regarding the Vesting Subclass.[2]

The Court also finds that the parties have substantially complied with the Class Action Fairness Act of 2005's ("CAFA") notice requirements. *See* 28 U.S.C. § 1715. The parties explain in their motion that "Defendants . . . will provide the notices following the filing, this same date [April 16, 2021], of the Second Revised Settlement Agreement." ECF No. 306 at 11 n.3(a). This complies with Section 1715(b)'s requirement that CAFA notice be provided "[n]ot later than 10 days after a proposed settlement of class action is filed in court."

Finally, the Court looks to the Agreement's notice program. "For non-opt out cases, such

---

[2] The Court also notes that the attorney's fees and litigation expenses to be sought by Vesting Subclass counsel, and the proposed incentive awards for the three named Intervenors, are below the relevant Ninth Circuit benchmarks. *See* ECF No. 306 at 17-19; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("[U]nder the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%."); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015) ("In this district, [a] $5,000 [award] for each class representative is presumptively reasonable.").

1   as the ERISA Actions, all that is required is such unspecified 'appropriate notice' as 'the court
2   may direct.'" *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-CV-
3   05596-JST, 2017 WL 7243239, at *7 (N.D. Cal. Jan. 23, 2017) (quotation marks, alterations, and
4   citation omitted).  To satisfy due process, notice must be "reasonably calculated, under all the
5   circumstances, to apprise interested parties of the pendency of the action and afford them an
6   opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306,
7   314 (1950) (citations omitted).  The Court concludes that the proposed notice, ECF No. 306-5, and
8   the distribution plan – mailing the notice to Settlement Class Members' last-known address as
9   available from the Plan's record-keeper, using appropriate measures to locate corrected addresses
10  and re-mailing the notice when necessary, and publishing the notice and settlement agreement
11  online, ECF No. 284 at 37 – will fairly apprise class members of the settlement and their options.
12      As the parties have now addressed all previously noted deficiencies, the Court
13  preliminarily finds that the settlement of this action, on the terms and conditions set forth in the
14  parties' settlement agreement, is fundamentally fair, reasonable, adequate, and in the best interest
15  of the settlement class members.

**IV.    MOTION FOR PRELIMINARY CLASS CERTIFICATION**

    **A.    Legal Standard**

Class certification under Federal Rule of Civil Procedure 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 351).  "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  A class or subclass with more than 40 members "raises a presumption of impracticability based on numbers alone." *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) (quotation marks and citation omitted).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Id*. at 359 (quotation marks and alterations omitted).

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id*. (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Finally, "the adequacy of representation requirement [under Rule 23(a)] . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 462 (9th Cir. 2000).

A plaintiff must also establish that the action meets one of the bases for certification laid out by Rule 23(b). Rule 23(b)(1) permits certification when the separate actions of individual class members risk producing "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class." The Settlement Class relies on Rule 23(b)(1) or, in the alternative, Rule 23(b)(2). ECF No. 284 at 34. The Vesting Subclass looks to Rule 23(b)(1). ECF No. 306 at 29.

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. *Amchem*, 521 U.S. at 620. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity,

present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

### B. Discussion

The Court preliminarily finds, for settlement purposes only, that the Settlement Class satisfies the applicable prerequisites for class action treatment under Rule 23. First, the Settlement Class meets Rule 23(a)'s requirements:

- The Settlement Class satisfies the numerosity requirement as it is comprised of at least "91,168 participants and beneficiaries of the Plan." ECF No. 284 at 31.

- There are questions of fact and law common to the Settlement Class members including whether the Plan is governed by ERISA and whether fiduciaries of the Plan properly maintained the Plan in compliance with ERISA. *Id.* at 32.

- Plaintiffs' claims satisfy the typicality requirement as the injuries of all Settlement Class members are based on the alleged failure to comply with ERISA. *Id.* at 32.

- The Court concludes that named plaintiffs Starla Rollins and Patricia Wilson are adequate representatives and have fairly and adequately represented and protected the interests of Settlement Class members. *Id.* at 33. As discussed below, previous concerns regarding competing interests between the Vesting Subclass and the rest of the Settlement Class have been resolved through subclass certification.

The Court also holds that the Settlement Class meets the requirements of Rule 23(b)(1). Because the resolution of the claims of all Settlement Class members rely on the same question of law – whether the Plan is subject to ERISA – prosecuting claims separately risks "inconsistent or varying adjudications" that could impose "incompatible standards of conduct" for Dignity. Fed. R. Civ. P. 23(b)(1).

Therefore, the Court provisionally certifies the following class: "All participants, former participants, or beneficiaries of the Dignity Health Pension Plan as of the date of full execution of [the] Settlement Agreement." ECF No. 306-1 § 1.32.

### C. Vesting Subclass Certification

The Court similarly makes a preliminary finding, for settlement purposes only, that the

8

Vesting Subclass satisfies the applicable prerequisites for class action treatment under Rule 23. The Vesting Subclass meets the requirements of Rule 23(a):

- The numerosity requirement is satisfied by the 3,282 members of the Vesting Subclass. ECF No. 306 at 27.

- All Vesting Subclass members rely on the same questions posed by the rest of the Settlement Class – whether the Plan is governed by ERISA and whether fiduciaries of the Plan properly maintained the Plan in compliance with ERISA. *Id.* Thus, the commonality requirement is satisfied.

- Members of the Vesting Subclass bring claims based on benefits accrued under Dignity's Value Protection Plan or the General Growth Account. *Id.* at 28. "The legal claims are identical for members" of both groups. *Id.* Intervenors Jenifer Heiner and Christine Montoya participated in the General Growth Account, and intervenor Michele Hall participated in the Value Protection Plan. *Id.* As such, Intervenors' claims satisfy the typicality requirement.

- The named Intervenors' claims are identical with those of the Vesting Subclass, and the Court finds that the named Intervenors have fairly and adequately represented and protected the interests of the other subclass members, satisfying the adequacy requirement.

The Court also holds that the Vesting Subclass meets the requirements of Rule 23(b)(1). The individual claims of the Vesting Subclass all rely on the answer to the same legal question as the other members of the Settlement Class – whether the Plan is governed by ERISA. Prosecuting each claim separately therefore risks inconsistent judgments. *Id.* at 29.

The Court thus provisionally certifies the following subclass: "[T]he members of the Settlement Class who are former Participants in the Cash Balance portion of the Plan who terminated employment on or after April 1, 2013, and on or before March 27, 2019, and completed at least three (3) but less than five (5) years of vesting service." ECF No. 306-1 § 1.36.

## CONCLUSION

Because Plaintiffs' renewed motion for preliminary approval and provisional certification corrects the deficiencies addressed in the Court's earlier orders, the Court GRANTS the motion.

The Court preliminarily approves the Agreement and provisionally certifies the Settlement

United States District Court
Northern District of California

Class and the Vesting Subclass. The Court appoints Keller Rohrback L.L.P., including but not limited to Ron Kilgard, Christopher Graver, Lynn L. Sarko, Matthew M. Gerend, and Juli E. Farris, and Cohen Milstein Sellers & Toll PLLC, including but not limited to Karen L. Handorf and Michelle C. Yau, as Settlement Class Counsel. The Court appoints Izard, Kindall & Raabe, LLP, including but not limited to Mark P. Kindall, as Vesting Subclass counsel. The Court also appoints Angeion Group as settlement administrator.

The Court orders the dissemination of the proposed notice to Settlement Class and Vesting Subclass members pursuant to the terms of the Agreement. The Court sets the following dates:

a. Deadline for dissemination of class notice: December 2, 2021.

b. Deadline for filing Plaintiffs' Motion for Final Approval of Settlement Agreement, Attorneys' Fees and Expenses, and Incentive Awards: December 22, 2021.

c. Deadline for class members to comment upon or Object to the Proposed Settlement: January 28, 2022.

d. Deadline to file Plaintiffs' Reply in Support of Motion for Final Approval of Settlement Agreement, Attorneys' Fees and Expenses, and Incentive Awards for Plaintiffs, and for the parties to respond to any comments or objections: February 17, 2022.

e. A final approval hearing will be held on March 3, 2022 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: October 19, 2021

JON S. TIGAR
United States District Judge