KELLER ROHRBACK L.L.P.
Juli E. Farris (CA Bar No. 141716)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax: (805) 456-1497
Email: jfarris@kellerrohrback.com

*Attorney for Plaintiffs*

IZARD, KINDALL & RAABE LLP
Mark P. Kindall (CA Bar No. 138703)
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel.: (860) 493-6292 / Fax: (860) 493-6290
Email: mkindall@ikrlaw.com

*Attorney for Intervenor Plaintiffs*

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| STARLA ROLLINS and PATRICIA WILSON, on behalf of themselves, individually, on behalf of all others similarly situated, and on behalf of the Dignity Plan, <br><br> Plaintiffs, <br><br> MICHELLE HALL, JENIFER HEINER, and CHRISTINE MONTOYA, <br><br> Intervenor Plaintiffs, <br><br> v. <br><br> DIGNITY HEALTH, a California Non-profit Corporation, HERBERT J. VALLIER, an individual, DARRYL ROBINSON, an individual, the Dignity Health Retirement Plans Subcommittee, and JOHN and JANE DOES, each an individual, 1-20, <br><br> Defendants. | Case No: 13-cv-01450-JST <br><br> **PLAINTIFFS' AND INTERVENOR PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS, AND SUPPORTING MEMORANDUM** <br><br> Date: March 3, 2022 <br> Time: 2:00 p.m. <br> Ctrm: 6 – 2nd Floor <br> Judge: Hon. Jon. S. Tigar |

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 2

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.      Procedural History. ..................................................................................... 2

    B.      Settlement Negotiations. ............................................................................. 5

    C.      Preliminary Approval Proceedings and Revisions to the Settlement Agreement. .... 7

    D.      Terms of the Settlement Agreement. .......................................................... 8

III.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASSES .............10

IV.     THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS .......................11

    A.      The Content of the Notice Was Proper. ....................................................11

    B.      The Dissemination of Notice Was Proper. ................................................13

    C.      Notice Was Properly Given Under the Class Action Fairness Act. ...........15

V.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ...........15

    A.      Rule 23(e)(2)(A): Adequate Representation. ............................................16

    B.      Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length. .....16

    C.      Rule 23(e)(2)(C)(i): The Costs, Risks, and Delay of Trial and Appeal. ..................16

    D.      Rule 23(e)(2)(C)(ii): The Effectiveness of Distribution of Relief. ...........19

    E.      Rule 23(e)(2)(C)(iii): Attorney Fees. .......................................................19

    F.      Rule 23(e)(2)(C)(iv): "Agreement Made in Connection with the Proposal." ..........20

    G.      Rule 23(e)(2)(D): Equitable Treatment Among Settlement Class Members. ..........20

    H.      Rule 23(g): Appointing Class Counsel. ....................................................21

VI.     CONCLUSION ......................................................................................................21

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---------|----------|
| **1** | Second Restated and Amended Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") (04/13/2021) |
| **1-A** | Redacted List of Members of Vesting Subclass |
| **1-B** | Redacted List of Members of PEP Plus Claimants Subgroup |
| **2** | Joint Declaration of Ron Kilgard and Michelle Yau ("Joint Decl.") (12/22/2021) |
| **2-A** | Keller Rohrback Firm Resume |
| **2-B** | Cohen Milstein Firm Resume |
| **2-C** | Keller Rohrback Lodestar Calculations |
| **2-D** | Cohen Milstein Lodestar Calculations |
| **2-E** | Description of Keller Rohrback Categories |
| **2-F** | Joint Summary of Keller Rohrback and Cohen Milstein Lodestar |
| **2-G** | Keller Rohrback Expenses |
| **2-H** | Cohen Milstein Expenses |
| **3** | Declaration of Mark Kindall (Kindall Decl.") (12/22/2021) |
| **3-A** | Izard, Kindall & Raabe Firm Resume |
| **3-B** | Order Granting Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Named Plaintiff Incentive Awards, *Cryer v. Franklin Res., Inc.*, No. 4:16-cv-04265-CW (N.D. Cal. Oct. 4, 2019), ECF No. 168 |
| **3-C** | Declaration of Robert A. Izard in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees and Expenses, *Cryer v. Franklin Res., Inc.*, No. 4:16-cv-04265-CW (N.D. Cal. July 30, 2019), ECF No. 163-2 |
| **4** | Declaration of Settlement Administrator ("Angeion Decl.") (12/17/2021) |
| **4-A** | CAFA Notice 07/05/2019 |
| **4-B** | CAFA Notice 12/05/2019 |
| **4-C** | CAFA Notice 04/26/2021 |
| **4-D** | Class Notice |
| **4-E** | Email Notice |
| **5** | Declaration of Elizabeth Meckenstock ("Dignity Health Decl.") (12/20/2021) |
| **6** | Declaration of Daniel P. Cassidy ("First Cassidy Decl.") (06/27/2019), ECF No. 284-11 (exhibits omitted) |
| **7** | Supplemental Declaration of Daniel P. Cassidy ("Second Cassidy Decl.") (11/25/2019), ECF No. 290-7 (exhibits omitted) |
| **8** | Declaration of Plaintiff Starla Rollins ("Rollins Decl.") (12/20/2021) |
| **9** | Declaration of Plaintiff Patricia Wilson ("Wilson Decl.") (12/20/2021) |
| **10** | Declaration of Intervenor Plaintiff Michelle Hall ("Hall Decl.") (03/01/21), ECF No. 306-8 |
| **11** | Declaration of Intervenor Plaintiff Jenifer Heiner ("Heiner Decl.") (03/01/21), ECF No. 306-7 |
| **12** | Declaration of Intervenor Plaintiff Christine Montoya ("Montoya Decl.") (03/03/21), ECF No. 306-9 |
| **13** | [Proposed] Order and Final Judgment |

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4

*Advocate Health Care Network v. Stapleton*,
   137 S. Ct. 1652 (2017) ............................................................................ 3, 4, 17, 18

5

6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................10

7

8

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ...............................................................................15

9

*Custom LED, LLC v. eBay, Inc.*,
   No. 12-cv-00350-JST, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ....................10

10

11

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................10, 14

12

13

*In re Hyundai & Kia Fuel Economy Litigation*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................13

14

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..............11

15

16

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) ..........................................................................10

17

18

*Medina v. Catholic Health Initiatives*,
   877 F.3d 1213 (10th Cir. 2017)........................................................................17, 18

19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ..............................................................................................14

20

21

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ..........................................................................13

22

23

*Rollins v. Dignity Health*,
   830 F.3d 900 (9th Cir. 2016) ................................................................................. 3

24

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ................................................................................14

25

26

*Villegas v. United States*,
   963 F. Supp. 2d 1145 (E.D. Wash. 2013)..............................................................14

27

**Statutes**

28

26 U.S.C. § 414(e) .......................................................................................................... 2

28 U.S.C. § 1715 ...........................................................................................................15

28 U.S.C. § 1715(b) .......................................................................................................15

29 U.S.C. § 1002(33) ..................................................................................................2, 4

29 U.S.C. § 1053(f)(2) ....................................................................................................5

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................................10

Fed. R. Civ. P. 23(b)(1) ........................................................................................*passim*

Fed. R. Civ. P. 23(b)(2) ..................................................................................10, 11, 13

Fed. R. Civ. P. 23(b)(3) ...........................................................................................13, 14

Fed. R. Civ. P. 23(c)(2) ..................................................................................................14

Fed. R. Civ. P. 23(c)(2)(A) ............................................................................................14

Fed. R. Civ. P. 23(e)(1) ............................................................................................14, 15

Fed. R. Civ. P. 23(e)(2) ..................................................................................................15

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................16

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(ii) .......................................................................................19

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................................19

Fed. R. Civ. P. 23(e)(2)(C)(iv) ......................................................................................20

Fed. R. Civ. P. 23(e)(2)(D)............................................................................................20

Fed. R. Civ. P. 23(g) ................................................................................................15, 21

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Please take notice that on March 3, 2022, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Jon S. Tigar, United States District Judge for the Northern District of California, at the United States District Courthouse, 1301 Clay Street, Oakland, California 94612, Plaintiffs and Intervenor Plaintiffs will submit their Motion for Final Approval of Settlement Agreement and Certification of Settlement Class (the "Final Approval Motion") in which they urge the Court to enter an order:

1) approving the Second Restated and Amended Class Action Settlement Agreement;

2) certifying the proposed Settlement Class and appointing Class Counsel; and

3) certifying the proposed Vesting Subclass and appointing Vesting Subclass Counsel.

Plaintiffs and Intervenor Plaintiffs are separately moving for approval of attorneys' fees, expenses, and incentive awards (the "Fee Motions"), which motions are set for hearing contemporaneously with this Motion. While Defendants do not agree with all of the factual statements and legal arguments in the following Memorandum, they do not oppose the relief requested by this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Starla Rollins and Patty Wilson, and Intervenor Plaintiffs Michelle Hall, Jenifer Heiner, and Christine Montoya (Plaintiffs and Intervenor Plaintiffs together, "Named Plaintiffs"), through their respective undersigned counsel,[1] respectfully move the Court for an Order: (1) granting final approval of the Second Amended and Restated Class Action Settlement

---

[1] Class Counsel and Vesting Subclass Counsel have collaborated on the drafting of this memorandum. Representations in the memorandum applicable solely to the Settlement Class are representations of Class Counsel; likewise, representations applicable solely to the Vesting Subclass are representations of Vesting Subclass counsel.

Agreement ("Settlement" or "Settlement Agreement"), attached hereto as Exhibit 1; and (2) granting final certification of the Settlement Class and the Vesting Subclass pursuant to Fed. R. Civ. P. 23(b)(1).[2]

## I.   INTRODUCTION

On October 19, 2021, this Court granted preliminary approval of the parties' Settlement, preliminarily certified the Settlement Class and the Vesting Subclass, set a final hearing, and ordered dissemination of notice to the Settlement Class. Order Granting Mot. for Prelim. Approval of Class Action Settlement ("Preliminary Approval Order") at 9–10, ECF No. 307. The parties have fully complied with the terms of the Preliminary Approval Order, including providing notice of the Settlement to the Settlement Class. No objections have been received to date. Under the governing standards for evaluating class action settlements in this Circuit, this Settlement is fair, reasonable, and adequate, and therefore Plaintiffs respectfully ask that the Court finally approve the Settlement and certify the Settlement Class and the Vesting Subclass.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.   Procedural History.**

Plaintiffs' counsel Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll PLLC (collectively, "Class Counsel") discovered and developed this area of the law and dedicated several years to developing the legal theory challenging whether non-church entities could properly maintain their pension plans as "church plans" exempt from ERISA. *See* Ex. 2 (Joint Decl.) ¶¶ 24–27. They devoted many hours to researching the definition of a "church plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33) and 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the United States

---

[2] Capitalized terms not otherwise defined in this memorandum have the same meaning as ascribed to them in the Settlement Agreement. References to Exhibits are to Exhibits to this Final Approval Motion, listed in the Table of Exhibits at the outset.

Code, the legislative history of the statute, and agency and court interpretations of the statute. *Id.* ¶¶ 21, 38. Ultimately, Class Counsel began challenging the contention by a number of hospitals that claimed religious affiliations around the country that their pension plans were exempt from ERISA. *Id.* ¶ 27. This is one of the first cases that arose from that investigation, and it has been one of the most heavily litigated. *Id.* ¶¶ 4–20. The procedural history falls into four phases.

Phase One: Initial Proceedings in District Court. On April 1, 2013, Plaintiff Rollins filed her putative class action complaint in the Northern District of California, alleging violations of ERISA and improper treatment of the Plan as a "church plan," resulting in, among other things, placing participants and beneficiaries at risk by underfunding the Plan. ECF No. 1. Over the next year and a half, in the course of very active litigation and discovery, Plaintiff defeated Defendants' motion to dismiss, defeated Defendants' motion for summary judgment, and prevailed on her own summary judgment motion that a "church plan" under ERISA must be established by a church. Ex. 2 (Joint Decl.) ¶¶ 5–8. Plaintiff also defeated Defendants' initial motion for an interlocutory appeal of the ruling on the motion to dismiss. ECF No. 102. After Plaintiff then prevailed on her motion for partial summary judgment, Defendants again moved for permission for an interlocutory appeal. This time the Court granted it, and stayed all proceedings while the appeal was pending. ECF No. 205.

Phase Two: Ninth Circuit Appeal. On February 26, 2015, over Plaintiff's opposition, the Ninth Circuit agreed to hear Defendants' interlocutory appeal. Ex. 2 (Joint Decl.) ¶ 9. After full briefing and oral argument, on July 26, 2016, the Ninth Circuit unanimously affirmed the District Court's ruling in Plaintiff's favor.[3]

---

[3] *Rollins v. Dignity Health*, 830 F.3d 900 (9th Cir. 2016), *rev'd sub nom*, *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017).

Phase Three: Supreme Court Review. The Supreme Court then granted Defendants'
petition for a writ of certiorari, and consolidated this case with two other "church plan" cases in
which the plaintiffs had similarly prevailed in the Third and Seventh Circuits. *Id.* ¶ 10. After full
briefing and argument, the Supreme Court issued its decision on June 5, 2017. In brief, the Court
reversed the decisions of the Ninth Circuit and this Court and held that pension plans need not be
established by churches in order to qualify as ERISA-exempt church plans, as long as other
conditions necessary for church plan status are satisfied. *Advocate Health Care Network v.
Stapleton*, 137 S. Ct. 1652 (2017). Since the interlocutory appeal had resolved only one of the
issues raised by Plaintiff, this case was remanded for further proceedings on Plaintiff's other
ERISA liability theories.

Phase 4: Remand to District Court. This Court formally lifted the stay of proceedings on
October 1, 2017, ECF No. 239, and a month later Plaintiff Rollins, joined by new Plaintiff Patricia
Wilson, filed an amended complaint, ECF No. 243. Defendants promptly moved to dismiss.
ECF No. 249. On September 6, 2018, the Court denied Defendants' motion in part, and granted it
in part with leave to amend. ECF No. 267. Plaintiffs filed a Second Amended Class Action
Complaint ("Complaint" or "SAC") on September 27, 2018, ECF No. 268, and Defendants
answered on October 25, 2018, ECF No. 272. Ex. 2 (Joint Decl.) ¶¶ 11–13.

The operative Complaint alleges that Defendants denied ERISA protections to the
participants and beneficiaries of the Plan, a defined benefit pension plan sponsored by Dignity
Health, by claiming that the Plan qualifies as an ERISA-exempt "church plan" under 29 U.S.C.
§ 1002(33).[4] Plaintiffs assert ERISA violations, including: breaches of fiduciary duty (SAC
¶¶ 215–47); underfunding the Plan by over $1.5 billion (*id.* ¶ 76); failing to provide ERISA-

---

[4] Plaintiffs also allege that if the Plan does meet the statutory definition of a church plan under
29 U.S.C. § 1002(33), then the statutory exemption for church plans, as applied to Dignity
Health, violates the Establishment Clause of the First Amendment. SAC ¶¶ 266–76 (Count X).

compliant three-year vesting for Dignity Health's cash balance plans (*id.* ¶ 64);[5] failing to give notice of a change in a "backloaded" benefit formula that adversely affected a group of class members (*id.* ¶¶ 109–21); and failing to furnish Plaintiffs or any member of the class with ERISA-required statements, reports, and notices (*id.* ¶¶ 176–90). The Complaint also asserts alternative state law claims for breach of contract, unjust enrichment, and breach of fiduciary duty (*id.* ¶¶ 277–93 (Count XI), 294–307 (Count XII), ¶¶ 308–21 (Count XIII)).

In accordance with the Court's November 13, 2018 Case Management Order ("Scheduling Order"), ECF No. 275, the parties began the process of completing pending discovery as well as engaging in new discovery in advance of an August 2, 2019 deadline for filing a motion to certify a class. The parties concurrently began the mediation process and associated informal discovery that, as described below, resulted in Plaintiffs' and Defendants' initial Settlement.

**B.   Settlement Negotiations.**

While the Supreme Court was considering whether to grant Defendants' petition for a writ of certiorari, on September 29, 2016, the parties participated in a one-day mediation before a mediator experienced in ERISA class action cases, but were unable to reach a resolution. Ex. 2 (Joint Decl.) ¶ 10 n.4. After two more years of litigation, in the fall of 2018, the parties agreed to again seek a mediated resolution. *Id*. ¶ 14.

For this second mediation the parties engaged the services of Jill S. Sperber, a Judicate West mediator with substantial experience mediating complex cases. *Id*. During December 2018 and early January 2019, the parties prepared for the mediation, including, in light of the four years that discovery had been stayed, exchanging confidential financial information and documents on an expedited basis for use in the mediation, and preparing and submitting confidential mediation

---

[5] The Dignity Plan includes several different retirement formulas. Two of them are "cash balance" defined benefit formulas subject to special vesting rules under 29 U.S.C. § 1053(f)(2). SAC ¶ 64; *see* Ex. 1 (Settlement Agreement) § 7.1.6.

statements to the mediator. *Id.* Plaintiffs engaged the services of a plan actuary to assist them in analyzing information provided by Dignity Health for the mediation and Defendants worked closely with Dignity Health's Plan actuary throughout the mediation. *Id.*

The parties traveled to Los Angeles for a day-long in-person mediation session on January 15, 2019 but could not reach agreement. *Id.* ¶ 15. Nevertheless, the parties agreed to continue to work towards settlement and scheduled a second mediation session with Ms. Sperber for February 6, 2019. *Id.* ¶ 16. Prior to that second session, with the assistance of the mediator, Plaintiffs continued to communicate with Defendants, analyze and evaluate their position, and work on the terms of a possible settlement. *Id.* ¶ 15. The parties again traveled to and participated in the second day-long in-person mediation session with Ms. Sperber in Los Angeles, but were again unable to reach agreement. *Id.* ¶ 16.

While continuing with discovery as directed by the Scheduling Order, the parties, with the mediator's assistance, also continued their efforts at settlement. After numerous phone conferences and well over a dozen drafts of a term sheet, the parties reached an agreement to resolve the case, accepted a mediator's proposal as to attorneys' fees and expenses, and memorialized the key terms of the agreement in a Dignity Health Settlement Term Sheet ("Term Sheet") dated March 5, 2019. *Id.* ¶ 17. The Term Sheet was approved by the Dignity Health Board on March 27, 2019. *Id.* The parties then, with the continued assistance of the mediator, began negotiating a final and complete settlement agreement, and jointly notified the Court of the settlement on April 23, 2019, ECF No. 278. *Id.*

The settlement was the result of lengthy and contentious arm's-length negotiations between the parties. Ex. 2 (Joint Decl.) ¶¶ 15, 18. The process was thorough, adversarial, and professional. *Id.* And it was not quite finished.

**C.      Preliminary Approval Proceedings and Revisions to the Settlement Agreement.**

Plaintiffs sought preliminary approval of the settlement they had reached with Defendants in June, 2019 (the "Original Settlement"), ECF No. 284. On October 28, 2019, the Court denied that motion without prejudice, ECF No. 289 ("First Denial Order"), identifying as areas of concern certain features of the provisions for payment of attorneys' fees, expenses, and incentive awards, *id.* at 10–15; whether payments to the subgroups that are now described as the "PEP Plus Claimants" and the "Vesting Subclass" were appropriate without subclass certification, *id.* at 15–16; and the need for additional evidence of the value of the settlement and the claims being settled, *id.* at 16. With the guidance of the First Denial Order, Plaintiffs and Defendants engaged directly in further negotiations, amended their settlement agreement, and Plaintiffs obtained an additional expert report from an actuarial expert.

On November 25, 2019, Plaintiffs filed a Renewed Unopposed Motion for Approval of Settlement Agreement and Certification of Settlement Class, ECF No. 290, which the Court again denied without prejudice. The Court concluded that the subgroup that has now been preliminarily certified as the Vesting Subclass would require separate representation, because the Court could not otherwise determine whether the recovery for the Vesting Subclass was adequate. Order Denying Prelim. Approval of Class Action Settlement (the "Second Denial Order") at 16, ECF No. 292.

On August 28, 2020, in response to the Court's Second Denial Order, the Intervenor Plaintiffs—three members of the Vesting Subclass, represented by Vesting Subclass Counsel, Mark Kindall of Izard, Kindall & Raabe LLP ("IKR")—moved for and were granted permission to intervene in this matter. ECF Nos. 294, 297. After months of exchanges of information and negotiations between Defendants and Intervenor Plaintiffs—negotiations in which Plaintiffs and Class Counsel were not involved—Defendants and Intervenor Plaintiffs were able to reach an

agreement as to the Vesting Subclass (Kindall Decl.) ¶ 10. That agreement has been incorporated

into the final Settlement Agreement that has now been approved by the Preliminary Approval

Order.

**D.     Terms of the Settlement Agreement.**

Under the circumstances presented here, the Settlement is an excellent result for the

Settlement Class, the PEP Plus Claimants subgroup,[6] and the Vesting Subclass.[7] The Settlement

provides for:

- Contributions to the Plan Trust of **at least $100 million** in cash, *see* Ex. 1 (Settlement Agreement) § 7.1.2;

- Additional "Minimum Funding" amounts paid into the Plan Trust in cash over several years, *id.* § 7.1.3, that could amount to hundreds of millions of additional dollars;[8]

- Non-monetary changes to the Plan that provide Plan participants and beneficiaries with, among other things, access to important information about the Plan and the status of their benefits, *id.* § 8;

- Payments totaling $950,000 to the 3,282 members of the Vesting Subclass, *id.* § 7.1.6; Ex. 1-A (Vesting Subclass);[9] and

- Payments totaling $825,000 to the 950 members of the PEP Plus Claimants subgroup, *id.* § 7.1.7; Ex. 1-B (PEP Plus Claimants). Shares are expected to range from approximately $ 365.75 to $ 975.32, depending on their years of service and

---

[6] The "PEP Plus Claimants" are a discrete group of 950 Settlement Class members—non-unionized nurses—who accrued pension benefits under a formula that would have been impermissibly "backloaded" under ERISA, and who were not given ERISA-required notice of a change in benefit accruals as of January 1, 2014, that adversely affected them. SAC ¶¶ 248–65 (Count IX).

[7] The Vesting Subclass are 3,282 Settlement Class Members who separated from employment with Dignity Health without sufficient years of service to vest under the Cash Balance portion of the Plan, but who would have been entitled to vested benefits under ERISA. Ex. 1 (Settlement Agreement) § 1.36.

[8] The Court determined that, while this result was not guaranteed, Plaintiffs had provided sufficient support for the likelihood that the amounts paid into the Plan could total $747 million. Second Denial Order at 9.

[9] Only redacted versions of Exhibits 1-A and 1-B to the Settlement Agreement are publicly available. The exhibits, which list the members of the Vesting Subclass and the PEP Plus Claimants subgroup, respectively, have been filed under seal pursuant to the Court's ruling in the First Denial Order. ECF No. 289 at 10.

the magnitude of the effect on them of Dignity Health's change in the benefit accrual formula.

The Settlement also establishes certain equitable protections for Plan participants that will be built into the Plan and are comparable to some of ERISA's key protections. With respect to the administration of the Plan, participants and beneficiaries will have (or continue to have) access to:

- Summary Plan Descriptions ("SPDs") that identify the Plan Sponsor, Plan Administrator, and participating employers, and describe how benefits are paid, the pension formula, vesting requirements, requirements for participating in the Plan, and claims review procedures. Ex. 1 (Settlement Agreement) § 8.4.1. The "Plan Claims Review Procedure" will identify who makes the initial determinations of rights to a benefit, provide for written notice of any denial along with a statement of reasons for the denial, and provide a reasonable opportunity for a review of a denial. *Id.* § 8.4.4.

- A summary annual report identifying the Plan by name and EIN number, and stating the Plan year dates, funding arrangements, number of participants, and value of net assets. *Id.* § 8.4.2.

- Accrued Benefits information, including an online tool for projecting a Participant's future benefits. *Id.* § 8.4.3.

As an additional safeguard, during the five years after the Effective Date of the Settlement, Dignity Health will appoint two members of the Dignity Health Retirement Plans Sub-Committee who are not employees of Dignity Health or its affiliates. *Id.* § 8.4.5.

The Settlement also provides significant protection from cutbacks and forfeitures. Specifically, for ten years, the Settlement ensures that the existing Accrued Benefit of a Plan participant will not be reduced as a result of a transfer, merger, or consolidation of the Dignity Health Plan with another plan. *Id.* § 8.1. In the same vein, the Settlement provides that an amendment to the Plan will never reduce a participant's Accrued Benefit and that upon termination of the Plan all benefits will be 100% vested. *Id.* § 8.2.

The Settlement Agreement provides for a release of claims, and generally defines the Released Claims as claims brought by Plaintiffs, or claims that could have been asserted by Plaintiffs, arising out of the allegations in the instant action. Such a release is appropriate so that it

does not extinguish claims unrelated to the litigation. *See Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013). Given the developing law of federal regulation of pension plans, there is a significant carve out from the Released Claims. Namely, the Settlement Agreement provides that Defendants will not be released prospectively in the event of certain developments in the law, such as the Internal Revenue Service issuing a written ruling that the Plan does not qualify as a church plan, or ERISA is amended eliminating the church plan exception. *See* Ex. 1 (Settlement Agreement) § 4.1.

The Settlement further provides, subject to Court approval, for an award (a) to Class Counsel not to exceed $6.15 million for attorneys' fees, expenses, and incentive awards to Named Plaintiffs, *id*. § 7.1.8; and (b) to Vesting Subclass Counsel not to exceed $57,500 for attorneys' fees, expenses, and incentive awards to Intervenor Plaintiffs, *id*. § 7.1.9. These awards are being sought by separate motion.

## III.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASSES

Courts in this jurisdiction have consistently found that class certification is appropriate in ERISA cases. "ERISA [fiduciary] litigation . . . presents a paradigmatic example of a (b)(1) class." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D. Cal. 2008) (alteration in original) (quoting *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 453 (S.D.N.Y. 2004)). The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997).

The Settlement contemplates that the Court will certify two non-opt-out classes under Fed. R. Civ. P. 23(b)(1) or (b)(2). Ex. 1 (Settlement Agreement) § 2.2.2(a). The Court has preliminarily done so.

Settlement Class. In its Preliminary Approval Order, the Court conducted a Rule 23 analysis and preliminarily found, under Rule 23(a) and (b)(1), "for settlement purposes only, that

the Settlement Class satisfies the applicable prerequisites for class action treatment under

Rule 23." ECF No. 307 at 8. The Court provisionally certified the following Settlement Class:

"All participants, former participants, or beneficiaries of the Dignity Health Pension Plan as of the

date of the full execution of [the] Settlement Agreement."[10] *Id.* (alteration in original).

_Vesting Subclass_. The Court then conducted an independent Rule 23 analysis as to the

Vesting Subclass, and provisionally certified the following Vesting Subclass under Rules 23(a)

and (b)(1) as well: "[T]he members of the Settlement Class who are former Participants in the

Cash Balance portion of the Plan who terminated employment on or after April 1, 2013, and on or

before March 27, 2019, and completed at least three (3) but less than five (5) years of vesting

service." *Id.* at 9 (alteration in original).

While the objection deadline of January 28, 2022, has not yet passed, to date no objections

have been raised to the Court's provisional certification of the Settlement Class and the Vesting

Subclass. If such an objection is timely raised, Plaintiffs will address it in their reply, which is due

on February 17, 2022. In the absence of a viable challenge to certification, since the Court has

already conducted a full analysis under Rule 23, it need not do so again, and may simply rely on its

rationale for class certification as set out in the Preliminary Approval Order. *See In re Netflix*

*Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).

Accordingly, the Court should finally certify the Settlement Class and the Vesting Subclass.

## IV.  THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

**A.     The Content of the Notice Was Proper.**

The Class Notice was in two forms, ordinary mail notice and email notice.[11] The mailed

---

[10] The Settlement Agreement was fully executed on April 13, 2021. *See* Ex. 1 (Settlement
Agreement) at 21–23.

[11] About half of the 100,000+ notices were served by mail and the other half by email. All parties
have since realized that while the Preliminary Approval Order approved notice "pursuant to the
terms of the [Settlement] Agreement," ECF No. 307 at 10, which "may include email notice,"

                                                 MOTION FOR FINAL APPROVAL OF
                                                                SETTLEMENT AGREEMENT

notice provided detailed information about the Settlement to the members of the Settlement Class (including the 3,282 individual members of the Vesting Subclass), including: (1) a comprehensive summary of the Settlement's terms; (2) notice of counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards for the services performed by Named Plaintiffs; and (3) detailed information about the Released Claims. Ex. 4-D (Class Notice). In addition, the Class Notice provided information about the Fairness Hearing date, rights of members of the Settlement Class to object (and deadlines and procedures for objecting), and the procedure to receive additional information. *Id.* The Class Notice provided members of the Settlement Class with contact information for Class Counsel and Vesting Subclass Counsel, information on the toll-free phone number for inquiries, and website addresses for further information. *Id.*

The Email Notice prominently identifies who is in the Class and notifies them of the Settlement; refers them to the full Class Notice; and hyperlinks to three settlement websites that contain the Class Notice and the Settlement Agreement itself. Ex. 4-E (Email Notice). It further summarizes the nature of the case and the Settlement terms, including its benefits, releases, and proposed attorneys' fees, expenses, and incentive awards; notifies Class members of the objection deadline and the date of the Fairness Hearing; and provides email and telephone numbers to contact Class Counsel or Vesting Subclass Counsel. *Id.* The Email Notice was abbreviated from the full Class Notice for legibility and to avoid being filtered out as junk mail or spam, Ex. 4 (Angeion Decl.) ¶ 11; Ex. 2 (Joint Decl.) ¶ 48, but clearly and succinctly supplies the critical information from the Class Notice. Both notices referred the reader to the three firms' settlement websites.

---

Ex. 1 (Settlement Agreement) § 2.2.3, the discussion in the Preliminary Approval Order, ECF No. 307 at 5–6, did not expressly approve transmission of notice by email. As explained in the text, however, Named Plaintiffs nevertheless believe the notice program substantially complied with the Court's Preliminary Approval Order, and that full and appropriate notice was in fact properly given.

The content of these notices easily meets the enhanced notice requirements of Rule 23(b)(3), much less the requirements for (b)(1) and (b)(2) classes. As for the Email Notice, like the short form notice that was met with approval in *In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539 (9th Cir. 2019), "its primary purpose was to alert class members to the settlement, provide a high-level overview of the process, including critical dates, and explain where class members could obtain additional information." *Id.* at 567. *See also Noll v. eBay, Inc.*, 309 F.R.D. 593, 601, 605 (N.D. Cal. 2015) (approving use of a settlement website that makes the full form of notice available, and short email notice with a hypertext link to the settlement website).

**B.    The Dissemination of Notice Was Proper.**

The Court approved the proposed notice program set out in the Settlement Agreement (Ex. 1 (Settlement Agreement) § 2.2.3), and set December 2, 2021 as the deadline for dissemination of notice to the Settlement Class, including the Vesting Subclass. Preliminary Approval Order at 10. In accordance with the Settlement Agreement, this notice plan included the following elements: 1) mailed notice to last known addresses as available from the Plans' record-keeper for Settlement Class Members who have not authorized the Plan to communicate with them by email or for whom the Plan does not have an email address (primarily Plan participants no longer employed by Dignity Health); 2) follow up on the returned notices, to obtain to the extent possible corrected addresses, and re-mailing of the notices to the corrected addresses; 3) email notice to those Settlement Class Members who have authorized the Plan to contact them by email; 4) follow up mailed notice and, if appropriate email notice, on undeliverable or rejected email; and 5) publishing the notice and settlement agreement online. Ex. 1 (Settlement Agreement) § 2.2.3.

Defendants, at their expense, disseminated the following notices on December 2, 2021: (a) a mailed notice, sent to the last known address of 58,872 members of the Settlement Class (after first being processed through the USPS National Change of Address database), substantially

in the form of the Class Notice approved by the Court, Ex. 4 (Angeion Decl.) ¶ 8; Ex. 4-D

(Class Notice); and (b) an email notice, in the form attached as Exhibit 4-E, sent to the last known

email address of 55,453 Settlement Class Members who had authorized the Plan to communicate

with them by email. Ex. 4 (Angeion Decl.) ¶ 10. The addresses provided to Angeion for the notice

program were provided by the Plan from the regularly-kept records of the Plan. Ex. 5 (Dignity

Health Decl.) ¶¶ 3–5.[12] In addition, Class Counsel and Vesting Subclass Counsel established

settlement websites and published the Settlement Agreement and the Class Notice on those

websites: www.kellersettlements.com, www.cohenmilstein.com/Dignity-settlement, and

https://ikrlaw.com/file/DignityHealth. Ex. 2 (Joint Decl.) ¶¶ 42–45; Ex. 3 (Kindall Decl.) ¶ 15.

Due process requires that notice to class members be "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306,

314 (1950). For the due process standard to be met, "[a]ctual notice need not be provided to absent

members of a class action settlement to bind them, assuming the notice provided was the 'best

practicable notice.'" *Villegas v. United States*, 963 F. Supp. 2d 1145, 1159 (E.D. Wash. 2013)

(quoting *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)). Indeed, the stricter "best

practicable notice" standard—which expressly authorizes notice by "electronic means"—actually

applies to Rule 23(b)(3) opt-out classes. To satisfy the notice standard applicable here under Rule

23(b)(1), "[f]or non-opt out cases, such as the ERISA Actions, [all that is required is] such

unspecified 'appropriate notice' as 'the court may direct[.]'" *In re Glob. Crossing Sec. & ERISA*

*Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 23(c)(2)(A)). Here, the

dissemination of the notice satisfies all due process considerations and Rules 23(c)(2) and (e)(1).

---

[12] After analyzing and deduplicating the 117,969 records received, Angeion determined
114,325 had sufficient structured data for those records to be issued direct notice. Angeion
identified 2,009 records providing names only. Ex. 4 (Angeion Decl.) ¶ 7.

By December 2, 2021, as required by the Preliminary Approval Order, Class Counsel and Vesting Subclass Counsel also posted and linked the Complaint, the Settlement Agreement, the Class Notice, the Preliminary Approval Motion, and the Preliminary Approval Order on the websites identified above. *See* Ex. 2 (Joint Decl.) ¶¶ 43–44; Ex. 3 (Kindall Decl.) ¶ 15. As of December 21, 2021, Class Counsel have responded to 169 email and phone inquiries. Ex. 2 (Joint Decl.) ¶¶ 49, 52. As of December 17, 2021, Vesting Subclass Counsel has responded to 47 email and phone inquiries. Ex. 3 (Kindall Decl.) ¶ 15.

## C.   Notice Was Properly Given Under the Class Action Fairness Act.

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, requires each defendant participating in a proposed settlement of a class action to give notice, in the form specified in CAFA, to the U.S. Attorney and the "appropriate state official" as defined by CAFA, within ten (10) days after the proposed settlement is filed in court. 28 U.S.C. § 1715(b). The Settlement Agreement was filed with the Court on April 16, 2021, and proper CAFA notice was given by all Defendants on April 26, 2021. Ex. 4 (Angeion Decl.) ¶¶ 4–6; Exs. 4-A through 4-C (CAFA Notices). CAFA has also been satisfied.

## V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Now that the Court has preliminarily approved the Settlement and caused notice to issue to Settlement Class Members consistent with Fed. R. Civ. P. 23(e)(1), the Court must decide whether final approval is warranted. Ultimately, the Court should finally approve the Settlement if it determines that the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court must consider the factors listed in Fed. R. Civ. P. 23(e)(2) in making this assessment. *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); Fed. R. Civ. P. 23(g). All of the factors support approval of this excellent Settlement.

**A.      Rule 23(e)(2)(A): Adequate Representation.**

Plaintiffs' Counsels' Joint Declaration details a decade's engagement with this litigation and related litigation. Ex. 2 (Joint Decl.) ¶¶ 4–20, 24–27. Intervenor Plaintiffs' Counsel's Declaration explains his familiarity with church plan litigation, the circumstances under which he accepted the representation of the Vesting Subclass, brought himself up to speed on the issues in the case, and successfully negotiated an enhanced recovery for the Vesting Subclass. Ex. 3 (Kindall Decl.) ¶¶ 2–14. Named Plaintiffs have had excellent representation in this case.

**B.      Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length.**

The settlement process for Plaintiffs' case, as explained in the Joint Declaration, consisted of two major in-person efforts to settle the case, with prominent mediators. The first was with Robert Meyer, JAMS, while the certiorari petition was pending. Ex. 2 (Joint Decl.) ¶ 10 n.4. The second was after the remand with Jill Sperber, Judicate West. *Id.* ¶ 14. The mediation processes were extended and adversarial. As to the Intervenor Plaintiffs, the process began again with separate counsel and extended over months, resulting in an enhanced settlement for the Vesting Subclass. Ex. 3 (Kindall Decl.) ¶¶ 8–11.

"Arm's length" hardly begins to describe the process. This was a difficult and protracted series of negotiations stretching over years. This factor strongly militates in favor of approval.

**C.      Rule 23(e)(2)(C)(i): The Costs, Risks, and Delay of Trial and Appeal.**

ERISA cases are complex, expensive, and unpredictable, especially in view of the still-unsettled nature of the law on the church plan exemption and Plaintiffs' alternate theories. This Action has now been pending for over eight years, during which the parties have litigated multiple motions to dismiss and motions for summary judgment, have engaged in extensive formal discovery and informal mediation discovery, and have litigated an appeal in the Ninth Circuit and review in the Supreme Court. Had this case not settled, the parties would have continued to engage in significant fact and expert discovery, including substantial document productions and

depositions. Plaintiffs would have moved for class certification, Defendants would have contested it, and the parties would almost certainly have litigated cross-motions for summary judgment.

Plaintiffs' ERISA case requires the Court to determine that the Plan is not a church plan and is therefore subject to ERISA, triggering mandatory plan funding, insurance, and administrative obligations that the Plan currently fails to comply with. Plaintiffs assert a number of strong legal arguments leading to that conclusion, including that Dignity Health is not controlled by or associated with a church as required by ERISA; that the Plan is not maintained by an entity permissible under ERISA; and that the church plan exemption as applied to the Dignity Plan violates the Establishment Clause of the Constitution. In addition, Plaintiffs have alleged alternative causes of action under state law on account of Dignity Health's underfunding of the Plan. The Court's September 6, 2018 Order Granting in Part and Denying in Part Motion to Dismiss, ECF No. 267, rejected Defendants' initial challenge to those claims (with one exception that has been cured with a further amendment to the Complaint), and in doing so rejected the reasoning of the Tenth Circuit in *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017). Thus, even though the Supreme Court's *Advocate* decision reversed a favorable ruling on one of Plaintiffs' other theories of ERISA liability, the merits of Plaintiffs' claims in this Court are strong.

Plaintiffs nevertheless face a number of uncertainties. As described in the following section, the course of continued litigation is long and will likely involve additional appeals. Critical facts, such as the nature of the subcommittee that purportedly maintains the Plan, and the extent of Dignity Health's connections to the Catholic Church, are in dispute. Some of the important underlying facts in this case are also in flux. At about the same time the parties entered into their proposed Settlement, Dignity Health merged with another health system, Catholic Health Initiatives (now known as CommonSpirit Health)—the same entity that prevailed in the *Medina*

church plan case—and while the facts of the two cases are very different, the effect of that merger on the claims in this case has yet to be determined.

The critical issue of Plan underfunding—which is the major focus of the Settlement—also remains hotly contested. Further, Defendants continue to assert that the Plan is adequately funded and dispute that their GAAP-basis financial statements are the appropriate measure of Plan funding, an issue that would require expert testimony and a determination by the Court, as explained by Plaintiffs' actuary. *See* Ex. 6 (First Cassidy Decl.) ¶¶ 43–46.

The Settlement Agreement's mandatory annual contributions provide additional Plan funding which benefits Settlement Class members by providing enhanced security for their pension benefits. Ex. 1 (Settlement Agreement) § 7.1.2. This Settlement does not rely on Dignity Health's voluntary funding of the Plan, but requires Dignity Health to make contributions to the Plan that reduce the underfunding risk to Plan participants, while mitigating the risks and uncertainty of ongoing litigation. Moreover, the Settlement enhances the retirement security of Plan participants by providing certain reporting and disclosure information to participants regarding their retirement benefits, and also by protecting accrued benefits through equitable provisions of the Settlement. *Id.* § 8.

This risk mitigation is particularly significant in light of the *Advocate* and *Medina* decisions. Although, as demonstrated by the Court's denial of Defendants' motion to dismiss, those cases are not determinative of the outcome here, they do illustrate the litigation risk that this Settlement avoids. Given the uncertain and high-stakes backdrop, this Settlement is particularly favorable for the proposed Settlement Class. *See* Ex. 2 (Joint Decl.) ¶ 33–36; Ex. 3 (Kindall Decl.) ¶ 14.

If litigation continued, pre-trial proceedings would have been expensive, complex, and protracted, and may have been a precursor to a full trial. Moreover, Defendants have already

pursued one appeal all the way to the Supreme Court: if Plaintiffs were to prevail on liability, and on remedies at trial, Defendants would very likely appeal once more. If Plaintiffs did not prevail on liability on their ERISA claim, there would still remain for decision their alternative state law claims. This settlement avoids these expenditures of resources for all parties and the Court, and provides the certainty of significant funding and equitable benefits that Settlement Class Members would not receive if the case proceeded. The monetary and non-monetary consideration to the Plan is far better for the Settlement Class than the possibility of a more significant recovery, if any, after an expensive and protracted trial and appeal. Because of the prospect of extensive further litigation and delay, together with the uncertainty of the outcome, this factor strongly supports final approval of the settlement.[13]

**D.      Rule 23(e)(2)(C)(ii): The Effectiveness of Distribution of Relief.**

The analysis here is over almost before it is begun. The primary relief is a series of monetary infusions into the Plan. The Settlement Class Members need do nothing to have the benefit of this relief. The secondary relief consists of one-time payments to certain Settlement Class Members. Those amounts will be automatically distributed. The Settlement Class Members do not need to fill out claim forms or anything else to receive their payments. The non-monetary relief likewise benefits Settlement Class Members without requiring any action on their part. The "effectiveness," in the words of the Rule, is 100%. Settlement Class Members need do nothing.

**E.      Rule 23(e)(2)(C)(iii): Attorney Fees.**

As explained in the parties' respective Fee Motions filed concurrently herewith, the fees

---

[13] Counsel for the Vesting Subclass provided a detailed analysis of this factor as related to the claims of the Vesting Subclass at pages 11–18 of Plaintiffs' Second Renewed Notice of Motion, Unopposed Motion for Preliminary Approval of Settlement Agreement and Certification of Settlement Class, and Supporting Memorandum, ECF No. 306. Neither the facts nor the applicable law have changed in ways that would change the analysis set forth in that earlier memorandum, which Vesting Subclass counsel incorporate herein by reference.

(and expenses and incentive awards) are both far below the Ninth Circuit's presumptive 25% fee award and are substantial discounts on counsels' lodestars. The fees of Class Counsel and Vesting Subclass Counsel are very modest for the relief that has here been achieved, and thus this factor supports a determination that the Settlement is fair, reasonable, and adequate.

**F.      Rule 23(e)(2)(C)(iv): "Agreement Made in Connection with the Proposal."**

Plaintiffs' counsel have jointly represented these clients, and many others, as court-appointed co-leads in church plan litigation over the last ten years. They have no "agreement in connection with the proposal [i.e., the settlement]." Their only agreement in the church plan litigation, including this case, is to share the responsibility for the cases and the fees, if any, that they generate. There are no agreements, for example, for compensating "referring" counsel and in this case there is not even local counsel. Intervenor Plaintiffs' counsel handled this case through his firm with no other counsel involved. This factor also militates in favor of approval.

**G.      Rule 23(e)(2)(D): Equitable Treatment Among Settlement Class Members.**

This issue has already been addressed by the Court in its First and Second Denial Orders. The Settlement Class as a whole, the PEP Plus Claimants subgroup, and the Vesting Subclass are treated equitably vis-à-vis each other. Every vested participant member in the Settlement Class receives the benefit of the cash infusion into the Plan. The PEP Plus Claimants subgroup also receives individual payments reflecting their additional claims. The Vesting Subclass, who are not benefited by the cash paid into the Plan, receive individual payments reflecting the nature of the claims and the risk attending them, all negotiated by separate counsel.[14] The intra-Class treatment

---

[14] Counsel for the Intervenors notes that it is difficult to compare the proposed recovery for the Vesting Subclass to the recovery by the rest of the Settlement Class, as their claims are very different. The claims of the Vesting Subclass, like the claims of the Settlement Class as a whole, rise or fall on whether the Plan qualifies as a church plan. However, while a determination that the Plan was not exempt would automatically trigger substantial changes to administration and funding of the Plan on a going-forward basis, the Court would have discretion to determine whether the Plan should be required to pay purely retrospective relief to former participants who

of Settlement Class Members has been examined at length, with the assistance of Plaintiffs'

actuary and the Vesting Subclass's separate counsel. This Settlement very carefully achieves

equity among all Settlement Class Members, in large part due to the Court's careful review and

critique of earlier versions of the Settlement.

## H.    Rule 23(g): Appointing Class Counsel.

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of

Class Counsel. Class Counsel and Vesting Subclass Counsel have detailed the claims brought in

this action, and the time and effort already expended in connection with this litigation. *See supra*

Section II; *see also* Ex. 2 (Joint Decl.) ¶¶ 4–20. Moreover, Class Counsel and Vesting Subclass

Counsel are among the leading ERISA plaintiffs' firms, and possess unparalleled expertise in the

specific types of ERISA claims brought in this lawsuit. Ex. 2 (Joint Decl.) ¶¶ 24–27; Exs. 2-A

(Keller Rohrback Resume), 2-B (Cohen Milstein Resume); Ex. 3 (Kindall Decl.) ¶ 14; Ex. 3-A

(IKR Resume). Class Counsel and Vesting Subclass Counsel thus satisfy the requirements of

Rule 23(g).

## VI.  CONCLUSION

For the reasons discussed herein, Named Plaintiffs respectfully submit that the Settlement

Class and the Vesting Subclass each meet all the requirements of Rule 23 and should be finally

certified, and that the Settlement should be granted final approval because it is a fair and

reasonable result when viewed against the governing standard. Attached as Exhibit 13 is a

---

forfeited benefits prior to the Court's determination. Moreover, the Court would need to evaluate
the effect of releases that some members of the Vesting Subclass signed in exchange for benefits
at the time they separated from the Company. Another complicating factor in any comparison
between the proposed Settlement's treatment of the Vesting Subclass versus other Settlement
Class Members is that the dollar amount of the benefits forfeited by Vesting Subclass is
definitely determinable, while the calculation of the maximum financial impact of a victory for
the larger Settlement Class as a whole is considerably less precise. In light of these uncertainties,
counsel for the Intervenors believes that the proposed Settlement, as modified, treats members of
the Vesting Subclass equitably relative to other Settlement Class Members.

[Proposed] Order and Final Judgment, which addresses both the merits of the Settlement, as addressed in this Final Approval Motion, and the attorneys' fees, expenses, and incentive awards, as addressed in the Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards, filed this same date.

Respectfully submitted this 22nd day of December, 2021.

KELLER ROHRBACK L.L.P.

By: *s/ Christopher Graver*
Ron Kilgard (*pro hac vice*)
Christopher Graver (*pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248- 2822
rkilgard@kellerrohrback.com
cgraver@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Lynn L. Sarko (*pro hac vice*)
Matthew M. Gerend (*pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384
lsarko@kellerrohrback.com
mgerend@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Juli E. Farris (CA Bar No. 141716)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496 / Fax: (805) 456-1497
jfarris@kellerrohrback.com

COHEN MILSTEIN SELLERS & TOLL PLLC
Michelle C. Yau (*pro hac vice*)
1100 New York Avenue, N.W., Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600 / Fax: (202) 408-4699
myau@cohenmilstein.com

***Class Counsel***

IZARD, KINDALL & RAABE LLP

By: *s/ Mark P. Kindall*
Mark P. Kindall
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel.: (860) 493-6292 / Fax: (860) 493-6290
mkindall@ikrlaw.com

***Vesting Subclass Counsel***

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that this filing is jointly submitted with Counsel for Intervenor Plaintiffs, and Mark P. Kindall has concurred in this filing's content and has authorized me to file this document.

By: *s/ Christopher Graver*

23                    MOTION FOR FINAL APPROVAL OF
SETTLEMENT AGREEMENT

**CERTIFICATE OF SERVICE**

I, Cathy Hopkins, hereby certify that on December 22, 2021, a true copy of the above document was served on the Defendants, through their counsel of record, via ECF.

*s/ Cathy Hopkins*
Cathy Hopkins
Legal Assistant/Paralegal