KELLER ROHRBACK L.L.P.
Juli E. Farris (CA Bar No. 141716)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax: (805) 456-1497
Email: jfarris@kellerrohrback.com

*Attorney for Plaintiffs*

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| STARLA ROLLINS and PATRICIA WILSON, on behalf of themselves, individually, on behalf of all others similarly situated, and on behalf of the Dignity Plan,<br><br>Plaintiffs,<br><br>MICHELLE HALL, JENIFER HEINER, and CHRISTINE MONTOYA,<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>DIGNITY HEALTH, a California Non-profit Corporation, HERBERT J. VALLIER, an individual, DARRYL ROBINSON, an individual, the Dignity Health Retirement Plans Subcommittee, and JOHN and JANE DOES, each an individual, 1-20,<br><br>Defendants. | Case No: 13-cv-01450-JST<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS, AND SUPPORTING MEMORANDUM**<br><br>Date: March 3, 2022<br>Time: 2:00 p.m.<br>Ctrm: 6 – 2nd Floor<br>Judge: Hon. Jon. S. Tigar |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   CLASS COUNSEL'S EFFORTS AND THE RESULTS OBTAINED ........................... 3

III.  THE COURT SHOULD AWARD THE REQUESTED FEES ......................................... 3

IV.   THE REQUESTED AWARD IS REASONABLE ........................................................... 5

      A.   The Requested Fees Are Reasonable Under the Percentage-of-the-Recovery Method. ........................................................................................... 5

      B.   The Requested Fees Are Reasonable Based Under the Lodestar Method. ............. 6

           1.   The Benefits to the Settlement Class. .......................................................... 8

           2.   Time and Labor Required. ........................................................................... 8

           3.   Class Counsel's Rates Per Hour. .................................................................. 9

           4.   The Novelty and Difficulty of the Questions Involved, and the Requisite Legal Skill Required. .................................................................. 9

           5.   The Preclusion of Other Employment. ...................................................... 10

           6.   The Customary Fee. ................................................................................... 10

           7.   The Contingent Nature of This Case Supports an Award of Fees. ........... 10

           8.   Class Counsel's Experience and Reputation Weighs in Favor of the Award. ........................................................................................................ 11

V.    THE COURT SHOULD AWARD THE REQUESTED EXPENSES ............................. 11

VI.   THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARDS .......... 12

VII.  CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................................................11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .............................................................................................................. 5

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ............................................................................................... 4

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................. 6, 7

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) .........................................................................................12

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) .............................................................................................................. 4

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ..........................................................................................5, 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds Wal-Mart Stores,
   Inc., v. Dukes*, 564 U.S. 338 (2011) ..................................................................................... 7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .............................................................................................................. 4

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................4, 5, 6, 7

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ....................................................................................11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................................ 5

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020) ................................................................................................ 5

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds*, *City of Burlington v.
   Dague*, 505 U.S. 557 (1992) ................................................................................................. 6

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ........................................................................................... 7

*Medina v. Catholic Health Initiatives*,
    877 F.3d 1213 (10th Cir. 2017).......................................................................................11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .........................................................................................12

*Shvager v. ViaSat, Inc.*,
    No. CV 12-10180 MMM, 2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) ............................... 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .........................................................................................12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................................................10

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)................................... 12, 13

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).......................................12

*Zucker v. Occidental Petroleum Corp.*,
    192 F.3d 1323 (9th Cir. 1999) ........................................................................................ 4

**Rules**

Fed. R. Civ. P. 23(h) .........................................................................................................11

# PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

Please take notice that on March 3, 2022, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Jon S. Tigar, United States District Judge for the Northern District of California, at the United States District Courthouse, 1301 Clay Street, Oakland, California 94612, Plaintiffs Starla Rollins and Patricia Wilson will submit their Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards (the "Fee Motion") in which they urge the Court to enter an order:

1. approving and ordering the payment of Class Counsel's attorneys' fees and reimbursement of their expenses; and
2. approving and ordering the payment of incentive awards to Plaintiffs.

This Fee Motion addresses only Class Counsel's attorneys' fees, expenses, and incentive awards to Plaintiffs. Intervenor Plaintiffs are independently moving for the payment of the Vesting Subclass's attorneys' fees, reimbursement of expenses, and incentive awards to Intervenor Plaintiffs.

Plaintiffs, joined by Intervenor Plaintiffs, are separately moving for final approval (the "Final Approval Motion") of the Second Amended and Restated Class Action Settlement Agreement (the "Settlement Agreement") in this matter.[1] The Final Approval Motion is set for hearing contemporaneously with this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The parties to this Action have entered into a comprehensive Settlement Agreement that

---

[1] A copy of the Settlement Agreement is attached to the Final Approval Motion as Exhibit 1. Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Settlement Agreement. All the references to Exhibits in this Fee Motion are to the exhibits attached to the Final Approval Motion.

provides substantial relief to the Settlement Class members, including a total settlement amount of at least $100 million in cash deposited into the Dignity Health Pension Plan (the "Plan"), with additional amounts to be paid into the Plan in cash over several years that could amount to up to another $647 million, and other monetary and non-monetary relief. Final Approval Motion 8.

After resolving, through mediation, the key Settlement provisions that provide relief to the Settlement Class, the Parties negotiated, based upon a proposal by third-party mediator Jill Sperber, Esq., of Judicate West, an agreement with respect to the payment of attorneys' fees, expenses, and incentive awards to Plaintiffs.[2] Final Approval Motion 6. This compromise provides that, if approved by the Court, Defendants will pay up to $6.15 million in attorneys' fees and expenses to Class Counsel and potential incentive awards to Plaintiffs. Ex. 1 (Settlement Agreement) § 7.1.8. If awarded, these amounts will not reduce the monetary recovery to the Settlement Class. *Id.* Indeed, to address issues raised by the Court, the parties modified the initial mediated compromise to allow Defendants to object to the requested fees, and to provide that, if the Court awards a lesser amount than $6.15 million, the difference between the amount awarded and $6.15 million will be added to the amounts contributed to the Plan. *Id.*; Ex. 2 (Joint Decl.) ¶ 51.

Plaintiffs request that the Court approve their reasonable attorneys' fees, expenses, and incentive awards. These fees compensate Class Counsel and Plaintiffs for the significant time, effort, risk, and expenses they expended in the successful resolution of this Action. The fees and expenses are consistent with the benefits that the Settlement confers on the Settlement Class; the

---

[2] Joint Declaration of Ron Kilgard and Michelle C. Yau in Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class; and (2) Plaintiffs' Motion for Awards of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards ("Joint Declaration" or "Joint Decl.") ¶ 51, submitted contemporaneously herewith as Exhibit 2 to the Final Approval Motion.

proposed award is 6% of the readily-quantifiable low end of the monetary component of the Settlement ($100,825,000), and could be as little as 0.82% of the potential high end monetary component ($747 million); and the requested award represents a fractional multiplier of 0.71 on the actual requested lodestar of $8,070,034.50. Ex. 2 (Joint Decl.) ¶ 69. The incentive awards to the Plaintiffs are also fair and reasonable in light of their substantial commitment of time and effort to this litigation over nine years (for Plaintiff Rollins) and five years (for Plaintiff Wilson). *Id.* ¶¶ 77–79.

## II.   CLASS COUNSEL'S EFFORTS AND THE RESULTS OBTAINED

Class Counsel have detailed in the Joint Declaration and the Final Approval Motion their discovery and development of this area of the law, and that they committed considerable time and resources to develop and prosecute this matter without any guarantee of payment. *Id.* ¶¶ 52–53; Final Approval Motion at 2–5. This litigation was hard fought and involved extensive investigation, discovery, consultation with experts, review of documents, legal research, extensive briefing and argument, as the case wound its way from Plaintiffs' success in the trial court to interlocutory appeal at the Ninth Circuit, on to the Supreme Court, and finally remand to the trial court and successful mediation. All of these steps were necessary to achieve a positive result for the Settlement Class. Ex. 2 (Joint Decl.) ¶¶ 37–39; Final Approval Motion at 3–6.

Class Counsel will continue to devote significant time to responding to inquiries from the Settlement Class and answering questions concerning the Settlement. Ex. 2 (Joint Decl.) ¶ 53. Accordingly, Class Counsel request an award of attorneys' fees and expenses for the significant time they have devoted to this case, and also an incentive award to the Plaintiffs for their services to the Settlement Class over the past eight-plus years since the case was filed.

## III.   THE COURT SHOULD AWARD THE REQUESTED FEES

The parties to a class action properly may negotiate not only the settlement of the action

itself, but also the payment of attorneys' fees. *Evans v. Jeff D.*, 475 U.S. 717, 734–35, 738 n.30 (1986). In cases outside the "common fund" context, the Supreme Court has made clear that settlements of requests for attorneys' fees should be encouraged and respected:

> A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In the Ninth Circuit, district courts have "an independent obligation to ensure that [any attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "[W]hether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Briseño v. Henderson*, 998 F.3d 1014, 1022–23 (9th Cir. 2021) (quoting *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999)).

Here, the attorneys' fees were only negotiated *after* agreement was reached on the key terms of the Settlement for the Settlement Class; a well-respected and neutral mediator oversaw the negotiations; and the attorneys' fees were based upon the mediator's proposal, to which the parties ultimately agreed (subject to Court approval). *See Shvager v. ViaSat, Inc.*, No. CV 12-10180 MMM (PJWx), 2014 WL 12585790, at *15 (C.D. Cal. Mar. 10, 2014) (negotiating the common fund amount before attorneys' fees supports a conclusion that the settlement was not the result of collusion, but rather the product of good-faith negotiation). Here, Defendants are free to object to the attorneys' fees, and to the extent the full fee is not approved, any reversion will go into the Plan for the sole benefit of participants. Given that this agreement has been closely scrutinized by all sides—Plaintiffs, Defendants, and the mediator—the fee agreement should be respected and awarded.

## IV. THE REQUESTED AWARD IS REASONABLE

The requested award of attorneys' fees here can be amply justified under the Ninth Circuit's standards. In this jurisdiction, courts have discretion to use one of two methods to determine whether a request is reasonable: (1) percentage of the recovery; or (2) the lodestar method. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929–30 (9th Cir. 2020). The Ninth Circuit encourages courts using the percentage-of-recovery method to perform a cross-check by applying the lodestar to confirm the percentage of recovery is reasonable. *Id.* (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015)). *See also In re Bluetooth*, 654 F.3d at 942. Under either method, the requested fees and expenses are reasonable and should be awarded.

### A. The Requested Fees Are Reasonable Under the Percentage-of-the-Recovery Method.

Because quantification of the benefit to the class is relatively easy in common-fund settlements, courts may award attorneys a percentage of the common fund in lieu of the more time-consuming task of calculating the lodestar. *In re Bluetooth*, 654 F.3d at 942. The Ninth Circuit has "established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case.'" *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (alteration in original) (citation omitted).

While this settlement is not technically structured as a common fund because class members do not have ascertainable claims to a portion of the $100 million payment, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980), it is nevertheless appropriate to treat the settlement as a common benefit fund for the purpose of determining the reasonableness of the requested attorneys' fees because it provides a sum certain common benefit of at least $100,825,000 ($100,000,000

cash into the Plan's Trust plus payments of $825,000 to the PEP Plus subgroup).[3] This figure does not include the additional payments that Dignity Health is obligated to make to the Plan's Trust of as much as $647 million, or the other equitable relief. Second Denial Order at 10, ECF No. 292.

Viewing this case as a common fund case, the total fund is $106,975,000 ($100,825,000 + $6,150,000). Accordingly, Plaintiffs' request for $6.15 million for attorneys' fees and expenses, and incentive awards represents just 6% of the settlement value, and potentially as little as 0.8%, which is far below the Ninth Circuit's benchmark of 25%. *In re Bluetooth*, 654 F.3d at 942.

## B. The Requested Fees Are Reasonable Based Under the Lodestar Method.

The Court may also award fees under the lodestar method, a method that is appropriate where the relief sought and obtained is not as easily monetized. *Id.* at 941. The value of the relief sought here is easily monetized, but that the Northern District of California Procedural Guidance for Class Action Settlements ("Guidelines") require a lodestar cross-check in any event. The lodestar is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience. *Id.* at 941–42.

The Court may apply a multiplier to the lodestar in light of certain factors, adjusting the lodestar up or down. One such list of factors consists of the *Kerr* factors.[4] Another is the *Churchill*

---

[3] The $925,000 being paid to the Vesting Subclass is not included here because that Subclass is represented by separate counsel who negotiated a separate settlement.

[4] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds*, *City of Burlington v. Dague*, 505 U.S. 557 (1992) ("(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.").

factors.[5] Both lists are still relied on in this Circuit, *see In re Bluetooth*, 654 F.3d at 942 n.7 (*Kerr*), 946 (*Churchill*); *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (*Churchill*). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338 (2011) (lodestar figures may be adjusted based on "quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment"). No list is exclusive and any list must be tailored to the facts of the case. *See generally In re Bluetooth*, 654 F.3d at 941–44.

Pursuant to the Guidelines, Class Counsel submit with this application a detailed summary of their time incurred during each of the four phases of this litigation—that is, the initial district court proceedings; the Ninth Circuit proceedings; the Supreme Court proceedings; and proceedings in the district court after remand. Ex. 2 (Joint Decl.) ¶¶ 4, 54–56; Exs. 2-C through 2-F. After modifications in the exercise of billing judgment, each timekeeper's recorded time has been categorized for each of the four phases of the litigation. The Exhibits display, for each phase, the categorized time, total hours expended by each timekeeper, total hours spent by all timekeepers on each category in phase, billing rates, and lodestar. Exhibit 2-F aggregates all the time spent by all Class Counsel in all phases and presents a total lodestar of $8,070,034.50.

The lodestar method confirms the reasonableness of Class Counsel's attorneys' fee request. Class Counsel expended a total of 10,789.2 hours developing and prosecuting this litigation. Ex. 2 (Joint Decl.) ¶¶ 52, 54, 58. At Class Counsel's hourly rates, which are comparable to those of other class action attorneys, this amounts to a lodestar of $8,070,034.50. *Id.* ¶ 54, 69. Class Counsel's

---

[5] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.").

total requested award of $6.15 million includes unreimbursed litigation costs totaling $363,806.88, plus the requested incentive awards for Plaintiffs in the total amount of $20,000 (discussed below). *Id.* ¶¶ 70, 76–79. After reimbursement of expenses and incentive awards for Plaintiffs, the requested fee award would amount to $5,766,193.12, only 71% of Class Counsel's combined lodestar of $8,070,034.50.[6] *Id.* ¶ 69. Factors particularly relevant to fee request in this case include:

### 1. The Benefits to the Settlement Class.

As discussed in detail in the Final Approval Motion, the Settlement provides substantial benefits to the Settlement Class—between $100 million and an estimated $747 million deposited into the Plan Trust; equitable protections comparable to key ERISA provisions; cash payments totaling $825,000 to the PEP Plus Claimants subgroup for their additional claims.[7] Final Approval Motion at 8-10.

### 2. Time and Labor Required.

The 10,789.2 hours Class Counsel collectively expended on this case were reasonably spent, especially given the high-stakes, high-risk nature of this litigation and the excellent results obtained. Ex. 2 (Joint Decl.) ¶ 57–61. Class Counsel: (1) researched the law bearing on the church plan exemption and concluded hospitals were not entitled to the exemption; (2) investigated the non-profit hospital business as it bore on liability and defenses; (3) investigated the facts of this case and filed the Complaint in this action; (4) conducted extensive, contested written discovery; (5) reviewed thousands of pages of documents; (6) consulted with experts; (7) litigated a motion to

---

[6] As explained in the Joint Declaration (Ex. 2 ¶ 55), the lodestar excludes several types of time, including the time of timekeepers who spent less than twenty hours on the case, administrative time, time deleted as a matter of billing judgment, and all time spent on the further negotiation of the Settlement and the preparation of preliminary approval motions after the First Preliminary approval Motion was submitted in June 2019.

[7] Again, this does not include the amounts to be recovered by the Vesting Subclass. *See supra* note 3.

dismiss, a motion for summary judgment, and two motions for interlocutory appeal; (8) briefed and argued an appeal to the Ninth Circuit; (9) briefed and argued an appeal to the U.S. Supreme Court; (10) amended their complaint to assert new causes of action; (11) monitored developments in all the church plan cases in order to determine the impact on this particular case; (12) crafted a comprehensive Settlement after arm's-length negotiations overseen by a third-party mediator; (13) spent two years litigating preliminary approval and renegotiating the terms of the Settlement in order to successfully resolve issues raised by the Court; (14) successfully moved for preliminary approval of the Settlement; (15) played a major role in developing the Class Notice materials and posting them on the websites identified in the Notices; and (16) responded to Settlement Class Members inquiries concerning the Class Notices, the Settlement, and this litigation. *See id.* ¶¶ 37, 38, 52. Moreover, Class Counsel's work is not yet done. Class Counsel still need to complete the final approval process, assist Settlement Class Members with inquiries, respond to any potential objections, and handle any resulting appeal. *Id.* ¶ 53.

### 3. Class Counsel's Rates Per Hour.

The hourly rates Class Counsel charged to perform this work, which range from $250 to $1,035 are reasonable. *Id.* ¶¶ 62–63. Class Counsel have submitted both the range of rates approved for a number of fee petitions in other church plan cases in which they reported hourly rates at amounts the same as, and comparable to those sought herein, *id.* ¶¶ 64–66, as well as the range of rates of for similarly experienced attorneys in the class action bar. *Id.* ¶ 67. Class Counsel has also obtained the reported range of billing rates for defense counsel at Dignity's former counsel, Morgan Lewis & Brockius, which are comparable to the rates of Class Counsel in this fee motion. *Id.* ¶ 68.

### 4. The Novelty and Difficulty of the Questions Involved, and the Requisite Legal Skill Required.

This is clearly not a garden variety ERISA class action; indeed, this area of ERISA law has

developed rapidly and unpredictably. The first cases were filed in March 2013; within a short time district courts had issued decisions, favorable and unfavorable, on the important issue of whether the statue required that a church plan must be established by a church. The first appellate cases, in the Third, Seventh, and Ninth Circuit Courts of Appeals, uniformly supported Class Counsel's position; however, the Supreme Court granted certiorari in those three cases, and issued a decision just four years after the first case was filed. The long-standing use of the church plan exemption by hospitals, the supportive private letter rulings many of them obtained from the IRS and/or the Department of Labor, the diversity of outcomes in the lower courts, the adverse ruling by the Supreme Court, and pursuing alternative recovery theories after remand, were all among the challenges faced by Class Counsel. This action demanded a high degree of legal skill, both to settle the Action and to be prepared to litigate the issues through trial and on appeal.

**5. The Preclusion of Other Employment.**

As noted above, this case has been very demanding, extending over more than nine years (including pre-complaint investigation, which was extensive) and three courts. At times the volume of this litigation (and related church plan litigation) crowded the firms' dockets and certainly precluded other work.

**6. The Customary Fee.**

The fractional multiplier of 0.71 requested by Class Counsel is far *below* the range of multipliers typically approved in reported Ninth Circuit cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–52 (9th Cir. 2002) (approving multiplier of 3.65 and citing a survey indicating that most multipliers range from 1.0–4.0).

**7. The Contingent Nature of This Case Supports an Award of Fees.**

From the outset, Class Counsel litigated this matter on a contingent basis and placed at risk their own resources to do so. Absent this Settlement, the Settlement Class and their counsel risked

obtaining no recovery at all. Indeed, in some church plan cases, such as *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017), counsel recovered nothing, not for the class and not for counsel. The contingent nature of this case therefore favors the award of fees. *See Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002) (remanding to district court with instructions to consider class counsel's payment risk in determining whether to apply a multiplier).

### 8. Class Counsel's Experience and Reputation Weighs in Favor of the Award.

Class Counsel are among the leading ERISA plaintiffs' firms, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Ex. 2 (Joint Decl.) ¶¶ 24–29; Exs. 2-A (Keller Rohrback Resume), 2-B (Cohen Milstein Resume). Defense counsel are highly respected and experienced. *Id.* ¶ 60. Given this formidable opposition, a high level of experience was required for success.[8]

### V. THE COURT SHOULD AWARD THE REQUESTED EXPENSES

This Court may award reasonable expenses authorized by the parties' agreement. Fed. R. Civ. P. 23(h). Trial courts may determine what is reasonable based on an objective standard of reasonableness, i.e., the prevailing market value of services rendered. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Here, based on the Joint Declaration filed contemporaneously herewith, Class Counsel requests reimbursement for common and routinely reimbursed litigation expenses incurred by Class Counsel in the amount of $363,806.88. Ex. 2 (Joint Decl.) ¶¶ 70–73; Exs. 2-G (Keller Rohrback Expenses), 2-H (Cohen Milstein Expenses).[9] Class Counsel have filed an

---

[8] *See In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (Class counsel "have been up against established and skillful defense lawyers, and should be compensated accordingly.").

[9] The expenses incurred prosecuting this complex class action include filing fees; travel fees, court appearances and mediation; copying, delivery, and telecommunications charges; legal research charges; mediator's charges; and similar litigation expenses. These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services

itemized list of their expenses by category and the total amount advanced for each category, allowing the court to assess whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011). These expenses were necessary for the litigation and resolution of this Action.

## VI. THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARDS

Class Counsel respectfully requests that the Court approve an incentive award of $10,000 for each of the Plaintiffs. These stipends do not affect or reduce the benefits to the Settlement Class and will be paid solely out of the allocation of $6.15 million total that Defendants have agreed to pay for attorneys' fees, expenses, and incentive awards. *See* Ex. 1 (Settlement Agreement) § 7.1.8.

It is well-recognized that "named plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Such enhancements compensate class representatives for "work done on behalf of the class, [and] to make up for financial or reputation risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Citing concerns about possible improper motives, the Ninth Circuit has established a presumptive "benchmark" of $5,000, subject to increase if the facts warrant it. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 333 (N.D. Cal. 2014).

In the Ninth Circuit the following factors are to be considered by courts when determining incentive awards:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it;

---

in the markets in which they have been provided. Class Counsel maintains appropriate back-up documentation for each expense. Ex. 2 (Joint Decl.) ¶ 71.

and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32. Each of these factors supports the full award here.

As to the first factor, Ms. Rollins has "protected the interests of the class" continuously, and for most of the life of the case she was the only Plaintiff doing so. As her declaration explains, she has been in constant contact with Class Counsel (and other class members) during the life of the case. Ex. 8 (Rollins Decl.) ¶¶ 6–13. She has assisted Class Counsel at every stage in investigating the case, assisting the lawyers in drafting the complaint, participating in discovery, discussing strategy, and so on. As to the second factor, the "class has benefitted from those actions" enormously. The Settlement achieved provides the Settlement Class with real economic benefit, most likely over $700 million. The third factor is "duration"; Ms. Rollins has worked on the case for *over nine years*. That is a long time to be a Plaintiff actively engaged with Class Counsel. Even compensation at a very modest hourly rate, well below her current hourly rate as a Nurse of $33.00, would easily exceed requested $10,000 fee. Finally, as she explains in her Declaration, she has been a health care worker virtually her entire working life and feared some blowback from Dignity Health and her current employer. Fortunately, she had no major problems in that regard, but she did not know that at the outset. In the opinion of Class Counsel she has earned the incentive award.

Patricia Wilson's circumstances are different, but complementary. As to the first and second factors, Ms. Wilson did not merely protect the interest of the Settlement Class, and benefit it, she herself spotted the PEP Plus issue. As explained in her Declaration (Ex. 9 (Wilson Decl.)), she analyzed the "backloading" issue in this case in detailed graphs and spreadsheets, which she presented to Class Counsel for review, analysis, and revision. The PEP Plus claim would never have been brought but for her efforts. Third, as to duration, she has been a Plaintiff for a shorter period of time than Ms. Rollins, but she began work on the case in 2015, before she could be added as a party. (As a result she had to twice execute tolling agreements to protect the PEP Plus

claims.) During that time she has been very active, not only in responding to communications with the lawyers, but, as mentioned, in assisting the lawyers and their actuarial expert in assessing the difficult PEP Plus issues. She was also very involved in the mediation, and at one point was going to talk to the mediator herself.[10] Finally, as a current employee of Dignity Health, she not only had a reasonable fear of retaliation, she has been retaliated against. For example, she was threatened because she violated her non-disclosure agreement, which, as it turned out, she had not done. The details are in her Declaration. Her work on the case, like that of Ms. Rollins, has been hugely valuable. Again, as with Ms. Rollins, even a modest hourly rate well below Ms. Wilson's compensation as a Registered Nurse, would easily exceed $10,000. Ex. 2 (Joint Decl.) ¶¶ 78–79.

Our clients have been very important in this litigation, and we urge the court to award the full amount of the $10,000 fee.

## VII.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards, together with such other and further relief as the Court may deem just and proper. A proposed order granting the relief sought herein is attached as Exhibit 13 to the Final Approval Motion.

Respectfully submitted this 22nd day of December, 2021.

KELLER ROHRBACK L.L.P.

By: *s/ Christopher Graver*
Ron Kilgard (*pro hac vice*)
Christopher Graver (*pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248- 2822
rkilgard@kellerrohrback.com
cgraver@kellerrohrback.com

---

[10] Similarly, Ms. Wilson asked us to permit her to speak to the Court directly, which she has done in her Declaration. Ex. 9 (Wilson Decl.) ¶ 10.

KELLER ROHRBACK L.L.P.
Lynn L. Sarko (*pro hac vice*)
Matthew M. Gerend (*pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384
lsarko@kellerrohrback.com
mgerend@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Juli E. Farris (CA Bar No. 141716)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496 / Fax: (805) 456-1497
jfarris@kellerrohrback.com

COHEN MILSTEIN SELLERS & TOLL PLLC
Michelle C. Yau *(pro hac vice)*
1100 New York Avenue, N.W., Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600 / Fax: (202) 408-4699
myau@cohenmilstein.com

*Class Counsel*

# CERTIFICATE OF SERVICE

I, Cathy Hopkins, hereby certify that on December 22, 2021, a true copy of the above document was served on the Defendants, through their counsel of record, via ECF.

*s/ Cathy Hopkins*
Cathy Hopkins
Legal Assistant/Paralegal