1  IZARD, KINDALL & RAABE, LLP
2  Mark P. Kindall (CA Bar No. 138703)
   29 South Main Street, Suite 305
3  West Hartford, CT 06107
   Tel.: (860) 493-6292 / Fax: (860) 493-6290
4  Email: mkindall@ikrlaw.com

5  *Attorneys for Intervenor Plaintiffs and the Vesting Subclass*

6

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
8  **OAKLAND DIVISION**

9

10  STARLA ROLLINS and PATRICIA
    WILSON, on behalf of themselves,
11  individually, on behalf of all others similarly
    situated, and on behalf of the Dignity Plan,
12
          Plaintiffs,
13
    MICHELLE HALL, JENIFER HEINER, and
14  CHRISTINE MONTOYA,
15
          Intervenor Plaintiffs,
16
          v.
17
    DIGNITY HEALTH, a California Non-profit
18  Corporation, HERBERT J. VALLIER, an
    individual, DARRYL ROBINSON, an
19  individual, the Dignity Health Retirement
    Plans Subcommittee, and JOHN and JANE
20  DOES, each an individual, 1-20,
21         Defendants.

Case No: 13-cv-01450-JST

**INTERVENOR PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND INCENTIVE AWARDS, TOGETHER WITH SUPPORTING MEMORANDUM**

Date: March 3, 2022
Time: 2:00 p.m.
Ctrm: 6 – 2nd Floor
Judge: Hon. Jon. S. Tigar

22
23
24
25
26
27
28

INTERVENOR PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS FEES AND
INCENTIVE AWARDS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

ARGUMENT ...................................................................................................................... 6

    A.    The Court Should Approve the Requested Award of $50,000
           for Attorneys' Fees ...................................................................................... 6

           1.    The Court Should Use the Percentage of Fund Method to
                   Evaluate the Reasonableness of Intervenor Plaintiffs' Fee Request.............. 6

           2.    The Proposed Fee Award Is Reasonable ....................................... 7

    B.    The Court Should Approve the Requested $2,500 Incentive Awards
           to Intervenors ........................................................................................ 13

CONCLUSION.................................................................................................................. 14

                          i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alberto v. GMRI, Inc.,*No. CIV 07-1895 WBS DAD, 2008 WL 4891201
  (E.D. Cal. Nov. 12, 2008) ................................................................................ 7

*Azar v. Blount Int'l, Inc.,* No. 3:16-CV-0483-SI, 2019 WL 7372658
  (D. Or. Dec. 31, 2019) ..................................................................................... 8

*Baird v. BlackRock Institutional Tr. Co., N.A.,* No. 17-CV-01892-HSG,
  2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ............................................. 10, 12

*Cabiness v. Educ. Fin. Sols., LLC,* No. 16-CV-01109-JST, 2019 WL 1369929
  (N.D. Cal. Mar. 26, 2019) ............................................................................ 12

*Cryer v. Franklin Resources, Inc.,* No. 16-cv-4265 CW (2019) ............................... 12

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.,*
  No. 17-CV-07243-BLF, 2021 WL 4895084 (N.D. Cal. Oct. 20, 2021)............................ 10

*Dickerson v. Cable Commc'ns, Inc.,* No. 3:12-CV-00012-PK, 2013 WL 6178460
  (D. Or. Nov. 25, 2013) ..................................................................................... 8

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG (JCX),
  2016 WL 5938722 (C.D. Cal. May 16, 2016) ....................................................... 9

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014)........................................ 13

*Flores v. TFI Int'l Inc.,* No. 12-CV-05790-JST, 2019 WL 1715180
  (N.D. Cal. Apr. 17, 2019) .............................................................................. 12

*Fox v. Vice,* 563 U.S. 826 (2011).......................................................................... 13

*Haralson v. U.S. Aviation Serv. Corp.,* No. 16-CV-05207-JST, 2021 WL 5033832
  (N.D. Cal. Feb. 3, 2021)................................................................................. 11

*Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2012 WL 381202
  (N.D. Cal. Feb. 6, 2012)................................................................................. 13

*Hefler v. Wells Fargo & Co.,* No. 16-CV-05479-JST, 2018 WL 6619983
  (N.D. Cal. Dec. 18, 2018), *aff'd sub nom., Hefler v. Pekoc,* 802 F. App'x 285
  (9th Cir. 2020) ............................................................................................. 12

*In re Activision Sec. Litig.*,723 F. Supp. 1373 (N.D. Cal. 1989) .................................... 6

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011)........................... 6, 7

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008).........................................6

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir. 2015) .................................6, 7

*In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508
    (N.D. Cal. 2020)......................................................................................................12, 14

*In re Wells Fargo & Co. S'holder Derivative Litig.,* 845 F. App'x 563
    (9th Cir. 2021).................................................................................................................12

*Kanawi v. Bechtel Corp.,* No. C 06-05566 CRB, 2011 WL 782244
    (N.D. Cal. Mar. 1, 2011) ..........................................................................................7, 10

*Kirchoff v. Flynn,* 786 F.2d 320 (7th Cir. 1986) ..........................................................................6

*Norris v. Mazzola,* No. 15-CV-04962-JSC, 2017 WL 6493091
    (N.D. Cal. Dec. 19, 2017) ...............................................................................................9

*Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989) .....................................7

*Rabin v. PricewaterhouseCoopers LLP,* No. 16-CV-02276-JST, 2021 WL 837626
    (N.D. Cal. Feb. 4, 2021) ................................................................................................13

*Radcliffe v. Experian Info. Solutions, Inc.,* 715 F.3d 1157 (9th Cir. 2013) ...............................13

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,*
    281 F. Supp. 3d 833 (N.D. Cal. 2017) ....................................................................9, 10, 11

*Rodman v. Safeway Inc.,* No. 11-CV-03003-JST, 2018 WL 4030558
    (N.D. Cal. Aug. 23, 2018)...................................................................................10, 11, 13

*Rodriguez v. Disner,* 688 F.3d 645 (9th Cir. 2012) .......................................................................7

*Stewart v. Applied Materials, Inc.,* No. 15-CV-02632-JST, 2017 WL 3670711
    (N.D. Cal. Aug. 25, 2017) ..............................................................................................12

*Syed v. M-I LLC,* 2016 WL 310135 (E.D. Cal. Jan. 26, 2016) .................................................6, 7

*Vincent v. Reser,* No. C 11-03572 CRB, 2013 WL 621865
    (N.D. Cal. Feb. 19, 2013) ...............................................................................................10

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002)....................................................6, 7

*Wade v. Minatta Transp. Co.,* No. C10-2796 BZ, 2012 WL 300397
    (N.D. Cal. Feb. 1, 2012)...................................................................................................7

*Wren v. RGIS Inventory Specialists,* No. 06-cv-05778 JCS, 2011 WL 1230826
    (N.D. Cal. Apr. 1, 2011) .................................................................................................13

iii

**Statutes**

ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2) ................................................................. 11

**Other Authorities**

Brian J. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions,*
    89 FORDHAM L. REV. 1151 (2021) ........................................................................ 10

Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee
    Awards, 7 J. EMPIRICAL LEGAL STUD. (2010) ...................................................... 9

MANUAL FOR COMPLEX LITIGATION (Fourth) § 14.121 (2004) ..................................... 6

Theodore Eisenberg, Geoffrey Miller and Roy Germano, *Attorneys' Fees in Class
    Actions: 2009-2013,* NYU Center for Law, Economics and Organization (Dec.
    2016) .................................................................................................................... 9

iv

**INTERVENOR PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF
ATTORNEYS' FEES AND INCENTIVE AWARDS**

Please take notice that on March 3, 2022, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Jon S. Tigar, United States District Judge for the Northern District of California, at the United States District Courthouse, 1301 Clay Street, Oakland, California 94612, Intervenor Plaintiffs will submit their Motion for Award of Attorneys' Fees and Incentive Awards in which they will urge the Court to enter an order:

1) Awarding counsel for Intervenor Plaintiffs and the Vesting Subclass attorneys' fees in the amount of $50,000;

2) Awarding $2,500 incentive awards to each of the three Intervenor Plaintiffs.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Intervenor Plaintiffs Michelle Hall, Jenifer Heiner and Christina Montoya (the "Intervenor Plaintiffs") respectfully request that this Court issue an order awarding their counsel $50,000 in attorneys' fees and awarding each of them $2,500 as incentive awards.  Plaintiff Intervenors and their counsel have substantially improved the value of the Settlement for Class Members who are part of the proposed Vesting Subclass. The amounts the Intervenors are requesting will be paid by Defendant in addition to the benefits negotiated on behalf of the Vesting Subclass, and are modest in relation to the Ninth Circuit's benchmarks and the benefits they have provided.

---

[1] Capitalized terms not otherwise defined in this Second Renewed Motion shall have the same meaning ascribed to them in the Second Revised Settlement Agreement, which is attached as Exhibit 1 to Plaintiffs' and Intervenor Plaintiffs' Notice of Motion, Motion for Final Approval of Settlement Agreement and Certification of Settlement Class, and Supporting Memorandum (the "Final Approval Motion").

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

The original parties to this litigation filed a motion for preliminary approval of a class action settlement on June 27, 2019 (the "Original Motion"), ECF No. 284. The proposed settlement attached to the Original Motion, ECF No. 284-1 (the "Original Settlement") included relief benefiting the Plan and all current Plan Participants, as well as monetary relief to two subgroups — a "PEP Plus" subgroup and a "vesting subgroup." The Plaintiffs at that time proposed that the Court certify a single class for purposes of the Settlement, appoint the named plaintiffs as class representatives and their attorneys as class counsel.

The vesting subgroup addressed in the Original Settlement consisted of former Dignity employees who forfeited their pension benefits in one of two cash balance plans that were part of the Dignity Health Plan because they left before the end of the five-year vesting period mandated by the Plan, but who would have fully vested if ERISA's three-year vesting mandate had applied. Original Settlement, ¶ 7.1.6. The vesting subgroup was composed of 3,282 individuals, of whom 2,538 had been covered by General Growth Account ("GGA") formula and 744 had accrued benefits under the Value Protection Plan ("VPP"). *Id.* The Original Settlement proposed that each member of the GGA group would receive $226.80, and each member of the VPP group would receive $113.40, for a total payout for both groups of $660,000. *Id.*

This Court denied the Original Motion without prejudice on October 28, 2019. ECF 289. Among the potentially problematic issues the Court identified was whether the payments to the PEP Plus subgroup and the vesting subgroup were appropriate without subclass certification, *id.* at 15-16, as well as the value of the subgroups' claims in relation to the amounts that will be paid to members of the subgroups. *Id.* at 16.

Following the Court's ruling on the Original Motion, the parties negotiated a "Restated and Amended Class Action Settlement Agreement," ECF No. 290-1 (the "First Revised Settlement"), and filed a renewed motion for preliminary approval, ECF No. 290 (the "First Renewed Motion").

---

[2] This section focuses on those background facts relevant to the Intervenor Plaintiffs' motion for an award of attorneys' fees and incentive awards. Intervenor Plaintiffs incorporate by reference the broader discussion on factual and procedural background included in the Final Approval Motion, which will be filed on the same day as this motion.

INTERVENOR PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS FEES AND
INCENTIVE AWARDS

As with the prior filing, the plaintiffs sought certification of a single class without any subclasses. First Renewed Motion at 9-13.  The First Revised Settlement also made no changes to the proposed benefits for the vesting subgroup.  *Compare* ECF No. 284-1, ¶ 7.1.6, with ECF No. 290-1, ¶ 7.1.6. However, Plaintiffs argued that the proposed benefits for the subgroup were fair, reasonable and adequate, and supported that conclusion with a supplemental declaration by actuarial expert Daniel Cassidy.  *See* First Renewed Motion, at 15-17 and Supplemental Declaration of Daniel Cassidy, ECF No. 209-7.  Based on certain assumptions concerning average age and salary of the members of the vesting subgroup, Mr. Cassidy estimated that the average loss for vesting subgroup members in the GGA group was between $2,400 and $10,800, while the average loss for vesting subgroup members in the VPP group was between $1,200 and $3,600.  *Id.* at ¶¶ 14 and 23.  Thus, based on Mr. Cassidy's estimates, the benefits paid under the proposed settlement to the VPP group were between 3.15% and 9.45% of the cash balance accounts they had forfeited when they left the company, while the proposed benefits to the GGA group represented between 2.1% and 9.45% of their forfeited cash balance accounts.

The Court denied the First Renewed Motion without prejudice on June 12, 2020.  While the Court found that most of its concerns with the Original Settlement had been resolved, the Court concluded that there was "a fundamental conflict of interest between the vesting subgroup and the rest of the class that must be addressed by subclass certification." ECF 292, at 16.  While the Court opined that a settlement which paid claimants between 3-9 percent of their potential damages was not necessarily unreasonable, the Court was unable to make a determination as to the reasonableness of the payment to the vesting subgroup without ensuring that the group was adequately represented in the negotiations.  *Id.*

After reviewing the Court's order denying the First Renewed Motion, counsel from the law firm of Izard, Kindall & Raabe, LLP ("IKR") contacted counsel for the named plaintiffs in the case and expressed interest in representing the interests of the vesting subgroup.  Declaration of Mark P. Kindall, filed herewith ("Kindall Decl."), at ¶ 3.  Plaintiffs' counsel then referred class members in the vesting subgroup to IKR to discuss their rights and potential courses of action.  *Id.*  Mr. Kindall

3

had discussions with several members of this subgroup in July and August of 2020 and investigated their claims.  *Id.* at ¶¶ 3-4.

After discussions with counsel and after reviewing materials concerning the case and IKR, Jenifer Heiner, Michele Hall and Christine Montoya determined that they wanted to intervene in the suit to represent the Vesting Subclass.  Kindall Decl., at ¶ 4; Declaration of Jenifer Heiner ("Heiner Decl."), ECF No. 306-7, at ¶¶ 6-8; Declaration of Michelle Hall ("Hall Decl."), ECF No. 306-8, at ¶¶ 7-9; Declaration of Christine Montoya ("Montoya Decl."), ECF No. 306-0, at ¶¶ 7-9.  On August 28, 2020, Ms. Heiner, Ms. Hall, and Ms. Montoya (the "Intervenors") filed a motion to intervene on behalf of themselves and the members of the vesting subgroup.  ECF No. 294.  Following a hearing, the Court granted the motion, Order, ECF No. 298, on Nov. 2, 2020.

Having reviewed the record in the case, counsel for the Intervenors determined to seek additional information concerning the actual amount of benefits forfeited by each member of the vesting subgroup, believing that such information should be available and would be more reliable than estimates based on reasonable assumptions by an actuary.  Kindall Decl., at ¶ 7.  IKR successfully obtained this information from Defendants through informal discovery in October of 2020.  *Id.* at ¶ 8.  Counsel analyzed the information and, based on that analysis and conferences with the Intervenors, determined to seek modifications to the First Revised Settlement Agreement that would improve the terms related to the vesting subgroup.  *Id.* at ¶ 9; *see also* Heiner Decl., ¶ 11; Hall Decl., ¶ 11; Montoya Decl., ¶ 11.

The Intervenors sought to make three modifications to the Settlement to benefit members of the vesting subgroup.  First, Intervenors sought to increase the total amount of money being paid to members of the vesting subgroup, believing that the percentage recovery was too low.  Kindall Decl., ¶ 9.  Second, Intervenors did not believe that it was appropriate to allocate the benefits to the subgroup based on estimates of the average damages for members of the GGA and VPP groups when we now had actual data concerning the forfeited cash balance accounts of each member of the vesting subgroup.  *Id.*  Finally, Intervenors wanted to include language to ensure that members of the vesting subgroup who received benefits under the Settlement would still be entitled to have their

prior service with Dignity Health count towards the Plan's vesting requirements if they returned to employment with Dignity Health, so long as they were otherwise entitled to have that service counted under the terms of the Plan.  *Id.*

Counsel for the Intervenors engaged in direct negotiations on these points with counsel for Defendants during the period from November of 2020 until late February, 2021.  *Id.* at ¶ 10.   At the end of that period, the Intervenors reached agreement with Defendant on all material terms affected the vesting subgroup.  *Id.*  Only after those negotiations were concluded and approved by the Intervenors and Defendants did counsel discuss the question of attorneys' fees, expenses and incentive awards.  *Id.* at ¶¶ 10-11.

Once the Intervenors and Defendants came to an agreement on terms, counsel for all Parties negotiated changes to the First Revised Settlement that reflected the changes Defendants had agreed to make on behalf of the vesting subgroup.  *Id.*  IKR and proposed Class Counsel also worked together to draft a second renewed motion for preliminary approval and supporting papers.  *Id.*  The new settlement agreement (the "Second Revised Settlement Agreement"), was submitted to the Court for preliminary approval on April 16, 2021. ECF No. 306.  The Court granted preliminary approval on October 19, 2021.  ECF No. 307.

As described more completely in the Final Approval Motion, the Second Revised Settlement Agreement made several modifications to the earlier iterations of the Settlement Agreement.  First, the Parties agreed that the vesting subgroup should be certified as a separate subclass (the "Vesting Subclass"), represented by the Intervenor Plaintiffs and their separate counsel.   Second, the compensation provided to the Vesting Subclass was increased approximately 44%, from $660,000 to $950,000.  Third, the plan of allocation for the Vesting Subclass was revised so that each member of the Vesting Subclass would receive the same proportion of his or her respective account balance (as opposed to a specified lump sum, as under the Original Agreement). Fourth, the Second Revised Settlement Agreement provided protections for Vesting Subclass Members who returned to employment with Dignity Health, to ensure that they were entitled to participate in the plan on the same basis as any other returning employee.  Second Revised Settlement Agreement, ¶ 7.1.6.

1    Finally, the agreement provided that Intervenors would seek an award of attorneys' fees and

2    expenses not to exceed $50,000, and incentive awards of $2,500 for each of the Intervenor Plaintiffs,

3    in addition to the other benefits negotiated on behalf of the Vesting Subclass.  *Id.*, ¶ 7.1.9.

4                                        **ARGUMENT**

5    **A.    The Court Should Approve the Requested Award of $50,000 for Attorneys' Fees**

6         **1.    The Court Should Use the Percentage of Fund Method to Evaluate the
7                 Reasonableness of Intervenor Plaintiffs' Fee Request**

8         Courts in the Ninth Circuit may award attorneys' fees in common fund cases based on either

9    the lodestar method or the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.,*

10   779 F.3d 934, 949 (9th Cir. 2015).  However, most courts use the percentage-of-the-fund method.[3]

11   This method is particularly appropriate "where, as here, 'the benefit to the class is easily quantified.'"

12   *Syed v. M-I LLC,* No. 14-cv-742, 2016 WL 310135, at * 9 (E.D. Cal. Jan. 26, 2016) (quoting *In re*

13   *Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011).

14        The Court should use the percentage-of-the-fund method here.  Percentage approaches are

15   the standard contingent-fee arrangements in non-class action cases, and thus, the percentage

16   approach best emulates the real-world market value of attorney's services that are provided on a

17   contingent basis, and properly align the interests of the attorney and the client in achieving the

18   maximum recovery in shortest possible time. *See Kirchoff v. Flynn,* 786 F.2d 320, 325–26 and 328

19   (7th Cir. 1986).  Moreover, the "lodestar method is difficult to apply, time-consuming to administer,

20   inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the

21   litigation until sufficient hours have been expended." MANUAL FOR COMPLEX LITIGATION (Fourth)

22   § 14.121 (2004); *see also Vizcaino,* 290 F.3d at 1050 n.5 ("[I]t is widely recognized that the lodestar

23   method creates incentives for counsel to expend more hours than may be necessary on litigating a

24   case so as to recover a reasonable fee . . . ."); *Syed*, 2016 WL 310135, at * 9 (use of the percentage

---

25   [3] *See In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (stating "use of
26   the percentage method in common fund cases appears to be dominant" and its "advantages . . . have
     been described thoroughly by other courts."); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 at 1050
27   (9th Cir. 2002) (approving use of percentage method); *In re Activision Sec. Litig.,* 723 F. Supp. 1373,
     1378 (N.D. Cal. 1989) ("this court concludes that in class action common fund cases the better
28   practice is to set a percentage fee").

method avoids "'the often more time-consuming task of calculating the lodestar'") (quoting *Bluetooth,* 654 F.3d at 942).

### 2. The Proposed Fee Award Is Reasonable

The Settlement Agreement provides that Plaintiff Intervenors will seek to have Defendant pay an award of attorneys' fees and expenses not to exceed $50,000. Second Revised Settlement Agreement, ¶ 7.1.9. A payment of $50,000 in attorneys' fees is reasonable and should be approved.[4]

In the Ninth Circuit, "usual range" for a percentage award of attorneys' fees in a common fund case is 20–30 percent. *Vizcaino,* 290 F.3d at 1047. The midpoint of the range is the "benchmark" (*id.*), which can be adjusted upwards or downwards "to account for any unusual circumstances involved in [the] case." *Alberto v. GMRI, Inc.,* No. CIV 07-1895 WBS DAD, 2008 WL 4891201, at *11 (E.D. Cal. Nov. 12, 2008) (quoting *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989)); *see also Rodriguez v. Disner,* 688 F.3d 645, 653 (9th Cir. 2012); *Online DVD-Rental Antitrust Litig.,* 779 F.3d at 949; *Wade v. Minatta Transp. Co.,* No. C10-2796 BZ, 2012 WL 300397, at *1 (N.D. Cal. Feb. 1, 2012)

Within the Ninth Circuit, courts look at the following factors when considering a proper percentage "for an award of attorneys' fees: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check." *Kanawi v. Bechtel Corp*., No. C 06-05566 CRB, 2011 WL 782244, at *1 (N.D. Cal. Mar. 1, 2011), citing *Vizcaino,* 290 F.3d at 1048–52; *see also In re Online DVD-Rental Antitrust Litig.,* 779 F.3d at 954–55.

In the instant case, as the Court recognized in its Preliminary Approval Order, Intervenor Plaintiffs are seeking an award that falls below the Ninth Circuit's 25% benchmark. ECF No. 37 at 5, n.2. Indeed, the request even falls below the bottom end of the "usual range" of 20-30%. The $50,000 fee request is only 5% of the $950,000 that will go to the proposed Vesting Subclass.

---

[4] Because counsel for the Intervenors has not incurred significant expenses and the lodestar, as discussed below, significantly exceeds $50,000, counsel does not seek a separate award of expenses.

Recognizing that Defendants had already agreed to pay the vesting subgroup $660,000 before counsel for Intervenors became involved in the case, however, it is also appropriate to look at the **additional** money obtained for the Vesting Subgroup through counsel's efforts.[5]   The $50,000 attorneys' fee request still represents only 17% of the additional $290,000 monetary benefit counsel obtained for the Vesting Subclass.  The sole issue for the Court, therefore, is whether there is any reason for an even greater downward departure from the Ninth Circuit's benchmark.   Looking at the factors considered by courts in this circuit, the answer is negative.

*Results and Risks:* As discussed in greater detail at pages 11-18 of Plaintiffs' Second Renewed Notice of Motion, Unopposed Motion for Preliminary Approval of Settlement Agreement and Certification of Settlement Class, and Supporting Memorandum (Dkt. No. 306), while the Settlement's benefits for the Vesting Subclass are not high compared to the benefits they might have obtained if they had won all of their arguments at trial, the benefits are fair, reasonable and adequate in light of the litigation risks that exist today.  There is no reason to depart from the benchmark fee where, as here, counsel has obtained "a good result in light of the circumstances."  *Azar v. Blount Int'l, Inc.,* No. 3:16-CV-0483-SI, 2019 WL 7372658, at *13 (D. Or. Dec. 31, 2019); *Dickerson v. Cable Commc'ns, Inc.,* No. 3:12-CV-00012-PK, 2013 WL 6178460, at *5 (D. Or. Nov. 25, 2013) (same).  Certainly there is no reason to further discount a 17% fee.

*Non-Monetary Benefit:*  Turning to the next factor, the proposed Settlement does not provide a benefit for Vesting Subclass Members in addition to the payment of money.  However, the additional provisions of the Settlement that Intervenors negotiated are designed to ensure that members of the Vesting Subgroup are not disadvantaged by the participating in the Settlement, which would have been the result if they were unable to have their prior service count towards vesting on the same basis as any other returning employee.

---

[5] The larger number is worth noting, however, because the Court specifically invited members of the Vesting Subclass to intervene and review the existing Settlement to determine whether it was fair, reasonable and adequate.  Without those efforts, the Court's determination that the vesting subgroup required separate representation would have continued to preclude approval of the Settlement.  Thus, the independent evaluation of whether the terms of the Settlement were fair, reasonable and adequate for the Vesting Subclass had value, regardless of the outcome of that evaluation.

*Market Rate:*  The requested fee percentage is significantly below the "market rate" for cases in this District and for ERISA cases generally.  A study of 458 class action settlements from 2009-2013 found that in both the Ninth Circuit generally and the Northern District of California in particular, the mean and median fee award percentages were 26 and 25 percent, respectively. Theodore Eisenberg, Geoffrey Miller and Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013,* at 11-12*,* NYU Center for Law, Economics and Organization (Dec. 2016).  The mean and median fee awards in ERISA cases were both 26%.  *Id.* at 13.  Moreover, where the class recovery was less than $400,000, the fee percentages were over 30%, and where the class recoveries were less than $1.4 million, the average fee percentage was above 28%.  *Id.* at 10.  An older study that looked at settlements from 2006 and 2007 found that the mean attorneys' fee percentages in the Ninth Circuit was 23.9 percent, the mean percentage in employee benefits cases was 26 percent, and the mean percentage in cases with settlements between $750,000 and $1,750,000 was 28.7%, while the median percentage for each of these categories was 25%, 28% and 30%, respectively.  Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. EMPIRICAL LEGAL STUD. 811, 835-839 (2010).  Professor Fitzpatrick found that the mean fee award in the 9th Circuit was 23.9% and the median was 25%.  *Id.* at 836.

Looking at published ERISA class actions in this District that have settled in the past ten years, the fee percentages appear to range from 25% to 44%.  In *Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017), the Court awarded a fee that represented 44% of the common fund, though the amount paid from the common fund was only 25% of the settlement.  The Court indicated that a 25 percent fee was "on par with settlements in other complex ERISA class actions."  *Id.,* citing *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG (JCX), 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016).  The Court award 25 percent of the common fund in *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,* 281 F. Supp. 3d 833, 861 (N.D. Cal. 2017) and *Vincent v. Reser,* No. C 11-03572 CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013), a 29% fee in *Baird v. BlackRock Institutional Tr. Co.,* N.A., No. 17-CV-01892-HSG, 2021 WL 5113030, at *7 (N.D. Cal. Nov. 3, 2021), and a 34.7% fee

1   in *Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.,* No. 17-CV-07243-BLF, 2021

2   WL 4895084, at *6 (N.D. Cal. Oct. 20, 2021).  In another ERISA case, *Kanawi*, 2011 WL 782244,

3   at *2, the Court awarded a 30% after concluding that "a 25% fee award is below the market rate for

4   similar cases."[6]

5          ***Contingent Nature of the Representation:***  IKR litigated the case entirely on a contingency

6   basis, which generally supports a higher fee.  However, IKR's representation was not "unusually

7   protracted" – *see Reyes,* 281 F. Supp. 3d at 861 – and thus IKR's opportunity cost was not excessive.

8   While the *Reyes* Court determined that a relatively short period of litigation on a contingency basis

9   did not merit an ***upward*** adjustment from the 25% benchmark, it did not suggest that a short litigation

10  period merited a ***downward*** adjustment, and the requested fee here is already below the benchmark.

11         ***Reactions from the Class:***  The period for filing objections to the Settlement and to the

12  request for attorneys' fees has not passed.  Accordingly, it is premature to address this factor.

13         ***Lodestar Cross-Check:***  A lodestar cross-check confirms that the requested fee award is

14  appropriate.  To perform the cross-check, a court must compare the requested fee to the fee that

15  would result from multiplying the hours reasonably expended on the case by reasonable hourly rates.

16  *Rodman v. Safeway Inc.,* No. 11-CV-03003-JST, 2018 WL 4030558, * 6 (N.D. Cal. Aug. 23, 2018).

17         Counsel for the Intervenors have devoted 107 hours on the case.  Kindall Decl. at ¶ 19.  These

18  hours were spent reviewing the Court's rulings and the terms of the original settlement agreement

19  and the first revised settlement agreement, communicating with members of the potential Vesting

20  Subclass, preparing and filing a Motion to Intervene, negotiating with Defendants over data issues,

21  analyzing data on losses sustained by members of the Vesting Subclass, negotiating modifications

22  to the prior settlement agreement, communicating with the Intervenor Plaintiffs, preparing portions

23  of the renewed Motion for Preliminary Approval and supporting documents, communicating with

24  Plaintiffs' Counsel,  Defendants' Counsel and the Settlement Administrator concerning notice

---

[6] The percentages discussed in both studies and in the cited cases were awarded by judges based on fee applications submitted after a case has settled; they do not demonstrate what a "market rate" might look like if rates were negotiated at the outset of a case when the outcome is uncertain. However, a recent study suggested that such clients generally agree to fee percentages in excess of 27 percent.  Brian J. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions,* 89 FORDHAM L. REV. 1151, at 1161-62 (2021).

1  issues, and responding to inquiries from members of the proposed Class and the Vesting Subclass
2  concerning the terms of the proposed Settlement.  Counsel for the Intervenor Plaintiffs excluded
3  from the total hours (a) hours billed by attorneys who did not bill more than 3 hours on the case; and
4  (b) hours spent preparing this Motion.  *Id.* at ¶ 18.  The number of hours expended was wholly
5  reasonable given the tasks performed.  *Id.* at ¶ 17.[7]

6      The hourly rates billed by Counsel for the Intervenor are reasonable.  IKR is a national class
7  action law firm that brings cases all over the country and does not change its fee structure regardless
8  of where the case is brought.  Kindall Decl. at ¶ 17.  Its rates are generally in line with other national
9  class action firms engaged in ERISA litigation.  *Id.* at ¶ 25.[8]  Moreover, IKR charges hourly clients
10  the same rates, although hourly clients may qualify for an early payment discount.  *Id.* at ¶ 17.

11      In *Rodman,* this Court held that a reasonable rate must reflect the "experience, skill, and
12  reputation of the attorney requesting fees" and the rates charged for similar work in the community
13  where the Court is located.  2018 WL 4030558, at *6.  The submitted lodestar includes time billed
14  by a senior partner with 33 years of experience ($850 per hour), time billed by a mid-level associate
15  with 5 years of experience ($350 per hour), and time billed by two paralegal assistants at $180 per
16  hour.  Similar rates have been approved in this district numerous times.  *See, e.g., Haralson v. U.S.*
17  *Aviation Serv. Corp.,* No. 16-CV-05207-JST, 2021 WL 5033832, at *8 (N.D. Cal. Feb. 3, 2021)
18  (finding rates "between $300 and $500 for associates, and between $750 and $850 for partners and
19  senior attorneys" to be reasonable for purposes of the lodestar cross-check); *In re Wells Fargo &*

---

20

21  [7] The Declaration of Intervenor Counsel provides detail on the amount of hours spent by each time
   keeper during each step of the litigation.  Kindall Decl. at ¶¶ 20, 22 and 24.  If the Court would like
22  a more detailed analysis of time spent, counsel can provide it.

23  [8] Counsel recognizes that this Court has determined that the proper community to consider when
   evaluating hourly rates is the one where the court is located, even in ERISA cases.  *Reyes,* 281 F.
24  Supp. 3d at 852–53.  To the extent that lodestar provides a market-based cross-check, it is reasonable
   to consider the hourly rates of the relatively small number of law firms that engage in ERISA class
25  action cases across the country, since these firms form the relevant market for these services.
   Moreover, evaluating the reasonableness of a law firm's hourly rates based on the location where a
26  case is brought could create incentives to consider whether attorneys in a particular forum have
   higher billing rates when choosing where to file a case.  This is particularly true in ERISA cases,
27  which may be brought "(1) where the plan is administered, (2) where the breach took place, and (3)
   where a defendant resides or may be found."  29 U.S.C. §1132(e)(2).

28

1   *Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020) (approving rates ranging

2   from $560 to $1,075 for partners or "of counsel" attorneys, and between $250 to $660 for associates),

3   *aff'd,* 845 F. App'x 563 (9th Cir. 2021); *Hefler v. Wells Fargo & Co.,* No. 16-CV-05479-JST, 2018

4   WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates "from $650 to $1,250 for partners

5   or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals" for

6   purposes of a lodestar cross-check), *aff'd sub nom. Hefler v. Pekoc,* 802 F. App'x 285 (9th Cir. 2020);

7   *Baird,* 2021 WL 5113030 at * 7 (finding counsel's hourly rates to be "reasonable given class

8   counsel's experience," and citing declaration from counsel (Dkt. No. 481-1) that lists partner rates

9   from $665 to $1,025 per hour, associate rates from $525 to $585 per hour, and paralegal rates from

10  $290 to $325 per hour).

11        This Court has found that prior approvals of counsel's rates are evidence of their

12  reasonableness. *See, e.g., Stewart v. Applied Materials, Inc.,* No. 15-CV-02632-JST, 2017 WL

13  3670711, at *10 (N.D. Cal. Aug. 25, 2017) (noting that the Court found particularly relevant

14  evidence that other courts had approved an attorney's requested rates); *Cabiness v. Educ. Fin. Sols.,*

15  *LLC,* No. 16-CV-01109-JST, 2019 WL 1369929, at *7 (N.D. Cal. Mar. 26, 2019) (noting that

16  counsel had provided cites to in-district cases where its rates had been approved). The hourly rates

17  for both IKR attorneys who have billed time in this case have previously been submitted to this court

18  and accepted for purposes of a lodestar cross-check. Kindall Decl. at ¶¶ 21 and 23 and exhibits B

19  and C attached thereto (the fee order and declaration, respectively, from *Cryer v. Franklin*

20  *Resources, Inc.*, No. 16-cv-4265 CW (2019)).

21        Using Intervenor Counsel's hourly rates to calculate lodestar for the 107 hours submitted

22  yields a lodestar of $78,975. The requested fee, accordingly, is only 63% of counsel's lodestar. As

23  this Court has noted, this "contrasts with the majority of common fund settlements, in which the fees

24  awarded are typically greater than, or a multiple of, counsel's lodestar." *Flores v. TFI Int'l Inc.,* No.

25  12-CV-05790-JST, 2019 WL 1715180, at *10 (N.D. Cal. Apr. 17, 2019) (citing *Vizcaino,* 290 F.3d

26  at 1051 n.6 for the proposition that lodestar multiples between 1 and 4 are common). Even if the

27  Court were to reduce both the hours counsel spent and counsel's hourly rates by half (which, for the

28

1   reasons described above, it should not), the requested fee would be well within the Ninth Circuit's

2   "reasonable range" of multiples.

3   As this Court has observed, the purpose of the lodestar cross-check is to "'do rough justice'"

4   rather than "'achieve auditing perfection.'" *Rodman,* 2018 WL 4030558, at * 6 (quoting *Fox v. Vice,*

5   563 U.S. 826, 838 (2011).  A negative lodestar multiple can support a fee percentage that is higher

6   than the 25 percent benchmark (*Rabin v. PricewaterhouseCoopers LLP,* No. 16-CV-02276-JST,

7   2021 WL 837626, at *8 (N.D. Cal. Feb. 4, 2021)), but the Intervenor Plaintiffs are requesting a fee

8   that is **lower** than the benchmark percentage.  Accordingly, the lodestar cross-check confirms the

9   reasonableness of the requested fee.

10   Consideration of the relevant factors suggests that the requested fee is fair and reasonable.

11   Counsel achieved a fair result for the Vesting Subclass, taking litigation risk into account, the

12   requested fee percentage is below the market for similar cases, the case was litigated on a

13   contingency basis and the lodestar multiple is negative.

14   **B.    The Court Should Approve the Requested $2,500 Incentive Awards to Intervenors**

15   The Intervenor Plaintiffs request that the Court award them $2,500 each for their efforts on

16   behalf of the Vesting Subclass.  This request is reasonable in light of this Circuit's caselaw on

17   incentive payments:

18   "Incentive awards are payments to class representatives for their service to
     the class in bringing the lawsuit." *Radcliffe v. Experian Info. Solutions, Inc.*,
19   715 F.3d 1157, 1163 (9th Cir. 2013). "It is well-established in this circuit that
     named plaintiffs in a class action are eligible for reasonable incentive
20   payments, also known as service awards." *Wren v. RGIS Inventory
     Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr.
21   1, 2011), *supplemented*, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal.
     May 13, 2011). An incentive award of $5,000 is presumptively reasonable,
22   and an award of $25,000 or even $10,000 is considered "quite high." *See Dyer
     v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (citing
23   *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2012 WL 381202, at *7
     (N.D. Cal. Feb. 6, 2012)).

24

25   *In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d at 534.  Here, as the Court noted

26   in the Preliminary Approval Order (ECF No. 307 at 5, n.2), the Intervenor Plaintiffs are asking for

27   an award that is below the relevant Ninth Circuit benchmark of $5,000.  The reason is that the

28

Intervenor Plaintiffs were cognizant that (a) their participation in the case was of a shorter duration that Plaintiffs for the Class as a whole; and (b) that the requested Incentive Awards were roughly equal to the highest dollar value that any member of the Vesting Subclass will receive under the Settlement.[9]  Thus Intervenor Plaintiffs deliberately requested an award that was only half of the "presumptively reasonable" amount.

While the Intervenor Plaintiffs have not been involved in the case for a long period of time, they have been very active and diligent in their work on behalf of the Vesting Subclass.  They interview proposed counsel for the Vesting Subclass and reviewed information about the case and counsel before signing a retainer agreement.  Heiner Decl., ¶ 6; Hall Decl., ¶ 5; Montoya Decl., ¶ 7. They provided information and documents concerning their involvement in the plan, reviewed and approved court filings, consulted with counsel on negotiating strategy and participating in telephone and conference calls concerning the negotiations.  Heiner Decl., ¶¶ 9-14; Hall Decl., ¶¶ 8-14; Montoya Decl., ¶¶ 7-14; Kindall Decl. ¶ 12.  At all times, they provided thoughtful input and worked to achieve the best possible result for all members of the Vesting Subclass.  Heiner Decl., ¶ 14; Hall Decl., ¶ 14; Montoya Decl., ¶ 14; Kindall Decl. ¶ 12.  Their agreement to the terms of the proposed settlement was based on a thorough review and understanding of the risks and potential benefits of the litigation.  *Id.*  In short, the Intervenor Plaintiffs stepped up, did what needed to be done, and performed a valuable task which was necessary to achieve a fair result for the Vesting Subclass.  The requested awards of $2,500 each are entirely reasonable.

## CONCLUSION

For the reasons set forth herein, counsel for the Intervenor Plaintiffs and the Vesting Subclass respectfully requests that this Court award $50,000 in attorneys' fees and $2,500 each as a incentive award to Michelle Hall, Jenifer Heiner and Christina Montoya, in accordance with the terms of the proposed settlement which the Court has preliminarily approved.

---

[9]  The highest individual benefit a Vesting Subclass member will receive under the Settlement is 2,845.29, while the average benefit is $289.46.  Kindall Decl., ¶ 10.

IZARD KINDALL & RAABE, LLP

By: */s/ Mark Kindall*_____
Mark Kindall
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292 / Fax: (860) 493-6290

***Vesting Subclass Counsel***

15

INTERVENOR PLAINTIFF'S MOTION FOR
AWARD OF ATTORNEYS FEES AND
INCENTIVE AWARDS

**CERTIFICATE OF SERVICE**

I, Mark P. Kindall, hereby certify that on December 22, 2021, a true copy of the above document was served on the Defendants, through their counsel of record, via ECF.

*/s/  Mark P. Kindall*

INTERVENOR PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS FEES AND INCENTIVE AWARDS