UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLA ROLLINS, et al., | Case No. 13-cv-01450-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTIONS FOR ATTORNEY'S FEES** |
| DIGNITY HEALTH, et al., | |
| Defendants. | Re: ECF Nos. 310, 311, 312 |

Before the Court are a motion for a final approval of a settlement agreement and two motions for attorney's fees, expenses, and incentive awards filed by class counsel for Plaintiffs and class counsel for Intervenor Plaintiffs.  ECF Nos. 310, 311, 312.  The Court will grant all three motions.

I.      **BACKGROUND**

A.      **Factual and Procedural Background**

The factual and procedural background to this putative class action is more fully described in the Court's previous orders denying Plaintiffs' motions for preliminary settlement approval and preliminary class certification.  *See* ECF Nos. 289, 292.  In short, Plaintiffs sued Defendants Dignity Health and Dignity Health Retirement Plans Subcommittee as well as two individual defendants over the administration of the Dignity Health Pension Plan ("the Plan").  Second Amended Complaint ("SAC"), ECF No. 268 ¶ 3.  The crux of the dispute is whether the Plan qualifies for the church plan exemption to the Employee Retirement Income Security Act of 1974 ("ERISA").  *Id.* ¶ 4.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11

This case has travelled a long road.  Plaintiffs filed suit in 2013.  ECF No. 1.  In 2019, after the case progressed through the District Court, Ninth Circuit, Supreme Court, and then the District Court again, the parties eventually reached a settlement.  ECF No. 278.  Plaintiffs filed an unopposed motion for preliminary approval of the settlement agreement – which included provisions for differing payments to two subgroups – and to preliminarily certify the class.  ECF No. 284.  The Court denied approval without prejudice and deferred ruling on preliminary class certification.  ECF No. 289.  Plaintiffs revised the agreement and filed a renewed, unopposed motion for preliminary approval and class certification.  ECF No. 290.  The Court reluctantly denied the renewed motion, recognizing that subclass certification was required because the interests of the Vesting Subclass conflicted with those of the general settlement class.  ECF No. 292 at 16.

12
13
14
15
16

Following the second denial order, three members of the Vesting Subclass obtained separate counsel and filed a motion to intervene, ECF No. 294, which the Court granted, ECF No. 297.  The subgroup's counsel, Mark Kindall of Izard, Kindall & Raabe, negotiated with counsel for Dignity Health, ECF No. 306 at 12, and the parties arrived at a proposed settlement as articulated in the second revised settlement agreement, ECF No. 306-1.

17
18
19
20

After the parties addressed the Court's concerns, the Court entered an order granting preliminary approval of the class action settlement, preliminarily certifying a putative class and subclass for settlement purposes.  ECF No. 307.  A final approval hearing was conducted on March 3, 2022.

21

**B.     Terms of Settlement[1]**

22
23
24
25

The terms of the settlement agreement pertaining to the Settlement Class – "[a]ll participants, former participants, or beneficiaries of the Dignity Health Pension Plan," ECF No. 306-1 § 1.32 – are discussed at length in the Court's previous order denying preliminary approval, ECF No. 292 at 2-4, and the Court's previous order granting preliminary approval, ECF No. 307

26
27
28

---

[1] This order incorporates by reference the definitions in the Second Restated and Amended Class Action Settlement Agreement, and all terms used shall have the same meanings as set forth in the Settlement Agreement.

2

at 2-3.  The Court incorporates its discussion of the parties' settlement agreement here by reference.

## II.     JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1332(d).

## III.    MOTION FOR FINAL SETTLEMENT APPROVAL

Having reviewed the parties' briefs and supplemental submission, the Court will grant Plaintiffs' motion for final approval of the Settlement.

1. The Court confirms that the class preliminarily certified under Rule 23 is appropriate for the reasons set forth in its preliminary approval order, and hereby certifies the following non-opt-out classes:

Settlement Class: Includes "[a]ll participants, former participants, or beneficiaries of the Dignity Health Pension Plan as of the date of full execution of [the] settlement agreement."  ECF No. 310-1 at 5.

Vesting Subclass: "the members of the Settlement Class who are former Participants in the Cash Balance portion of the Plan who terminated employment on or after April 1, 2013, and on or before March 27, 2019, and completed at least three (3) but less than five (5) years of vesting service." *Id.*

2. The "Effective Date of Settlement" as defined at Section 1.14 of the Settlement Agreement, is the date on which this order becomes final.

3. For purposes of the Settlement, the Court hereby finally certifies Plaintiffs Starla Rollins and Patricia Williams as class representatives and Intervenors Jenifer Heiner, Christine Montoya, and Michele Hall as Vesting Subclass representatives.  The Court also finally certifies Keller Rohrback L.L.P., including but not limited to Ron Kilgard, Christopher Graver, Lynn L. Sarko, Matthew M. Gerend, and Juli E. Farris, and Cohen Milstein Sellers & Toll PLLC, including but not limited to Karen L. Handorf and Michelle C. Yau, as Settlement Class Counsel.  The Court finally certifies Izard, Kindall & Raabe, LLP, including but not limited to Mark P. Kindall, as

1    Vesting Subclass counsel and Angeion Group as settlement administrator.

2    4.   The parties complied in all material respects with the second revised notice

3         plan, ECF No. 306-5, and distribution plan, ECF No. 284 at 37.  The Court

4         finds that Plaintiffs' notice to the settlement class constituted due and

5         sufficient notice to the class of the pending of the litigation, the existence

6         and terms of the Settlement, class member's right to make claims or object,

7         and the matters to be decided at the final approval hearing.  Further, the

8         notice plan satisfied the requirements of the United States Constitution,

9         Rule 23 of the Federal Rules of Civil Procedure, and all other applicable

10        law.  All requirements of the Class Action Fairness Act, 29 U.S.C. § 1711,

11        et seq., have been met.

12   5.   The Court finds that full opportunity has been given, including at the final

13        approval hearing held on March 3, 2022, for class members to object to the

14        terms of the Settlement and the requests for attorney's fees.  No class

15        members objected at the hearing.  The Court received one objection from

16        Jessica Jensen on the docket.  ECF No. 313.  It appears that her objection is

17        based on a misunderstanding of the Settlement; the Settlement will not

18        affect any of her claims regarding the amount of her individualized pension

19        benefits and it does not dictate the amount of her accruals.  Instead, the

20        Settlement involves mandated Plan contributions and direct payments to

21        certain subgroups.  Class Counsel contacted Jensen by phone and had a

22        discussion with her about her objection.  ECF No. 316 at 8.  Although it is

23        not clear whether Jensen believes the discussion resolved her objection, the

24        Court finds that her concerns do not relate to the Settlement in this case.

25   6.   None of the other statements received by the Court and/or Class Counsel

26        appear to be objections.  Monika Poje, counsel for Vladosa Brencic Hamrla,

27        filed a notice and inquiry with the Court.  ECF No. 314.  The notice informs

28

the Court of the death of Nicholos Migorodsky and that his pension benefit
is in the process of being transferred to his only heir, Brencic Hamrla.  The
notice also requested information about whether the decedent is a "member
of The Vesting Subclass and is entitled to one-time payment."  ECF No.
314 at 2.  Class Counsel responded to Poje on January 27, 2022, letting her
know that it is unlikely that Mirgorodsky is a member of the Vesting
Subclass because he has been receiving retirement benefits from 1994 until
his recent death.  ECF No. 316 at 10; ECF No. 316-5 ¶ 7.  Class counsel
sent a follow-up email on February 17, 2022.  *Id.*   Neither email prompted
a response.  The Court finds that the notice and inquiry do not constitute an
objection to the Settlement.

7.   Class Counsel also received a hand-written letter from "Grace T." that
discusses missed Dignity Health pension payments but does not include any
discernible objection to the Settlement.  ECF No. 316-2 at 5; ECF No. 316
at 4.

8.   Finally, the Settlement Administrator received a letter from a person
expressing concern that the Settlement could interfere with her Social
Security benefits.  ECF No. 316-2 ¶ 11.  The Settlement Administrator
responded with a letter containing additional information about the
Settlement and contact information for Class Counsel.  ECF No. 316-1 ¶ 8.
As of the date of this order, the letter's author has neither contacted Class
Counsel nor filed an objection.  The Settlement Administrator also received
other inquiries via email, none of which constitute objections to the
Settlement. ECF No. 316-1 ¶ 9.

9.   The Court finds that the Settlement is fair, reasonable, and adequate.  The
Court further finds that the Settlement was the product of arms-length
negotiations between competent, able counsel and conducted with the

United States District Court
Northern District of California

1  oversight and involvement of a neutral mediator; the record was sufficiently

2  developed and complete through meaningful discovery and motion

3  proceedings enabled counsel for the parties to adequately evaluate and

4  consider the strengths and weaknesses of their respective positions; the

5  litigation involved disputed claims, which underscores the uncertainty and

6  risks of the outcome in this matter; and the Settlement provides meaningful

7  remedial benefits for the disputed claims.

8                               *   *   *

9         Accordingly, the motion for final approval of the Settlement is hereby granted.  Pursuant to

10  and in accordance with Rule 23, the Court fully and finally approves the Settlement in all respects

11  including, without limitation, the terms of the Settlement, the releases provided for therein, and the

12  dismissal with prejudice of the claims asserted in this action, and finds that the Settlement is, in all

13  respects, fair, reasonable, and adequate, and is in the best interests of the settlement class

14  representatives, intervenor class representatives, class, and the intervenors.

15         The Court retains continuing and exclusive jurisdiction over the implementation,

16  administration and enforcement of this Judgement and the Settlement and all matters ancillary

17  thereto.  The parties are directed to implement and perform the Settlement in accordance with the

18  terms and provisions of the Settlement.

19         In accordance with the Settlement, and to effectuate the Settlement, Defendants shall

20  provide Cash Contributions and Minimum Funding to the Plan Trust in accordance with the terms

21  of the Settlement.  In addition, Defendants shall provide a one-time payment to the PEP Plus

22  Claimants and one-time payment to the Vesting Subclass as described in Section 7 of the

23  Settlement Agreement.  The terms of the Settlement and this order shall be binding on the

24  Settlement Class, including the scope of the Released Claims described in Section 3 of the

25  Settlement Agreement.

26         Finding no just reason to delay entry of this order as a final judgment with respect to the

27  claims asserted in this action, the Clerk of the Court is directed to enter judgment pursuant to Rule

28

54(b).

## IV.   PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS

Plaintiffs filed a motion for attorney's fees, reimbursement of expenses, and incentive awards.  ECF No. 311.  They request that the Court approve $5,766,193.12 in attorney's fees, a reimbursement of $363,806.88 for litigation costs, and $10,000 in incentive awards to each of the two named plaintiffs.  These fees will not impact Dignity Health's contribution of $100,000,000 to the Plan.  Instead, the funds will be taken from a separate allocation of $6.15 million that Defendants have agreed to pay in attorney's fees, expenses, and incentive awards.  ECF No. 311 at 16.

### A.   Attorney's Fees Award

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' argument, . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (internal citation omitted).  "The Ninth Circuit has approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances: the lodestar method or the percentage-of-recovery method."  *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *1 (N.D. Cal. March 17, 2021) (citation omitted).

The lodestar method "is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."  *In re Bluetooth*, 654 F.3d at 941.  "The lodestar method is also appropriate for 'claims-made' settlements."  *In re Apple*, 2021 WL 1022866, at *2 (citation omitted).

In contrast, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery

method" to assess the reasonableness of the requested attorney's fee award.  *In re Bluetooth*, 654

F.3d at 942.  "Because the benefit to the class is easily quantified in common-fund settlements,

[the Ninth Circuit has] allowed courts to award attorneys a percentage of the common fund in lieu

of the often more time-consuming task of calculating the lodestar." *Id.*

In choosing the proper methodology, courts must exercise their discretion "in a way that

achieves a reasonable result." *In re Apple*, 2021 WL 1022866, at *1 (citing *In re Coordinated

Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997)).  Thus, the first question before this

Court is which method to employ.

### 1.      Method of Fee Calculation

Plaintiffs acknowledge that "this settlement is not technically structured as a common fund

because class members do not have ascertainable claims to a portion of the $100 million payment"

but argue that "it is nevertheless appropriate to treat the settlement as a common benefit fund for

the purpose of determining the reasonableness of the requested attorney[']s fees because it

provides a sum certain common benefit."  ECF No. 311 at 9.  Plaintiffs calculate the fund as

$106,975,000.00 by combining Dignity Health's baseline contributions of $100 million with the

Plan's Trust plus payments of $825,000 and $6,150,000 in requested attorney's fees, expenses,

and incentive awards.[2]  ECF No. 311 at 10.  For purposes of this motion, the Court will calculate

the reasonableness of the fee requests based on the $100 million baseline contribution.

The requested fees, expenses, and awards in this case "will not reduce the monetary

recovery to the Settlement Class."  ECF No. 311 at 6.  However, this case is distinguishable from

cases that have found no "common fund" where the attorney's fees "come directly from defendant

as opposed to from a fund created by the settlement."  *Create-a-Card, Inc. v. Intuit, Inc.*, No. C

07-06452 WHA, 2009 WL 3073920, at *1 (N.D. Cal. Sept. 22, 2009).  Here, the parties agree that

"if the Court awards a lesser amount than $6.15 million, the difference between the amount

---

[2] The Court also notes that Dignity Health may ultimately pay as much as $747,000,000 to the Fund.  ECF No. 311 at 7.  The Court does not use this figure to calculate the reasonableness of the attorney's fees, expenses, or incentive awards, but notes that this fact further supports approving these requests.  ECF No. 292 at 9.

United States District Court
Northern District of California

8

1    awarded and $6.15 million will be added to the amounts contributed to the Plan."  ECF No. 311 at

2    6.  In other words, while the requested fees will not reduce the minimum monetary recovery to the

3    Settlement class, the fees will still impact the recovery available to the class.  *Cf. id.* ("the amount

4    of attorney's fees awarded will have no impact on the recovery available to the class members").

5           Because the Settlement includes a fixed, minimum, non-reversionary sum of $100,000,000

6    and because the attorney's fees award will have an impact on the recovery available to the class,

7    the Court finds that the Settlement does contain a common fund for purposes of this motion.[3]  *See*

8    *In re Apple*, 2021 WL 1022866, at *2 (applying the percentage-of-the-fund method where there is

9    a fixed minimum amount for the class and distinguishing cases where the amount of attorney's

10   fees awarded "did not have any impact on the recovery available to the class").

11          "Nonetheless, the Ninth Circuit has made clear that in 'megafund' cases, such as this one,

12   courts may 'employ the lodestar method instead' if rote application of the 25% benchmark 'would

13   yield windfall profits for class counsel in light of the hours spend on the case.'"  *In re High-Tech*

14   *Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *7 (N.D. Cal. Sept. 2,

15   2015) (quoting *In re Bluetooth*, 654 F.3d at 942).  For example, in *In re Washington Public Power*

16   *Supply System Securities Litig.*, 19 F.3d 1291, 1297-98 (9th Cir. 1994), the Ninth Circuit found

17   that the district court "acted well within the bounds of its discretion" when it decided to apply the

18   lodestar method, rather than the percentage-of-the-fund method, to a motion for attorney's fees out

19   of a $687 million common fund.  Although class counsel requested an award of 13.6 percent of the

20   fund, well below the 25 percent benchmark, the district court found the request "arbitrary" because

21   class counsel "could just as easily have requested 3.6 percent or 36.1 percent."  *Id.* (internal

22   quotation marks omitted).  The Court finds that in this case, as in *In re Washington*, there is

23   "nothing inherently reasonable about an award of" approximately 6 percent of the megafund.

24   Therefore, the Court finds that the lodestar method – tying the fee awards for counsel to the actual

25   hours they reasonably expending on the litigation – is the best method to employ in this case,

26

27   [3] The $100,000,000 fixed minimum amount for the Class does not include the additional $925,000
     being paid to the Vesting Subclass because that Subclass is represented by separate counsel who
28   negotiated a separate settlement and are requesting separate fees.  ECF No. 311 at 6 n.3.

United States District Court
Northern District of California

along with a percentage-of-the-fund cross-check. *See In re Bluetooth*, 654 F.3d at 944

(encouraging courts to "cross-check[] their calculations against a second method").

### 2.   Lodestar Method

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of

hours the prevailing party reasonably expended on the litigation (as supported by adequate

documentations) by a reasonable hourly rate for the region and for the experience of the lawyer."

*Id.* at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Although "the lodestar

figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate

positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941-42 (citations

and internal quotation marks omitted). These factors include "the quality of representation, the

benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

nonpayment." *Id.* at 942 (citations omitted). The most important factor is the benefit obtained for

the class. *Id.*

### a.   Billing Rates

In determining reasonable hourly rates, courts balance "granting sufficient fees to attract

qualified counsel" with the need to "avoid[] a windfall to counsel." *Moreno v. City of

Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Courts achieve this balance by ensuring that

counsel is compensated at "the rate prevailing in the community for similar work performed by

attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796

F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

To inform and assist the Court in making this assessment, "the burden is on the fee applicant to

produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the

community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The forum district is generally

considered the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.

1992).

The billing rates in this case vary based on the attorneys' level of experience. Partners'

and Counsels' rates range from $625 to $1,060. The billing rates for non-partner and non-counsel

attorneys, including associates, litigation assistants, and document analysts range from $215-$625, with most under $600.  *See* ECF No. 310-2 at 80-91.  The Court finds these rates reasonable in light of prevailing market rates in this district and the complexity and novelty of the issues presented by this case.  *See, e.g., Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2022 WL 45057, at *7 (N.D. Cal. Jan. 5, 2022) (approving rates ranging from $625 to $1,145 for partners and counsel, $425 to $650 for associates, $300-$370 for paralegals); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals).  In addition, Class Counsel provides documentation demonstrating that the billing rates in this case are similar to hourly rates in other church plan cases that they have litigated jointly and separately across the country.  ECF No. 310-2 ¶¶ 64-66.

The billing rates are further justified by the particular skill and experience many of the attorneys brought to this case.  For example, Michelle C. Yau, a partner at Cohen Milsein "has played an instrumental role in some of the most significant ERISA lawsuits in recent U.S. history" and was named "a Rising Star Under 40 in 2014 . . . for her work in cutting-edge ERISA litigation." ECF No. 310-2 at 76-77.   Similarly, Scott M. Lampert who is Of Counsel at Cohen Milstein "is currently engaged in litigating a number of so-called 'church plan lawsuits.'" *Id.* at 78.  He "has over 20 years of experience litigating complex commercial class actions on behalf of employees, retirees, and consumers in retiree benefits, employment, consumer protection and antitrust matters." *Id.*  As of December 2021, he "serves as lead or co-lead counsel in 12 separate cases in various jurisdictions throughout the U.S." *Id.*

Therefore, the Court finds that Class Counsel have justified their rates based on the prevailing rates in this district for attorneys with similar skill, experience, and reputation.

### b. Reasonable Hours

In determining whether the hours expended on litigation are reasonable, the inquiry "must be limited to determining whether the fees requested by this particular legal team are justified for

the particular work performed and the results achieved in this particular case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  A district court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted).

This case—which has been in active litigation since 2013— required a significant amount of Class Counsel's time as they litigated complex and unsettled areas of the law in the district court, appellate court, and Supreme Court.  The case was first assigned to Judge Thelton Henderson, who concluded that only a church or a convention or association of churches may establish a church plan under the exemption.  Because the Plan was not established by one of those qualifying entities, Judge Henderson granted Plaintiffs' motion for partial summary judgment.  ECF No. 175.  Judge Henderson then granted Defendants' motion to stay the case and certified the partial summary judgment order for interlocutory appeal.  ECF No. 205.  Before the case was stayed, the parties submitted three joint case management statements and participated in four case management conferences.  ECF No. 10-2 ¶ 8.  During this time, Rollins also served two sets of interrogatories, four sets of requests for production of documents, and one set of requests for admissions.  Plaintiffs also responded to one set of Defendants' interrogatories and one set of requests for production.  *Id.*  Plaintiffs took the depositions of two Dignity Health witnesses and was in the midst of scheduling a third deposition when the case was stayed.  *Id.*  The parties also briefed two discovery disputes and held conferences among themselves to try and resolve a variety of discovery issues.  *Id.*

The Ninth Circuit agreed to hear Defendants' interlocutory appeal over Plaintiffs' objection.  After full briefing (which included nine *amici curiae* briefs), the parties argued the Ninth Circuit appeal.  The parties also filed post-argument briefs on issues raised at oral argument as well as "additional briefing on subsequently-issued opinions." *Id.* ¶ 9.  Ultimately, the Ninth Circuit affirmed the district court's interpretation of the church plan.  *Rollins v. Dignity Health*, 830 F.3d 900 (9th Cir. 2016).

Defendants then petitioned the Supreme Court for a writ of certiori.  *Id.* ¶ 10.  The

1    Supreme Court granted review in this case and two other cases in two other circuits that reached

2    similar conclusions.  *Id.*  The Court consolidated all three appeals, heard argument, and ultimately

3    reversed all three circuit courts.  *Id.*  The Court "held that pension plans need not be established by

4    churches in order to qualify as ERISA-exempt church plans, as long as they otherwise meet the

5    requirements to be church plans."  *Id.* (citing *Advocate Health Care Network v. Stapleton*, 137 S.

6    Ct. 1652, 1663 (2017)).  The case was then remanded to this Court for further proceedings on

7    Plaintiffs' other claims.  ECF No. 234.

8        Following remand, Plaintiff Patricia Wilson joined Plaintiff Rollins and they jointly filed

9    an amended class action complaint.  ECF No. 249.  After full briefing and argument, the Court

10   denied in large part Defendants' motion to dismiss, concluding that Plaintiffs adequately alleged

11   that the Plan did not qualify as a church plan under the *Stapleton* Court's construction of the

12   exemption.  The Court granted the motion to dismiss in part with leave to amend.   Plaintiffs then

13   filed a second amended class action complaint, which expanded on Plaintiff Rollins' initial

14   complaint.  ECF No. 310-2 ¶ 12.  Defendants answered the complaint.  ECF No. 272.  In

15   November 2018, concurrently with the resumption of discovery, the parties initiated settlement

16   discussions.  ECF No. 310-2 ¶¶ 13-14.  To prepare for mediation, the parties exchanged

17   confidential information and documents on an expedited basis and wrote confidential mediation

18   statements to the mediator.  *Id.* ¶ 14.  Plaintiffs also hired an actuary to assist in analyzing

19   information and help prepare for mediation.  *Id.* ¶ 15.  The settlement negotiations spanned several

20   months, which included two day-long in-person mediation sessions in January and February 2019.

21   The parties communicated between the two sessions as they tried to work out the terms of possible

22   settlement.  After "innumerable phone conferences, more than a dozen drafts, and after

23   considering all relevant factors" the parties reached an agreement in principle to settle the case.

24   *Id.* ¶ 17.

25       After reaching a settlement, the parties filed a motion for preliminary approval, which the

26   Court denied due to concerns regarding certain features of the provision for payment of attorney's

27   fees, expenses, and incentive awards; whether subgroups required subclass certification; and the

28

United States District Court
Northern District of California

13

need for additional evidence regarding the value of the settlement and the claims being settled.

ECF No. 289 at 10-16.  The parties engaged in further negotiations, amended their settlement

agreement, and filed a renewed motion for approval of the settlement agreement.  ECF No. 290.

The Court denied the motion again, finding that the subgroup preliminarily certified as the Vesting

Subclass required separate representation before the Court could determine whether their recovery

was adequate.  ECF No. 292 at 16.

Prompted by the Court's order, three members of the Vesting Subclass moved to intervene

in this matter.  ECF No. 294, 297.  The Defendants and Intervenor Plaintiffs proceeded to engage

in months-long negotiations and were able to reach an agreement that did not adversely affect the

Settlement Class members.  The resulting Settlement Agreement was preliminarily approved by

this Court.  ECF No. 307.

The Court provides this lengthy narrative to demonstrate the reasonableness of expending

over 10,789 professional hours litigating and settling this action.  The Court further notes Class

Counsel's decision not to include timekeepers with less than 20 hours in this case and to exclude

any time incurred in the settlement approval proceedings themselves, even though they estimate

that the dollar value of that time would be valued at more than $1,000,000 at counsel's current

hourly rates.  ECF No. 310-2 at 18.

For these reasons, the Court accepts Class Counsel's calculated lodestar of $8,070,034.50.

### c.  Multipliers

Class Counsel requests a fee award of $5,766,193.12, which results in a fractional

multiplier of 0.71 of the lodestar.  The Court approves this multiplier, which is below the range

that other courts have approved for similar megafund settlements.  *See, e.g.*, *Vizcaino v. Microsoft

Corp.*, 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (in a bare majority of cases surveyed where the

common fund was $50-200 million, the multiplier was in the 1.5-3.0 range); *In re Wells Fargo &

Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 532 (N.D. Cal. 2020) (approving a 2.7

multiplier for a megafund of $240 million).

### 3.     Percentage-of-Recovery Cross-Check

Class counsel requests a fee award of $5,766,193.12, which is approximately six percent of the common fund.[4]  The Court finds this reasonable.  *See Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-5923 WHA, 2015 WL 2438274, at *8 (N.D. Cal. May 21, 2015) (awarding nine percent of $203 million megafund and listing cases with comparable awards).

\* \* \*

For the foregoing reasons, the Court grants class counsel's motion for an attorney's fee award of $5,766,193.12.

### B.     Reimbursement of Expenses

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation and citations omitted).

In addition to attorney's fees, class counsel requests a reimbursement of $363,806.88 for litigation costs.  Keller Rohrback claims it incurred $172,247.64 in expenses and Cohen Milstein claims $191,559.24 in expenses.  After reviewing the exhibits containing the firm's itemized lists of costs, the Court finds these costs reasonable.  ECF No. 310-2 at 99-101.  The expenses incurred all relate to common and routinely reimbursed litigation expenses, such as filing fees, travel fees, court appearances and mediation, copying, deliveries, legal research charges, and mediator's charges.  *Id.*  The Court's conclusion in this regard is further supported by the fact that the reimbursement will not reduce the baseline amount that Dignity Health will contribute to the Fund and instead will be taken from the $6.15 million allocated for attorney's fees, incentive awards, and expenses.

### C.     Incentive Awards

Plaintiffs request that the Court award $10,000 in incentive fees to named plaintiffs Rollins

---

[4]  The common fund consists of a minimum of $100 million that Dignity Health will contribute to the Plan's Trust.  It may also include the Trust plus payments of $825,000 to the PEP Plus subgroup, as well as an additional $6.15 million for requested attorney's fees, expenses, and incentive awards.  Regardless of how it is calculated, the fee award represents approximately six percent of the common fund.

and Wilson.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011). An incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is considered "quite high." *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (*citing Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). Nonetheless, a higher award may be appropriate where class representatives expend significant time and effort on the litigation and face the risk of retaliation or other personal risks; where the class overall has greatly benefitted from the class representatives' efforts; and where the incentive awards represent an insignificant percentage of the overall recovery. *Wren*, 2011 WL 1230826, at *32. In addition, although the Court gives this factor only modest weight, larger awards are more common in "megafund" cases. *See In re High-Tech*, 2015 WL 5158730, at *18 (collecting cases).

In this case, Plaintiffs have demonstrated that named plaintiffs Wilson and Rollins are each entitled to an incentive award of $10,000. Rollins has been involved with the litigation since its inception in 2013 and was the only named plaintiff until 2015. ECF No. 310-13 ¶ 6. During the time the case was pending in the district court, Rollins played an active role in meeting with attorneys to discuss, among other things, motion practice, litigation strategy, and discovery requests and responses. *Id.* ¶¶ 7-13. After the case was stayed, Rollins continued to communicate with counsel, albeit on a less frequent basis (1-2 times a month). *Id.* Once the case returned to the district court, Rollins once again participated in strategic decisions and provided further information about Dignity Health. *Id.* She also supported counsel during months of settlement discussions. *Id.* ¶¶ 14-20. She estimates that she spent a few hours per month on the case every

year for the past nine years.  *Id.* ¶ 26.  Thus, the Court finds that Rollins' demonstrated

commitment and hard work entitles her to the requested incentive award of $10,000.  *See, e.g.,*

*Chu v. Wells Fargo Invs., LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5

(N.D. Cal. Feb. 16, 2011) (approving a $10,000 incentive award to plaintiffs who actively

participated in 5-6 years of litigation).

Although Wilson joined the litigation two years after Rollins, the Court finds that her

efforts and significant contribution to this case also entitle her to a $10,000 inventive award.

Wilson produced over 1,500 pages of documents concerning the Plan, worked with counsel as

they drafted the amended complaint, and traveled to Washington, DC for Supreme Court

arguments.  ECF No. 310-14 at 3-4.  According to Class Counsel, "the PEP Plus claim would

never have been brought but for her efforts," ECF No. 311 at 17, because Wilson was the one who

spotted the issue.  *Id.*  Besides for identification of the problem, Wilson provided counsel with an

analysis of the issue via detailed graphs and spreadsheets.  *Id.*  She has been actively involved in

assisting the attorneys through her actuarial expertise and even engaged in direct communications

with mediators.  *Id.*  Because she is a current employee of Dignity Health, she also held a

reasonable fear of retaliation and has, in fact, experienced negative ramifications due to her work

on this case.  *Id.* 17-18; ECF No. 310-14 at 6-7.

Based on these considerations, the Court finds that both named Plaintiffs are entitled to

incentive awards of $10,000.  The Court again notes that the baseline contribution to the Plan will

not be impacted by these awards.  Instead, the awarded amounts will be taken from the $6.15

million allocated for attorney's fees, expenses, and awards.

## V.   INTERVENOR PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND INCENTIVE AWARDS

The Court denied Plaintiffs' original motion for preliminary approval of settlement.  ECF

No. 289.  Among other reasons, the Court had "concerns regarding the two subgroups of class

members who will receive direct payments."  *Id.* at 16.  The Court informed Plaintiffs that any

future motion should "(1) support the propriety of providing payments to these subgroups without

subclass certification and (2) provide sufficient information regarding the value of the subgroups'

1    claims for the Court to evaluate whether the Settlement treats those claims equitably." *Id.* In

2    accordance with the Court's ruling, the parties negotiated a revised and amended settlement

3    agreement, ECF No. 290-1, and filed a renewed motion for preliminary approval, ECF No. 290.

4    The Court ultimately denied the renewed motion, finding that there was "a fundamental conflict of

5    interest between the vesting subgroup and the rest of the class that must be addressed by subclass

6    certification." *Id.* at 16.

7         After the Court denied the renewed motion, attorneys from the law firm of Izard, Kindall

8    & Raabe ("IKR") came forward to represent the Vesting Subclass.  ECF No. 306-6 ¶¶ 1, 3.

9    Attorney Mark Kindall from IKR subsequently engaged in discussions with several potential

10   subclass members and investigated their potential claims.  Following these efforts, "Jenifer

11   Heiner, Michele Hall and Christine Montoya determined that they wanted to intervene in the suit

12   to represent the Vesting Subclass" and filed a motion to intervene.  *Id.* ¶ 4.  To prepare for

13   settlement discussions, IKR needed more precise data concerning the accrued benefits that

14   members of the Vesting Subclass forfeited when they left Dignity.  *Id.* ¶ 5.  This involved

15   negotiations with Defendants to obtain the necessary data.  *Id.*  IKR then analyzed the data and

16   formulated a strategy with the Intervenor Plaintiffs.  Defendants and Intervenors engaged in

17   settlement discussions from November 2020 through February 2021.  The Intervenor Plaintiffs

18   were primarily concerned with three issues: "(1) increasing the overall amount of money going to

19   the Vesting Subclass; (2) revising the allocation of those amounts to conform to the amounts that

20   individual Vesting Subclass Members had lost; and (3) including language to ensure that the

21   Settlement did not result in prejudice to Vesting Subclass Members who might return to work at

22   Dignity." *Id.* ¶ 6.  After reaching agreements on each of these issues, Intervenor Counsel then

23   negotiated payments for attorney's fees, expenses, and incentive awards.  *Id.* ¶ 8.

24        Before the negotiations with IKR occurred, Defendants had agreed to pay the Vesting

25   Subclass $660,000.  ECF No. 312 at 13.  After those negotiations, Defendants increased

26   compensation to the Vesting Subclass to $950,000.  Counsel for the Vesting Subclass now request

27   for $50,000 in attorney's fees and expenses.  ECF No. 312 at 12.  The three Intervenor Plaintiffs

28

United States District Court
Northern District of California

18

1    request $2,500 each in incentive awards.  ECF No. 312 at 19.

2        **A.**      **Attorney's Fees**

3          The Court finds attorney's fees reasonable under the percentage-of-the-fund method

4    regardless of whether it calculates the common fund as $950,000 (the total amount that

5    Defendants will pay the Vesting Subclass) or $290,000 (the increased amount Defendants agreed

6    to pay after negotiations with Intervenor Plaintiffs' counsel).  The requested fees are 5% of

7    $950,000 and 17% of $290,000.  The fees are reasonable based on the benefit counsel provided to

8    the Vesting Subclass and because the requested fees fall well below the Ninth Circuit's 25%

9    benchmark.

10         The award is also reasonable under a lodestar cross-check.  IKR spent 107 hours on this

11   case generating a lodestar of $78,975.  ECF No. 310-3 ¶ 19.  These hours were spent on

12   appropriate litigation tasks like negotiations with Defendants over data issues, communicating

13   with Intervenor Plaintiffs, and reviewing the terms of the original and revised settlement

14   agreements.  *Id.*  ¶ 20.  Exhibits provide the following rates for the hours spent on this litigation:

15   $850 per hour for a senior partner with 33 years of experience, $350 per hour for an associate with

16   5 years of experience, and $180 per hour for time billed by two paralegals.  *Id.* ¶¶ 21-24.  The

17   Court finds these rates reasonable.  *See, e.g., Haralson v. U.S. Aviation Serv. Corp.,* No. 16-CV-

18   05207-JST, 2021 WL 5033832, at *8 (N.D. Cal. Feb. 3, 2021) (approving, for purposes of the

19   lodestar cross-check, rates "between $300 and $500 for associates, and between $750 and $850 for

20   partners and senior attorneys"); *Hefler v. Wells Fargo & Co.,* No. 16-CV-05479-JST, 2018 WL

21   6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates "from $650 to $1,250 for partners or

22   senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals" for

23   purposes of a lodestar cross-check), *aff'd sub nom. Hefler v. Pekoc,* 802 F. App'x 285 (9th Cir.

24   2020).

25         The requested attorney's fees in this case are 63% of counsel's lodestar.  This "contrasts

26   with the majority of common fund settlements, in which the fees awarded are typically greater

27   than, or a multiple of, counsel's lodestar."  *Flores v. TFI Int'l Inc.,* No. 12-CV-05790-JST, 2019

28

United States District Court
Northern District of California

1    WL 1715180, at *10 (N.D. Cal. Apr. 17, 2019) (citing *Vizcaino,* 290 F.3d at 1051 n.6 for the

2    proposition that lodestar multiples between 1 and 4 are common).  For these reasons, the Court

3    grants an attorney's fees award of $50,000 to counsel for Intervenor Plaintiffs.

4        **B.    Incentive Awards**

5        Intervenor Plaintiffs request that the Court award $2,500 in incentive fees to Intervenor

6    Plaintiffs Michelle Hall, Jenifer Heiner, and Christina Montoya.  The Court finds these awards

7    reasonable in light of Intervenor Plaintiffs' active and valuable assistance to counsel.  ECF No.

8    312 at 18-19.  The awards are also well below the "presumptively reasonable" amount of $5,000.

9    *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015) ("In this district, $5,000 for each class

10   representative is presumptively reasonable.").

11                          **CONCLUSION**

12       For the reasons stated above, the Court grants Plaintiffs' motion for final approval of the

13   class action settlement.  The Court also grants Plaintiffs' and Intervenor Plaintiffs' motions for

14   attorney's fees, expenses, and incentive awards.  Class counsel is awarded $5,766,193.12 in

15   attorney's fees and $363,806.88 in costs. The Court also awards $50,000 in attorney's fees to

16   counsel for Intervenor Plaintiffs.  Named plaintiffs are each awarded $10,000 and Intervenor

17   Plaintiffs are each awarded $2,500 in incentive awards.

18       Class counsel shall file a post-distribution accounting within 21 days after the distribution

19   of settlement funds.  In addition to the information contained in the Northern District of

20   California's Procedural Guidance for Class Action Settlements, available at

21   https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the post-

22   distribution accounting shall discuss any significant or recurring concerns communicated by class

23   members to the settlement administrator or counsel since final approval, any other issues in

24   settlement administration since final approval, and how any concerns or issues were resolved.

25       The Court will withhold 10% of the attorney's fees granted in this order until the post-

26   distribution accounting has been filed.  Class counsel shall file a proposed order releasing the

27   remainder of the fees when they file their post-distribution accounting.

28

United States District Court
Northern District of California

1    This matter is set for a further case management conference on January 24, 2023 at 2:00

2  p.m., with a case management statement due January 17, 2023.  The parties may request that the

3  case management conference be continued if additional time is needed to complete the

4  distribution.  The conference will be vacated if the post-distribution accounting has been filed and

5  the Court has released the remaining attorney's fees.

6    **IT IS SO ORDERED.**

7  Dated:  July 15, 2022



8  JON S. TIGAR
9  United States District Judge